# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**1925 HOOPER LLC; ROBERT J. ARKO; and ANDREW M. MOORE; on behalf of themselves and all others similarly situated,**

**Plaintiffs,**

**v.**

THE NATIONAL ASSOCIATION OF REALTORS; HIGHER TECH REALTY, LLC d/b/a MARK SPAIN REAL ESTATE; CHRISTIE'S INTERNATIONAL REAL ESTATE, LLC; ENGLE AND VOLKERS AMERICAS, INC.; ENGLE AND VOLKERS ATLANTA; WEICHERT OF NORTH AMERICA, INC.; ERA FRANCHISE SYSTEMS LLC; EXP WORLD HOLDINGS, INC; REDFIN CORPORATION; HOMESMART HOLDINGS, INC.; SOLID SOURCE REALTY; PALMERHOUSE PROPERTIES, LLC; HAMILTON DORSEY ALSTON COMPANY, INC.; ANSLEY ATLANTA REAL ESTATE, LLC; BEACHAM & COMPANY, LLC; TRACEY COUSINEAU REAL ESTATE, LLC; SANDERS REALTY HOLDINGS, LLC; BOLST, INC. d/b/a THE JUSTIN LANDIS GROUP; CHAPMAN HALL REALTORS, INC.; SIGNATURE PROPERTIES GROUP, INC.; METHOD REAL ESTATE GROUP, LLC d/b/a METHOD REAL ESTATE ADVISORS; PATH & POST, LLC d/b/a PATH & POST REAL ESTATE; DUCKWORTH PROPERTIES, LLC; AF REALTY GROUP, LLC; GREATER ATLANTA REAL ESTATE GROUP, LLC d/b/a MAXIMUM ONE REALTY; GREATER

**CASE NO.:1:23-cv-05392-MHC**

ATLANTA REALTY HOLDINGS
CORPORATION d/b/a MAXIMUM ONE
REALTY, and ATLANTA COMMUNITIES
REAL ESTATE BROKERAGE, LLC

**Defendants.**

**PLAINTIFFS' OPPOSITION TO PROPOSED INTERVENORS' MOTION
TO INTERVENE AND TO TRANSFER CASE**

# **TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................1

II.   BACKGROUND ....................................................................................4

    A.    The Missouri Litigation.................................................................4

        1.    Counsel for Proposed Intervenors File a Nationwide Class
             Action and Purport to Settle Against the Universe of
             Defendants .....................................................................4

        2.    Proposed Intervenors File the Gibson Litigation.......................7

    B.    The Georgia Litigation .................................................................9

        1.    Plaintiffs File this Lawsuit and Initially Agree to Support
             Centralization. ...............................................................9

        2.    Plaintiffs Negotiate Just and Reasonable Settlements with
             Defendants Not Otherwise Subject to Final or Proposed
             Settlement Agreements. ...................................................11

III.  ARGUMENT & CITATION TO LEGAL AUTHORITY............................15

    A.    Proposed Intervenors' Motion is Neither Necessary Nor Ripe. .........15

    B.    The Motion to Intervene Must be Denied. ........................................16

        1.    The Motion Must Be Denied Because it Is Untimely...............17

             a.    Proposed Intervenors Months in Filing Their Motion....17

             b.    The Existing Parties Will Be Prejudiced by Belated
                  Intervention..................................................19

             c.    Proposed Intervenors Will Not Be Prejudiced if Their
                  Motion is Denied. ..........................................21

             d.    Additional Factors Weigh Against Permitting
                  Intervention..................................................23

        2.    Intervention Would Unduly Delay and Prejudice the
             Adjudication of the Original Parties' Rights. ..........................24

    C.    Even Assuming Permissive Intervention Were Proper, Transfer is Not
        Appropriate.............................................................................26

        1.    This Case Could Not Have Been Brought in the Western
             District of Missouri Due to a Lack of Jurisdiction Over Certain
             Defendants. ..................................................................26

i

       2.     The First-to-File Rule Does Not Require Transfer Here. .........28

IV.    CONCLUSION..............................................................................................32

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Attix v. Carrington Mortgage Servs., LLC*,
No. 1:20-cv-22183, 2020 WL 9849821 (S.D. Fla. Oct. 13, 2020)..............*passim*

*Belacon Pallet Servs., LLC v. Amerifreight, Inc.*,
No. 1:15CV191/MW/GRJ, 2016 WL 8999936 (N.D. Fla. Mar. 26,
2016) ........................................................................................................32

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cty.*,
582 U.S. 255 (2017)..................................................................................27

*Cadle Co. v. Whataburger of Alice, Inc.*,
174 F.3d 599 (5th Cir. 1999) ...................................................................28

*Calderon v. Clearview AI, Inc.*,
No. 20 CIV. 1296 (CM), 2020 WL 2792979 (S.D.N.Y. May 29,
2020) .................................................................................................25, 31

*Capitol Records, Inc. v. Optical Recording Corp.*,
810 F. Supp. 1350 (S.D.N.Y. 1992) .........................................................30

*Carl v. Republic Sec. Bank*,
2002 WL 32167730 (S.D. Fla. Jan. 22, 2002)...........................................29

*Chapman v. Progressive Am. Ins. Co.*,
2017 WL 3124186 (N.D. Fla. July 24, 2017)............................................29

*Collegiate Licensing Co. v. Am. Cas. Co.*,
713 F.3d 71 (11th Cir. 2013) ...................................................................29

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)..................................................................................27

*U.S. ex rel. Eisenstein v. City of N.Y.*,
556 U.S. 928 (2009)..................................................................................25

*FirsTier Bank, N.A. v. G–2 Farms*,
  No. 95–3118, 1996 WL 539217 (D. Neb. Mar. 11, 1996) ...................................28

*Georgia v. U.S. Army Corps of Engineers*,
  302 F.3d 1242 (11th Cir. 2002) ...................................................................16, 25

*Gibson v. NAR, et al.*,
  4:23-cv-00788 (W.D. Mo.) .........................................................................*passim*

*Gumm v. Jacobs*,
  No. 5:15-CV-41 (MTT), 2020 WL 1322576 (M.D. Ga. Mar. 20,
  2020) .......................................................................................................................17

*Med. & Chiropractic Clinic, Inc. v. Oppenheim*,
  No. 8:16-CV-1477-T-36TBM, 2016 WL 6093223 (M.D. Fla. Oct.
  19, 2016) .................................................................................................................21

*Merrill Lynch, Pierce, Fenner & Smith, Inc., v. Haydu*,
  675 F.2d 1169 (11th Cir. 1982) ...........................................................................29

*Moehrl v. National Association of Realtors*,
  Case No. 19-cv-01610-ARW (N.D. Ill.) ...............................................................5

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Payless Shoesource,
Inc.*,
  No. C-11-1892 EMC, 2012 WL 3277222 (N.D. Cal. Aug. 9, 2012) ................30

*Nitride Semiconductors Co. v. Lite-On Tech. Corp.*,
  No. W-21-CV-00183-ADA, 2022 WL 358164 (W.D. Tex. Feb. 7,
  2022) .......................................................................................................................26

*Brown ex rel. O'Neil v. Bush*,
  194 F. App'x 879 (11th Cir. 2006) .......................................................................21

*Peng v. Mastroianni*,
  No. 20-80102-CIV, 2023 WL 4763198 (S.D. Fla. June 26, 2023) ...................18

*Philibert v. Ethicon, Inc.*,
  2005 WL 525330 (S.D. Fla. Jan. 14, 2005) .......................................................29

*Pinon et, al. v. Daimler AG et, al*,
  No. 1:18-CV-3984-MHC .................................................................................2, 18

*Ponzio v. Pinon*,
   87 F.4th 487 (11th Cir. 2023) ...................................................................*passim*

*Purcell v. BankAtlantic Fin. Corp.*,
   85 F.3d 1508 (11th Cir. 1996) ...........................................................................16

*Runton v. Brookdale Senior Living, Inc.*,
   No. 17-60664-CIV, 2020 WL 10502418 (S.D. Fla. Mar. 18, 2020).................13

*Sitzer v. NAR et al*
   (W.D. Mo. filed April 29, 2019)...........................................................................5

*In re SK hynix Inc.*
   847 F. App'x 847, 854 (Fed. Cir. 2021) ............................................................26

*Tech. Training Assocs. Inc. v. Buccaneers Ltd P'Ship*,
   874 F.3d 692 (11th Cir. 2017) ....................................................................21, 22

*Umpa v. The National Association of Realtors, et al.*,
   4:23-cv-00945 (W.D. Mo.) ...................................................................................7

*United States v. Jefferson Cnty.*,
   720 F.2d 1511 (11th Cir. 1983) .........................................................................17

*Viasystems, Inc. v. EBM–Papst St. Georgen GmbH & Co., KG*,
   646 F.3d 589 (8th Cir. 2011) .............................................................................27

**Statutes**

28 U.S.C. § 1404 ...................................................................................................1, 3

28 U.S.C. § 1404(a) ......................................................................................3, 26, 28

**Other Authorities**

Federal Rule of Civil Procedure 24 ...........................................................................1

Federal Rule of Civil Procedure 24(b)............................................................16, 17

Federal Rule of Civil Procedure 26(b)....................................................................16

FRE 408 ...................................................................................................................14

# I.     INTRODUCTION

Proposed Intervenors' Motion to Intervene and Transfer Case ("Motion") is misplaced, as it is based solely on their objection to the settlement reached by the parties in the present action—an objection that can be fully addressed and resolved by this Court in the settlement approval process.  Thus, neither intervention nor transfer is necessary to protect Proposed Intervenors' purported interests.  In addition to being an unnecessary waste of resources, the Motion lacks substantive merit and must be denied because Proposed Intervenors cannot satisfy their burden to show: (1) permissive intervention is appropriate; or (2) transfer to the Western District of Missouri is permissible under 28 U.S.C. § 1404 (it is not).

## Permissive Intervention is Not Appropriate

Federal Rule of Civil Procedure 24(b) allows permissive intervention only where the proposed intervenor shows, among other things, that (1) the motion is timely, and (2) that intervention will not "unduly delay or prejudice the adjudication of the original parties' rights."  Proposed Intervenors cannot satisfy either element.

First, the Motion is not timely, as Proposed Intervenors have been aware of this action and its overlap with *Gibson* since this case's inception in November, 2023, yet they waited one (1) year before seeking to intervene.  Additionally, they failed to seek intervention for eight (8) months after the Multidistrict Litigation Panel ("MDL") denied their request to consolidate these (and other) actions in Missouri.

1

Thus, rather than making a timely motion as is required for permissive intervention, Proposed Intervenors delayed until they learned that Plaintiffs had negotiated a settlement with eXp.[1]  Proposed Intervenor's delay is the antithesis of a timely motion, and intervention should be denied on this basis alone.  Indeed, this Court previously denied a motion to intervene under strikingly similar facts in *Pinon et, al. v. Daimler AG et, al*, 1:18-CV-3984-MHC, and should do the same here.

Second, intervention would unduly delay resolution of this case and prejudice the rights of the original parties, as Plaintiffs and all remaining defendants have negotiated settlements that will resolve this entire case if approved by this Court.[2]  It would prolong this case and prejudice its original parties if they were forced to litigate in Missouri at this juncture.  Further, as other courts have held, moving to intervene for the sole purpose of seeking transfer *necessarily* results in delay and prejudice to the original parties.  Intervention must be denied for this reason, as well.

Because the Court should deny intervention, it need not address the transfer issue.  In the event the Court permits intervention, however, the motion to transfer

---

[1] "eXp" refers collectively to eXp World Holdings, Inc., eXp Realty, LLC, eXp Realty of California, Inc., eXp Realty of Southern California, Inc., eXp Realty of Greater Los Angeles, Inc., and eXp Realty of Northern California, Inc.

[2] As a result of other settlements, the only defendants remaining in this case are eXp, the Weichert parties (Weichert North America, Inc., Weichert Co., and Weichert Real Estate Affiliates, Inc. (collectively, "Weichert"), Higher Tech Realty, LLC, ("Higher Tech") and Atlanta Communities Real Estate Brokerage, LLC ("Atlanta Communities").  Plaintiffs have now reached a settlement with all of these parties.

must be denied because Proposed Intervenors cannot satisfy 28 U.S.C. § 1404.

**Transfer Is Not Permissible Under 28 U.S.C. § 1404**

It is well-settled that motions to transfer are governed in the first instance by 28 U.S.C. § 1404, which provides that: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division *where it might have been brought*." 28 U.S.C. § 1404(a) (emphasis added).  As other courts have held, the "first-to-file" rule cannot be used to circumvent the requirements of the federal statute governing transfer (§ 1404).  Notably, Proposed Intervenors do not even mention § 1404, let alone show that this action could have been brought in the Western District of Missouri as is required by the statute.  Accordingly, Proposed Intervenors' transfer motion should be denied at the very threshold, as they failed to meet their burden to show transfer is permissible.

Even had Proposed Intervenors bothered to address § 1404 they could not have satisfied its mandate to show that this case could have been brought in the Western District of Missouri, as that court lacked personal jurisdiction over 18 of the 27 original defendants, as shown below.  Thus, the transfer motion must be denied as a matter of law.

Finally, even if Proposed Intervenors could satisfy § 1404(a) (they cannot), transfer still would not be appropriate under the first-to-file rule.  First, while the

3

*Gibson* action in which Proposed Intervenors are plaintiffs was filed a mere 22 days prior to this action, it certainly has ***not*** progressed further than this action. Rather, the opposite is true: the parties here have agreed to entirely resolve the present action such that all that remains is the settlement approval process. Conversely, as shown by Proposed Intervenors' Motion, there is no end in sight to the Missouri action (primarily due to Proposed Intervenors' and their counsel's refusal to negotiate fair and just settlements). Second, Proposed Intervenors' Motion smacks of forum shopping, which is another compelling reason *not* to apply the first-to-file rule. Indeed, their failure to seek intervention and transfer only until they learned of the proposed settlement in this action, coupled with the fact that any objection they have to the settlements can be fully addressed in this Court, suggests that the sole motive for their Motion is get this case before a judge with whom they are more familiar and have enjoyed other successes. For these reasons and those discussed in more detail below, this Court should deny Proposed Intervenors' Motion.

## II.    BACKGROUND

### A.    The Missouri Litigation

#### 1.    *Counsel for Proposed Intervenors File a Nationwide Class Action and Purport to Settle Against the Universe of Defendants*

On April 29, 2019, counsel for Proposed Intervenors filed a class action against NAR, Realogy Holdings Corp. ("Realogy"), HomeServices of America, Inc.

("HomeServices"), RE/MAX, LLC (RE/MAX") and Keller Williams Realty, Inc. ("Keller Williams") on behalf of only Missouri home sellers in the United States District Court for the Western District of Missouri, Case No. 4:19-CV-332-SRB (the "*Burnett* Action").[3]  Ultimately, the *Burnett* Action was submitted to a federal jury who found NAR and its conspirators liable under the Sherman Act and awarded the Missouri plaintiffs approximately $1.785 billion in damages.[4]  Faced with of this verdict, RE/MAX, Realogy,[5] and Keller Williams promptly settled with the *Burnett* plaintiffs, while NAR eventually opted to resolve any further nationwide litigation, including appeals, by agreeing to settle with those plaintiffs on March 15, 2024 (the "NAR Settlement").

Pursuant to the NAR Settlement,[6] the NAR agreed to pay approximately $420 million over a four-year period into a settlement fund as compensation for damages

---

[3] The *Burnett* action was originally styled *Sitzer v. NAR et al* (W.D. Mo. filed April 29, 2019), however, the case was re-captioned with the filing of the Second Amended Complaint on June 30, 2021 (*Burnett* ECF 477) following the elimination of Joshua Sitzer and Amy Winger as class representatives (*see Burnett* ECF 469).

[4] A similar class action styled *Moehrl v. National Association of Realtors*, Case No. 19-cv-01610-ARW (N.D. Ill.) was filed in the Northern District of Illinois in March 2019, a little over one month prior to the *Burnett* action.  However, that litigation proceeded at a slower pace and, following the jury verdict in *Burnett*, all parties to the *Moehrl* action joined and participated in the subsequent global settlements in the *Burnett* action.  Notably, the *Moehrl* plaintiffs did not attempt to intervene in the *Burnett* action or vice versa. Indeed, of the score of cases filed across the country involving the same subject matter, this is the only case in which Proposed Intervenors have sought to intervene.

[5] Realogy is now known as Anywhere Real Estate, Inc. ("Anywhere").

[6] The U.S. District Court for the Western District of Missouri granted preliminary approval of the NAR Settlement on April 23, 2024, and granted final approval on November 27, 2024.  (*Burnett* ECF 1460 & 1622.)  Notably, however, the Order

incurred by home sellers.[7]  By its express terms, the NAR Settlement released all brokerages that were NAR members and had less than $2 billion in annual transaction volume for residential home sales in the year 2022.  The Settlement did not release those brokerages with more than $2 billion in annual transaction volume for 2022, including the four settling Defendants in this case, eXp, Weichert, Higher Tech and Atlanta Communities (the "Settling Defendants").

In the present Georgia case, four Defendants—eXp, Weichert, Higher Tech and Atlanta Communities (the "Settling Defendants")—remain because they had more than $2 billion in sales in 2022. *All four of these remaining Defendants have settled with Plaintiffs; thus, this action will end if the settlements are approved.*

The NAR Settlement provided two options for each brokerage, like the Settling Defendants, that had more than $2 billion in transaction volume in 2022: (1) the brokerage could opt in to the settlement by agreeing to certain practice changes (delineated below) and agreeing to pay into the settlement fund an amount equal to 0.0025 times the brokerage's average annual total transaction volume over the preceding four years; or (2) if the brokerage had a good faith belief that it lacked the ability to pay the amount required by the first option, it could participate in non-

---

granting final approval of the NAR Settlement has been appealed.  (*Id.* at ECF 1630.)

[7] HomeServices agreed to contribute $250 million towards the NAR Settlement.  The U.S.D.C. for the Western District of Missouri granted preliminary approval of the HomeServices Settlement on August 9, 2024.  (*Burnett* ECF 1520.)

binding mediation within 130 days following preliminary approval of the NAR Settlement—a time period which has since expired and during which counsel for Proposed Intervenors were unable to negotiate a settlement with any of the Settling Defendants.  In other words, counsel for Proposed Intervenors effectively (and ironically) monopolized the settlement market with respect to any opt-in brokerage or MLS during the 130 days following the preliminary approval of the NAR Settlement, yet failed to successfully negotiate any settlement with eXp or any of the Settling Defendants.

### 2.    Proposed Intervenors File the Gibson Litigation

On October 31, 2023, immediately following the *Burnett* verdict, a new class action styled *Gibson v. NAR, et al.*, 4:23-cv-00788 was filed in the U.S. District Court for the Western District of Missouri naming additional national brokerages.[8] The NAR Settlement also includes the *Gibson* plaintiffs.  In addition, the *Gibson* plaintiffs recently received final approval of settlements with Compass, Inc. ($57.5 million), The Real Brokerage Inc. ($9.25 million), Realty ONE Group, Inc. ($5 million), At World Properties LLC ($6.5 million), Douglas Elliman, Inc. ($17.5 million), Redfin Corporation ($9.25 million), Engel & Volkers Americas, Inc. ($6.9

---

[8] Around the same time, another class action styled *Umpa v. The National Association of Realtors, et al.*, 4:23-cv-00945, was also field in the United States District Court for the Western District of Missouri.  That case was consolidated with the *Gibson* matter in April 2024.  (*Gibson* ECF 245.)

million), HomeSmart ($4.7 million), and United Real Estate ($3.75 million).[9]  (*See Gibson* ECF 521 & 530.)

Since the *Gibson* filing, a number of similar class actions have been lodged against the NAR and various other real estate brokerages across the country, including this class action.  Notably, despite the existence of these numerous other class actions that, like the instant case, involve overlapping defendants and claims, Proposed Intervenors have not so much as attempted to intervene in any other pending case (including putative class actions filed by undersigned counsel in Florida and Alabama).  (Declaration of Bryan Knight ("Knight Decl.") ¶ 16.)  Their focus on this particular case amplifies their counsel's true motivation: Plaintiffs have reached settlements with all the Settling Defendants with whom counsel for Proposed Intervenors were unable to negotiate a settlement, either during the period in which they effectively had a monopoly on such negotiations or thereafter.

---

[9] In addition to Engel & Volkers, Redfin, and HomeSmart (which were also named in this action), several defendants in the instant litigation are affiliates of these brokerages and therefore were included as released parties pursuant to the *Gibson* settlement agreements.  Those defendants include Christie's International Real Estate, LLC, Engel & Volkers Atlanta, Solid Source Reality, Inc, Palmerhouse Properties, LLC, and Ansley Atlanta Real Estate, LLC.  (*See* ECF 115.)

**B.    The Georgia Litigation**

1.    *Plaintiffs File this Lawsuit and Initially Agree to Support Centralization.*

On November 22, 2023, Plaintiffs 1925 Hooper, LLC, Robert J. Arko, and Andrew M. Moore (like the plaintiffs in *Gibson*) filed the above-captioned case to bring similar claims against additional Defendants on behalf of a nationwide class of individual sellers of residential real estate.  Crucially, only five (5) out of the twenty-seven (27) Defendants named in this action overlap with those named in the *Gibson* matter.  (Knight Decl. ¶ 5.)  Moreover, eighteen (18) out of the twenty-seven (27) Defendants in this case have no contacts whatsoever with the state of Missouri and therefore could not possibly have been named in the Proposed Intervenors' cases.  In fact, the majority of defendants in this case only do business in Georgia and could not be hauled into court in any other state, Missouri or otherwise.

Early on in this case (on December 27, 2023), Proposed Intervenors filed a motion before the Judicial Panel on Multidistrict Litigation ("JPML") seeking to consolidate the numerous class actions (including this action) in the Western District of Missouri before Judge Stephen R. Bough.  (MDL No. 3100, ECF 1.)  While Plaintiffs supported Proposed Intervenors' motion to consolidate, (MDL No. 3100, ECF 267), the JPML ultimately denied the motion on April 12, 2024 in light of the settlements that had been reached (including the NAR Settlement) and the various

conflicting positions asserted by the parties with respect to whether centralization was appropriate, (MDL No. 3100, ECF 558).

However, while the motion to consolidate was pending, counsel for Proposed Intervenors approached Plaintiffs' counsel to negotiate the terms of a potential cooperation agreement, conditioned on approval of the consolidation. (Knight Decl. ¶ 4.) In negotiating the terms of this potential agreement, counsel for Proposed Intervenors demanded that Plaintiffs' counsel remain primarily responsible for litigating claims against the Defendants in this action and pay ***all*** litigation costs, while also committing to pay 60% of any settlement or other recovery obtained with respect to any named brokerage or MLS to counsel for Proposed Intervenors. (*Id.*) In effect, then, counsel for Proposed Intervenors demanded that Plaintiffs' counsel pay them a tribute for the privilege of trying Plaintiffs' counsel's own cases. Plaintiffs rejected this proposed cooperation agreement with the *Gibson* Plaintiffs in April of 2024 (*i.e.*, six months before Proposed Intervenors filed their Motion in this case). (Knight Decl. ¶ 4.)

While Plaintiffs' counsel originally agreed to the proposal and supported the motion to consolidate, once the Motion was denied, Plaintiffs' counsel was left with no choice to but to continue this litigation on behalf of the putative class members and to look out for the best interests of the putative class, including by engaging in good-faith negotiations with the remaining defendants (some of whom are also

parties to the *Gibson* matter) to reach the best settlement possible for the class. Proposed Intervenors now imply that, rather than litigate this case on behalf of the class, Plaintiffs' counsel should have simply sat on their hands and waited for Proposed Intervenors and their counsel to negotiate a settlement with any overlapping defendants. But such passivity would have been inconsistent with Plaintiffs' counsel's obligations to the putative class.

> 2.  *Plaintiffs Negotiate Just and Reasonable Settlements with Defendants Not Otherwise Subject to Final or Proposed Settlement Agreements.*

Upon learning of the NAR Settlement and the JPML's decision denying consolidation, Plaintiffs' counsel proceeded with litigating this case. However, recognizing that certain defendants would or could be covered by the NAR Settlement, this Court entered an order staying the entire case as to all defendants through July 19, 2024, and through a decision on final approval of the proposed NAR Settlement for those defendants that would be "Released Parties" pursuant to its terms. (ECF 69.) Thereafter, as outlined above, various defendants entered into settlement agreements with the *Gibson* plaintiffs, and following the *Gibson* court's final approval of those settlements, the parties stipulated to the dismissal of those "settled defendants." (ECF 115 & 116.)

Beginning in December 2023, Plaintiffs commenced efforts to negotiate settlement agreements with those defendants who were not automatically included

in the NAR Settlement and did not choose to opt-in to the NAR Settlement. Specifically, Plaintiffs started negotiating with Defendant Atlanta Communities on December 7, 2023. (Knight Decl. ¶ 12.) In April, 2024, the Parties negotiated a confidentiality agreement for Atlanta Communities to share financials with Plaintiffs and conduct informal discovery. (*Id.*) On April 16, 2024, the parties executed a Confidentiality Agreement. (*Id.*) On April 18, 2024, Atlanta Communities provided confidential financials, tax returns, financial reports, listing agreements, purchase and sale agreements. (*Id.*) From May through December 4, 2024, the parties have held extensive negotiations on the phone and through emails. (*Id.*)

Plaintiffs started negotiating with eXp on May 2, 2024. (*Id.* ¶ 13.) On May 29, 2024, Plaintiffs and eXp negotiated a confidentiality agreement for eXp to share financials and conduct informal discovery with Plaintiffs. (*Id.*) On August 6, 2024, eXp produced four years of tax returns, sales volume, commission totals, purchase and sale agreements, listing agreements, and engagement agreements. (*Id.*) During this same time Plaintiffs reviewed eXp public financial filings for the SEC filings, 10-K reports, T360 real estate reports, and Real Trends real estate reports. (*Id.*) Plaintiffs sent their first written demand letter on September 9, 2024 to eXp. (*Id.*) In late September, 2024, eXp and Plaintiffs scheduled a mediation for October 1, 2024 with retired California Federal Judge Weinstein and former U.S. Ambassador David Carden. (*Id.*) The Parties submitted extensive mediation statements. The Parties

12

settled at mediation and then spent significant time drafting and negotiating a settlement agreement.[10]  (*Id.*)

Plaintiffs started negotiating with Higher Tech d/b/a Mark Spain on May 7, 2024. (*Id.* ¶ 15.) On May 9, 2024, Higher Tech provided confidential financial information. (*Id.*)  From May through September 2024 the parties attended zoom meetings, held phone calls and negotiated via email.  (*Id.*)  On October 3, 2024, the Parties reached a settlement.  (*Id.*)  Since then, the Parties have negotiated, drafted and revised their settlement agreement.  (*Id.*)

As a result of the aforementioned negotiations, Plaintiffs have reached settlement agreements with eXp, Weichert,  Higher Tech, and Atlanta Communities, and will shortly be seeking preliminary approval of the settlements. Again, if these settlements are approved, this action will be fully concluded.

---

[10] Proposed Intervenors' assertion that the $34 million settlement with eXp is too low because of eXp's market capitalization is overly simplistic.  Among other things, the amount of cash on hand for any settling defendant says nothing about its relative culpability compared to other defendants.  Moreover, Proposed Intervenors cherry-pick other settlements they negotiated for higher amounts, ignoring (1) the circumstances under which those settlements were negotiated and the commensurate risk to those defendants, and (2) that the settlement with eXp is in line with other settlements, including those negotiated by counsel for Proposed Intervenors, and (3) that the eXp settlement was brokered by an experienced former federal judge. *See Ponzio v. Pinon*, 87 F.4th 487, 507–08 (11th Cir. 2023) (Class action settlement not the result of "reverse auction" where settlement agreement was negotiated at multiple formal mediation sessions conducted by a neutral, highly-respected mediator who was a retired judge"); *Runton v. Brookdale Senior Living, Inc.*, No. 17-60664-CIV, 2020 WL 10502418, at *5 (S.D. Fla. Mar. 18, 2020) (denying motion for permissive intervention where proposed intervenor offered no evidence to support her charge of collusion and reverse auction other than publicly available information about the proposed settlement).

The parties reached each of these four Settlements through extensive negotiations, including engaging in negotiations through the assistance of a nationally recognized and highly experienced mediators—*i.e.*, Hon. Daniel Weinstein (Ret.), former U.S. Ambassador David Carden, and Hon. Randy Rich (Ret.). (Knight Decl. ¶ 11.) The parties had all-day mediations, attended by lead counsel for Plaintiffs and lead counsel for eXp and Weichert, and as part of the negotiations, the parties provided mediation briefs and statements. (*Id.*) The Settlements for Higher Tech and Atlanta Communities were the result of substantial ongoing negotiations among the parties. (*Id.* ¶¶ 11, 12, 15.) For each Settlement, the parties reached agreement only after numerous days of negotiation. Settling Defendants also provided detailed financial records, pursuant to FRE 408, that the Plaintiffs carefully reviewed. (*Id.* ¶¶ 11–15.) Settling Defendants' factored Defendants' ability to pay, their four-year transaction volume, potential trial verdicts, litigation risks, judgment collectability, and reasonableness when compared to other prior approved settlements. (*Id.* ¶ 11.)

The above ***facts*** expose Proposed Intervenors' "reverse auction" accusation as baseless, and also show that their Motion is otherwise rife with speculation, innuendo, and outright misrepresentations regarding the settlements.[11] Proposed

---

[11] For example, counsel for Proposed Intervenors submitted a declaration stating that "counsel for Plaintiffs in this action stated to counsel for Intervenors that they made *no* attempt to evaluate the financial condition of eXp in determining the fairness of the proposed settlement." (ECF 94-1 at 11; ECF 94-11 ¶¶ 4–5.) That is wrong. As discussed above, Plaintiffs' counsel carefully reviewed relevant financial documents

Intervenors cannot simply rely on unfounded suspicions and specious accusations to establish any of the requirements for permissive intervention (let alone transfer), including the necessary prejudice or harm, particularly because the settlements here were the product of arms-length negotiations that (in the case of the two settlements to which Proposed Intervenors have raised specific objections) were overseen by reputable mediators, including a retired judge.[12]

## III.    ARGUMENT & CITATION TO LEGAL AUTHORITY

### A.    Proposed Intervenors' Motion is Neither Necessary Nor Ripe.

As a threshold matter, Proposed Intervenors' Motion, regardless of how it is styled, is essentially an objection to the settlements Plaintiffs have reached in this case. Indeed, the *sole basis* of the Motion is Proposed Intervenors' assertion that the $34 million settlement with eXp is too low.[13] Indisputably, however, that objection can be fully heard and resolved by this Court. In fact, the Motion specifically states that Proposed Intervenors "intend to oppose any attempt by Plaintiffs and eXp to

---

in assessing the ability of eXp and the other Settling Defendants to pay.  (¶¶ 11–15)

[12] The eXp settlement is also in line with the Proposed Intervenors' settlements that have been approved in Missouri.  (Knight Decl. ¶ 14.)  For instance, eXp has an average four-year total transaction volume of $124B and settled this case for $34M.  (*Id.*)  The closest comparable transaction volume occurred with Compass, which had a average four-year total transaction volume of $204B and settled for $57.5M, which equals a settlement multiplier of .00028.  (*Id.*)  When this multiplier is multiplied by eXp's $124B average transaction volume, this equals $34.7M, which is nearly the identical to the $34M settlement agreed to with eXp.

[13] As discussed below, there is no merit to Proposed Intervenors' speculative and conclusory assertion that the settlements amounts here are too low, much less the result of a reverse auction.

seek approval of their settlement on the grounds that it constitutes a reverse auction." (ECF 94-1 at 10 n.6.)  Thus, Proposed Intervenors' argument that they will be prejudiced by the denial of their Motion is patently without merit, as is their attempt to prematurely argue that the parties' settlements in this action are unfair.

**B.      The Motion to Intervene Must be Denied.**

Federal Rule of Civil Procedure 24(b) allows permissive intervention where (1) the motion is timely, (2) the proposed intervenors have "a claim or defense that shares with the main action a common question of law or fact," and (3) intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." *See also Georgia v. U.S. Army Corps of Engineers*, 302 F.3d 1242, 1250 (11th Cir. 2002); *Attix v. Carrington Mortgage Servs., LLC*, No. 1:20-cv-22183, 2020 WL 9849821, at *2 (S.D. Fla. Oct. 13, 2020).  While Rule 26(b) *permits* intervention where these criteria are met, "it is ***wholly discretionary*** with the court whether to allow intervention under Rule 24(b) even if there is a common question of law or fact and the requirements of Rule 24(b) are otherwise satisfied.  *Attix*, 2020 WL 9849821, at *3 (emphasis added) (quoting *Purcell v. BankAtlantic Fin. Corp.*, 85 F.3d 1508, 1513 (11th Cir. 1996)).  Here, the Motion should be denied because: (1) it is untimely; and (2) intervention would unduly delay and prejudice the adjudication of the original parties' rights.

1.      *The Motion Must Be Denied Because it Is Untimely.*

Proposed Intervenor's Motion is plainly untimely, and Rule 24(b) is therefore not satisfied.  "A district court must consider four factors in assessing timeliness, namely (1) the length of time during which the would-be intervenor knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene; (2) the extent of prejudice to the existing parties as a result of the would-be intervenor's failure to apply as soon as he knew or reasonably should have known of his interest; (3) the extent of prejudice to the would-be intervenor if his petition is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely." *Gumm v. Jacobs*, No. 5:15-CV-41 (MTT), 2020 WL 1322576, at *2 (M.D. Ga. Mar. 20, 2020) (quoting *United States v. Jefferson Cnty.*, 720 F.2d 1511, 1516 (11th Cir. 1983)).  Here, each of these factors militates *against* permitting intervention.

a.      Proposed Intervenors Months in Filing Their Motion.

Counsel for Proposed Intervenors have been aware of this case and its overlap with *Gibson* since this case's inception on November 22, 2023, yet they neglected to file their Motion for almost an entire year.  Moreover, they were obviously aware of their interest in the case when they sought to have it included in Multidistrict Litigation, and when Plaintiffs rejected Proposed Intervenors' cooperation agreement.  (Knight Decl. ¶ 4.)  Nonetheless, they waited another 6 months before

17

seeking to intervene.[14]  As other courts have held, such delay does not satisfy Rule 24(b)'s mandate that the Motion be timely filed.  *See, e.g.*, *Attix*, 2020 WL 9849821, at *3 (denying motion to intervene as untimely where proposed intervenors' counsel had "been aware of th[e] action for months, and even attempted to coordinate" with counsel for plaintiff in later-filed action); *Peng v. Mastroianni*, No. 20-80102-CIV, 2023 WL 4763198, at *4 (S.D. Fla. June 26, 2023) (denying motion to intervene as untimely and noting that "[t]he Court must consider the length of time from when Movants first knew of their *interest* in this case—not the length of time when Movants first knew of the particular settlement agreement to which Movants now seek to object").

Despite the above facts and law, Proposed Intervenors contend their Motion is timely because they became aware of their "interest in the case" only when they learned of the settlement.  That assertion is patently disingenuous given their attempt to have this case included in Multidistrict Litigation and proposed cooperation agreement, and should therefore be flatly rejected,  Indeed, the circumstances here do not present a matter of first impression for this Court, as Your Honor previously dealt with them in *Pinon et, al. v. Daimler AG et, al*, No. 1:18-CV-3984-MHC

---

[14] Moreover, while Proposed Intervenors concede that they sought to intervene only because they became aware of Plaintiffs' settlement with eXp (and their subsequent settlement with Weichert) (ECF 94-1 at 8–9), Proposed Intervenors cannot credibly claim to have been ignorant of the risk that Plaintiffs here would reach settlement agreements with defendants (like eXp and Weichert).

("*Pinon*").[15]  In *Pinon*, two parallel class actions were filed involving defective car paint.  *Pinon* was filed in the Northern District of Georgia on August 21, 2018.  Two weeks prior to the *Pinon* filing, the *Ponzio* action was filed in New Jersey.  In April 2020, the plaintiffs in both class actions discussed coordinating their litigation efforts, but thereafter stopped communicating about such coordination.  On November 9, 2020, the *Pinon* plaintiffs reached a nationwide settlement.  Shortly thereafter, the *Ponzio* plaintiffs moved to intervene in *Pinon*, arguing that their motion was timely based on the date they learned of the *Pinon* settlement, *just like Proposed Intervenors do here*  This Court rejected that argument, holding that the *Ponzio* plaintiffs knew or should have known of their interest in *Pinon* in May or June, 2020, after they agreed to coordinate litigation.  Thus, this Court denied intervention on grounds that the movants six-month delay rendered their motion untimely.  The Court should do the same here.

> b.  <u>The Existing Parties Will Be Prejudiced by Belated Intervention.</u>

The parties to this action will unquestionably suffer prejudice resulting from Proposed Intervenors' failure to timely seek intervention.  As discussed above, following the JPML's ruling and the expiration of the time for any eligible defendants in this case to opt into the NAR Settlement, Plaintiffs proceeded with this

---

[15] A copy of the *Pinon* order is attached hereto as **Exhibit "A"** (the "*Pinon* Order").

litigation, which involved efforts to resolve Plaintiffs' claims against the remaining defendants prior to engaging in costly and time-consuming discovery. Had Proposed Intervenors timely sought to intervene and transfer, those issues would have been resolved before the parties engaged in substantial settlement discussions. Now that settlements have been reached, it would unduly prejudice Plaintiffs and the defendants to permit intervention for the sole purpose of seeking a forum-shopping transfer designed to upend those settlements. Additionally, defendants who have now announced the proposed settlements to their shareholders and the general public[16] would suffer further prejudice if Proposed Intervenors' belated Motion were granted.

*Pinon* is again illustrative, as this Court ruled that allowing intervention would prejudice the original parties because: (1) it would devalue the time effort put into settlement; (2) it would restart settlement negotiations and delay resolution of the case; and (3) it would drag out litigation for years with costly discovery, motion practice, and trial. These same forms of prejudice exist here, as settlement negotiations in this case have been ongoing for *one year* (since December, 2023), and all that is left in this case is the approval process. Thus, Proposed Intervenors

---

[16] *See* https://www.housingwire.com/articles/exp-settles-commission-lawsuits-for-34-million/; https://www.housingwire.com/articles/mark-spain-real-estate-settles-commission-lawsuits/; https://www.realestatenews.com/2024/11/07/weichert-reaches-a-deal-in-georgia-commissions-case.

have failed to satisfy this second prong of the timeliness analysis.

        c.    <u>Proposed Intervenors Will Not Be Prejudiced if Their Motion is Denied.</u>

Conversely, Proposed Intervenors will suffer ***no prejudice whatsoever*** if their Motion is denied.  Proposed Intervenors argue prejudice based on their baseless accusation that Plaintiffs and Defendants have engaged in an impermissible "reverse auction."  (ECF 94-1 at 10–13.)  That is patently false, as they will be able to fully litigate this issue (and any other objections they may have) during the settlement approval process in this Court.  *See, e.g.*, *Brown ex rel. O'Neil v. Bush*, 194 F. App'x 879, 883 (11th Cir. 2006) (affirming denial of motion to intervene to contest settlement where proposed intervenors had "adequate opportunity to present their objections, and fully considered how their interests would be impacted by the Settlement Agreement"); *Med. & Chiropractic Clinic, Inc. v. Oppenheim*, No. 8:16-CV-1477-T-36TBM, 2016 WL 6093223, at \*7 (M.D. Fla. Oct. 19, 2016) ("Plaintiff's contention regarding 'reverse auction' can be remedied in the ordinary course of litigation, specifically, in the approval process of the settlement.").[17]

---

[17] Proposed Intervenors cite only a single case—*Tech. Training Assocs. Inc. v. Buccaneers Ltd P'Ship*, 874 F.3d 692, 695-98 (11th Cir. 2017)—for the proposition that the right to object to preliminary approval generally is not a basis for denying intervention.  (ECF 94-1 at 20–21.)  That case is inapposite, as: (1) it involved intervention *as of right,* rather than permissive intervention; and (2) the primary issue here is not whether Proposed Intervenors could have *timely* intervened to seek a transfer once they learned the JPML would not centralize the cases, it is instead whether any prejudice Proposed Intervenors might suffer if their motion is denied outweighs the clear prejudice that would accrue to the parties to this action such that

Likewise, there is also no merit to Proposed Intervenors' assertion that they would be prejudiced by "numerous inefficiencies from separately litigating the cases," particularly purported inefficiencies with the "notice process." (ECF 94-1 at 10.) First, as an initial matter, that argument is a patent red herring, as the obvious (*and stated*) purpose of the Motion is to upend the settlements, *not* eliminate inefficiencies. Indeed, Proposed Intervenors' argument is backwards, as it would be entirely *inefficient* to allow intervention and transfer to another court when all that remains to be done in this Court is the approval process. Second, any "inefficiencies" Proposed Intervenors complain of were surely known to them long before they sought to intervene, and are thus the result of their own delay. Third, even if Proposed Intervenors' purported efficiency concerns were not disingenuous (they are) and were not their own fault (they are), they are not well founded, as Proposed Intervenors provide no credible basis for their contention that consolidating the cases would make administrating the settlements more efficient. To the extent there are overlapping classes, the remedy is not to permit intervention and transfer this case to the Western District of Missouri, it is to provide notice to all class members of all settlements reached in this matter and in *Gibson*. Moreover, it is unclear how the purported "inefficiencies in the notice process" would constitute

---

Proposed Intervenors' delay in seeking intervention should be excused. Unlike the present case, in *Tech. Training Assocs.* there was no dispute that the motion to intervene was timely. *Id.* at 696.

*prejudice* to Proposed Intervenors, let alone prejudice that would outweigh the substantial prejudice to the parties in this case.

The *Pinon* order again provides guidance.  *Pinon* held that the movants' prejudice would be minimal because they could object to the settlement or be entitled to the benefits of the settlement.  Here, the same principle applies.  The Proposed Intervenors will not be prejudiced because they can object to the settlement in the preliminary approval stage or be entitled to the benefits of the Plaintiffs' settlement. This supports Plaintiffs' first argument that this Motion to Intervene is not ripe since it is merely a settlement objection that this Court can handle during the preliminary approval stage.

Thus, Proposed Intervenors cannot establish that they will suffer any prejudice if their untimely Motion is denied.

### d.    Additional Factors Weigh Against Permitting Intervention.

There are additional unusual circumstances here militating against a determination that the application is timely.  First, as shown above, Proposed Intervenors decision to wait until they learned of Plaintiffs settlement with eXp reveals their Motion to be a transparent and cynical money grab on the part of counsel for Proposed Intervenors.  Indeed, having failed to negotiate a settlement with eXp themselves (again, despite creating a *de facto* exclusive period during which eXp and other potential opt-in entities were incentivized to negotiate

exclusively with them), counsel for Proposed Intervenors are just now seeking to intervene in this matter for the sole purpose of having it transferred to the Western District of Missouri which they believe to be a more favorable forum for them to oppose the settlement.  The obvious intent of this (belated) maneuver is to put counsel for Proposed Intervenors in a better position to take some or all of the attorneys' fees for themselves before their preferred judge.  In fact, because Proposed Intervenors now know the amount the Settling Defendants are willing to pay to settle on a nationwide basis, Proposed Intervenors could use that information to extort a larger settlement out of those defendants were the case to be transferred.[18]

Second, Proposed Intervenors' belated effort to have this case consolidated with the *Gibson* matter through a motion to transfer is a clear effort to circumvent the JPML's decision declining to centralize or consolidate this case with *Gibson*.

In short, counsel's blatant "money grab," forum shopping and attempt to circumvent the JPML's decision provide additional reasons to deny intervention.

2. *Intervention Would Unduly Delay and Prejudice the Adjudication of the Original Parties' Rights.*

As noted above, a party seeking permissive intervention must show that intervention will not "unduly delay or prejudice the adjudication of the original

---

[18] These machinations are consistent with counsel's behavior to date, including their insistence that Plaintiffs' counsel pay them a sizeable monetary tribute for the privilege of litigating Plaintiffs' counsel's own case.

parties' rights." *U.S. Army Corps of Eng.,* 302 F.3d at 1250; *Attix*, 2020 WL 9849821, at *2. Proposed Intervenors cannot make that showing here.

Given that all that remains to be done in this case is approval of the settlements, it would obviously cause undue delay, as well as prejudice, to permit intervention for the purpose of seeking transfer to Missouri. Again, this Court found thus to be true in *Pinon*. Moreover, seeking intervention for the purpose of moving to transfer *per se* inflicts prejudice and delay on the existing parties. Finally, the existing parties would also be prejudiced by intervention for the reasons shown above in Section III(B)(1)(b).

Accordingly, intervention must be denied because Proposed Intervenors cannot show that (1) their Motion is timely, or (2) that intervention would not result in undue delay and prejudice to the existing parties.

Because Proposed Intervenors cannot show that they should be permitted to intervene, the Court need not address their request to transfer. *See Attix*, 2020 WL 9849821, at *3 (concluding court need not consider proposed intervenor's "first to file argument" given denial of motion to intervene); *Calderon v. Clearview AI, Inc.*, No. 20 CIV. 1296 (CM), 2020 WL 2792979, at *8 (S.D.N.Y. May 29, 2020) ("[A]bsent intervention, the court need not – indeed, cannot – reach the merits of his motion to dismiss, transfer, or stay . . . .") (citing *U.S. ex rel. Eisenstein v. City of N.Y.*, 556 U.S. 928, 933 (2009) ("[I]ntervention is the requisite method for a

nonparty to become a party to a lawsuit.")).

## C.   Even Assuming Permissive Intervention Were Proper, Transfer is Not Appropriate.

### 1.   This Case Could Not Have Been Brought in the Western District of Missouri Due to a Lack of Jurisdiction Over Certain Defendants.

Pursuant to 28 U.S.C. § 1404(a) transfer is permissible only if, among other things, the case could have originally been brought in the transferee court.  As other courts have properly held, the first-to-file rule cannot trump this transfer statute, nor is that rule and exception to the statute.  *Nitride Semiconductors Co. v. Lite-On Tech. Corp.*, No. W-21-CV-00183-ADA, 2022 WL 358164, at *3 (W.D. Tex. Feb. 7, 2022) (party cannot "circumvent jurisdictional requirements using the first-to-file rule"); *In re SK hynix Inc.*, 847 F. App'x 847, 854 (Fed. Cir. 2021) ("judge-made" first-to-file rule cannot "contravene a congressionally enacted statute").  Notably, Proposed Intervenors do not discuss this transfer statute in their Motion, and thus obviously have not met their burden to show that this action could have been brought in the Western District of Missouri.  Transfer should be denied on this basis alone.

Moreover, Proposed Intervenors likely ignored this mandate of Section 1404(a) because they know they cannot satisfy it.  That is, the Western District of Missouri lacks personal jurisdiction over 18 of the 27 original defendants in this action, as well as the majority of the defendants remaining in this action, as these defendants conduct business solely in the State of Georgia and therefore are not

subject to personal jurisdiction (general or specific) in Missouri.[19]

Personal jurisdiction can be specific or general. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014).  "Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state, while general jurisdiction refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose." *Viasystems, Inc. v. EBM–Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 593 (8th Cir. 2011) (cleaned up).  As the United States Supreme Court has affirmed, "[t]he primary focus of [the] personal jurisdiction inquiry is the defendant's relationship to the forum State."  *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, San Francisco Cty., 582 U.S. 255, 262 (2017) (citations omitted).  Here, as shown above, a majority of the Georgia-based defendants in this matter have *no contacts*

---

[19] More specifically, under Eight Circuit law (which would apply to the inevitable jurisdictional motions that would result were this case transferred to the Western District of Missouri), the following Defendants conduct business only in Georgia, and have no contacts with Missouri upon which personal jurisdiction could be predicated: (1) Higher Tech Realty, LLC d/b/a Mark Spain, (2) Atlanta Communities Real Estate, Brokerage, LLC, (3) Solid Source Realty, (4) Palmerhouse Properties, LLC, (5) Hamilton Dorsey Alston Company, Inc., (6) Ansley Atlanta Company, Inc., (7) Beacham & Company, LLC, (8) Tracey Cousineau Real Estate, LLC, (9) Sanders Realty Holdings, LLC, (10) Bolst, Inc. d/b/a The Justin Landis Group, (11) Chapman Hall Realtors, Inc., (12) Signature Properties Group, Inc., (13) Method Real Estate Group, LLC, (14) Path & Post, LLC, (15) Duckworth Properties, LLC, (16) AF Realty Group, LLC, (17) Greater Atlanta Real Estate Group, LLC, and (18) Greater Atlanta Realty Holdings Corporation,  As noted above, while several defendants in this matter may be ostensibly covered by the NAR Settlement, the final approval of that Settlement has been appealed and could be reversed.  Thus, any covered defendants remain at issue in this case, and this Court must account for them in assessing whether transfer to the Western District of Missouri is appropriate.

with the State of Missouri and therefore manifestly are not subject to jurisdiction there under any circumstances.

To the extent Proposed Intervenors suggest that the clear lack of jurisdiction over these defendants is irrelevant to this Court's determination of whether to transfer this case, they are wrong. First, as shown above, the first-to-file rule does not abrogate the requirements of Section 1404(a). Second, the caselaw they rely upon stands only for the proposition that "jurisdictional uncertainties," ***standing alone***, may not be cause to depart of the first-to-file rule. (Mot. at 22–23.) Here, the jurisdictional issues here are far more than "uncertainties," as Proposed Intervenors tacitly acknowledge by anticipating that jurisdictional issues will arise but declining to offer any substantive argument that the would-be transferee court would actually be able to exercise jurisdiction over the Georgia-based defendants. Moreover, even the authority Proposed Intervenors cite confirms that courts can and should consider jurisdictional issues as, at a minimum, a factor in assessing transfer under the first-to-file rule. *See, e.g.*, *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 605 (5th Cir. 1999) (likelihood of jurisdictional dispute in first-filed court "a factor to consider in applying the rule"); *FirsTier Bank, N.A. v. G–2 Farms*, No. 95–3118, 1996 WL 539217, at *4 (D. Neb. Mar. 11, 1996) (same).

   2.   *The First-to-File Rule Does Not Require Transfer Here.*

"The first-filed rule provides that when parties have instituted competing or

parallel litigation in separate courts, the court initially seized of the controversy should hear the case." *Collegiate Licensing Co. v. Am. Cas. Co.*, 713 F.3d 71, 78 (11th Cir. 2013) (citing *Merrill Lynch, Pierce, Fenner & Smith, Inc., v. Haydu*, 675 F.2d 1169, 1174 (11th Cir. 1982)). However, the "first to file rule is not meant to be rigid or inflexible but should be applied in a manner that best serves the interests of justice." *Attix*, 2020 WL 9849821, at *3; *see also Philibert v. Ethicon, Inc.*, 2005 WL 525330, at *1 (S.D. Fla. Jan. 14, 2005); *Carl v. Republic Sec. Bank*, 2002 WL 32167730, at *3 (S.D. Fla. Jan. 22, 2002). "Thus, while the forum where an action is first filed typically is given priority over subsequently-filed actions, it is appropriate to depart from the general rule when there is a showing that the balance of convenience tips in favor of the second forum or that there are special circumstances which justify giving priority to the second action." *Attix*, 2020 WL 9849821, at *3 (quoting *Philibert*, 2005 WL 525330, at *1).

"Applying the first-to-file rule requires evaluation of three factors: (1) the chronology of the two actions; (2) the similarity of the parties; and (3) the similarity of the issues." *Chapman v. Progressive Am. Ins. Co.*, 2017 WL 3124186, at *1 (N.D. Fla. July 24, 2017) (internal quotation marks and citations omitted). Here, the chronology of the two actions cuts *against* transfer under the first-to-file rule, and there are special circumstances that further confirm that transfer is not warranted.

First, while *Gibson* was filed a mere 22 days prior to this case, it most certainly

29

has not proceeded farther than the present action with respect to the Settling Defendants. Indeed, all that remains in this action is the settlement approval process, while—conversely—there is no end in sight to the Missouri litigation. Courts frequently decline to apply the first-to-file rule under these circumstances. *See, e.g.*, *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Payless Shoesource, Inc.*, No. C-11-1892 EMC, 2012 WL 3277222, at *9 (N.D. Cal. Aug. 9, 2012) ("[C]ourts have rejected the [first-to-file] rule when the second-filed action had developed further than the initial suit."); *Capitol Records, Inc. v. Optical Recording Corp.*, 810 F. Supp. 1350, 1355 (S.D.N.Y. 1992) (declining to apply the first-to-file rule, in part, because second-filed action had proceeded further than the first).

Second, while Proposed Intervenors attempt to make much of the lack of substantial formal discovery in this matter, a review of the docket in *Gibson* reveals a similar lack of discovery with respect to eXp or Weichert (the two Settling Defendants also at issue in *Gibson*), as those defendants have both filed motions to dismiss. (*Gibson* ECF 107, 111, 311, 313 & 341.) Moreover, to the extent Plaintiffs have not conducted significant formal discovery or fully briefed early dispositive motions in this case, that is largely due to: (1) a stay that has been in place due to potential settlement agreements negotiated by Proposed Intervenors and/or their counsel; (2) Plaintiffs' counsel's efforts during the pendency of the stay to negotiate a fair and just settlement prior to exhausting resources of the parties and this Court.

30

Third, other compelling circumstances here make transfer inappropriate, including the following:

- Proposed Intervenors' arguments take as a given that they are acting on behalf of putative class members in this case and *Gibson*, but no class has yet been certified in *Gibson* (because, again, the case has not progressed significantly). Because no class has been certified Proposed Intervenors have no right to attempt to "control the litigation and disposition of any claim other than [their] own." *Calderon*, No. 20 CIV. 1296 (CM), 2020 WL 2792979, at *8. Yet that is precisely what they are attempting to do via the instant Motion, which is plainly an attempt to commandeer this litigation and control the resolution of every putative class member's claim and to ensure that resolution inures the benefit of counsel for Proposed Intervenors.

- This case involves numerous defendants not at issue in *Gibson* (or, indeed, any of the various Missouri cases filed by counsel for Proposed Intervenors), and many of them do business exclusively in the State of Georgia or otherwise lack any contacts with Missouri. Proposed Intervenors should not be able to force these defendants to litigate in a forum not of their choice and where they likely are not even subject to personal jurisdiction.

- As shown above, transfer is not necessary for Proposed Intervenors to protect their rights and raise whatever issues they have with the proposed settlements

31

during the approval process.

- Given the obvious prejudice that would result if this case were transferred to the Western District of Missouri—much of which is the direct result of Proposed Intervenors' improper delay in seeking the relief they now request— this Court should decline to transfer this case, assuming it permits Proposed Intervenors' untimely intervention in the first place. *See Attix*, 2020 WL 9849821, at *4 (declining to apply first-to-file rule where "Proposed Intervenors allowed this Court and the Parties to spend considerable resources" before opportunistically seeking intervention and stay).

- Finally, Proposed Intervenors' blatant forum shopping is yet another reason to deny transfer under the first-to-file rule even if transfer were otherwise appropriate and permissible (it isn't, as shown above). *Belacon Pallet Servs., LLC v. Amerifreight, Inc.*, No. 1:15CV191/MW/GRJ, 2016 WL 8999936, at *4 (N.D. Fla. Mar. 26, 2016) ("Compelling circumstances include bad faith negotiations, an anticipatory suit, and forum shopping.").

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny the Motion to Intervene and Transfer Venue. Proposed Intervenors will have ample opportunity to protect their interests through the settlement-approval process, and neither their formal intervention nor the transfer of this case is necessary.

32

DATED:  December 5, 2024                    Respectfully submitted:

                                            */s/Nathan D. Chapman*
                                            Nathan D. Chapman
                                            Georgia Bar No. 244954
                                            Gary E. Thomas
                                            Georgia Bar No. 804760
                                            Matthew Hayes
                                            Georgia Bar No. 494682

                                            **KABAT, CHAPMAN, & OZMER LLP**
                                            171 17th Street NW, Suite 1550
                                            Atlanta, GA 30363
                                            Main: (404) 400-7300
                                            Facsimile: (404) 400-7300
                                            nchapman@kcozlaw.com
                                            gthomas@kcozlaw.com
                                            mhayes@kcozlaw.com

                                            Bryan M. Knight
                                            Georgia Bar No. 142401
                                            Jonathan M. Palmer
                                            Georgia Bar No. 453452
                                            W. Lawton Jordan
                                            Georgia Bar No. 119651

                                            **KNIGHT PALMER, LLC**
                                            One Midtown Plaza
                                            1360 Peachtree Street, Suite 1201
                                            Atlanta, Georgia 30309
                                            P: (404) 228-4822
                                            F: (404) 228-4821
                                            bknight@knightpalmerlaw.com
                                            jpalmer@knightpalmerlaw.com
                                            nsears@knightpalmerlaw.com
                                            ljordan@knightpalmerlaw.com

*Counsel for Plaintiffs 1925 Hooper, LLC, Robert J. Arko, and Andrew M. Moore*

## **LOCAL RULE 5.1(c) CERTIFICATION**

The undersigned attorney of record hereby certifies that the text of this submission has bee prepared in Times New Roman typeface, 14-point, consistent with this Court's requirements in Local Rule 5.1(c)

DATED: December 5, 2024                    */s/ Nathan D. Chapman*
                                                         Nathan D. Chapman


## **CERTIFICATE OF SERVICE**

The undersigned attorney of record hereby certifies that on December 5, 2024, a true and correct copy of the foregoing was filed electronically by the Court's CM/ECF system, which will cause notice and a copy of this filing to be sent to all counsel of record by electronic mail.

DATED: December 5, 2024                    */s/ Nathan D. Chapman*
                                                         Nathan D. Chapman