# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

1925 HOOPER LLC; ROBERT J. ARKO;
and ANDREW M. MOORE; on behalf of
themselves and all others similarly situated,

      Plaintiffs,

    v.

THE NATIONAL ASSOCIATION OF
REALTORS; *et al*.,

      Defendants.

CASE NO.: 1:23-cv-05392-MHC

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENTS WITH DEFENDANTS HIGHER TECH REALTY, LLC
D/B/A MARK SPAIN REAL ESTATE, EXP WORLD HOLDINGS, INC.,
WEICHERT OF NORTH AMERICA, INC., AND ATLANTA
COMMUNITIES REAL ESTATE BROKERAGE, LLC AND
PRELIMINARY CERTIFICATION OF SETTLEMENT CLASS AND
INCORPORATED MEMORANDUM OF LAW**

## TABLE OF CONTENTS

I.  INTRODUCTION…………………………………………………………1

II. BACKGROUND…………………………………………………………4

    A. The *Burnett* Action………………………………………...…………...5

    B. The Georgia Litigation……………………………………………7

        1.  Settlement Negotiations…………………………………....8

        2.  Summary of Settlement Agreements……………………......…9

            a.  The Settlement Class…………...............……....……9

            b.  The Settlement Amounts……......................……10

            c.  Practice Changes……....................................……11

            d.  Notice and Settlement Administration...........................11

            e.  Opt-Out and Objection Procedure..................................12

            f.  Application for Award of Attorney's Fees and Costs......12

            g.  Release of Claims Against Settling Defendants.............13

III.      ARGUMENT AND CITATIONS TO AUTHORITY....................14

    A. The Settlements Merit Preliminary Approval under
       Rule 23(e)(2)..........................................................................17

        1.  The Settlements were the Result of a Thorough, Informed, Fair
            Negotiation Process..................................................................17

        2.  The Settlements Provide Significant Benefits...........................19

            a.  *The Settlements mitigate the risk, expense, and delays of
               continued litigation*.......................................................20

i

b. *The Claims Process is straightforward*...........................23

c. *Counsel will seek reasonable fees and costs*.................24

3. The Settlements Treat Class Members Equally........................25

4. There Are No Undisclosed Side Agreements...........................25

5. The *Bennett* Factors Support Preliminary Approval.................26

a. *The benefits of settlement outweigh the risks at trial*......26

b. *The Settlement is within the range of possible recoveries and is fair, adequate, and reasonable*...................................................................27

c. *Continued litigation would be expensive and lengthy*.....29

d. *The degree of opposition to the settlement*.....................30

e. *The stage of proceedings*................................................30

**B. The Court Will Be Able To Certify The Class**................................31

1. The Class Satisfies Rule 23(a).............................................32

a. *The class is sufficiently numerous*...................................32

b. *Common questions of law and fact exist*........................33

c. *The class representatives are typical*..............................35

d. *The class representatives and class counsel are adequate*.................................................................... 37

2. The Class Satisfies Rule 23(b)(3).........................................39

a. *Common issues of law and fact predominate*.................39

b. *Class treatment is superior*.............................................43

**C. The Proposed Class Notice is the Best Practicable**........................45

**D. The Proposed Schedule for Notice and Approval**........................49

**IV.     CONCLUSION**...................................................................................49

# TABLE OF AUTHORITIES

## CASES

*Adams v. S. Farm Bureau Life Ins. Co.*
  493 F.3d 1276 (11th Cir. 2007)................................................................53

*Adams v. Sentinel Offender Servs., LLC*
  No. 1:17-cv-2813, 2018 WL 2148372 (N.D. Ga. May 10, 2018)........................29

*Amchem Prods., Inc. v. Windsor*
  521 U.S. 591 (1997) ..............................................................36, 46, 52

*Appleyard v. Wallace*
  754 F.2d 955, 958 (11th Cir. 1985) ......................................................43

*Beaty v. Contl. Auto. Sys. U.S., Inc.*, CV-10-S-2440-NE, 2012 WL 12895014 (N.D.
  Ala. Feb. 6, 2012) ...................................................................31

*Behrens v. Wometco Enters., Inc.*,
  118 F.R.D. 534 (S.D. Fla. 1988) ..........................................................31

*Bennett v. Behring Corp.*,
  737 F.2d 982, 986 (11th Cir. 1984)................................................16, 31

*Burnett v. National Ass'n of Realtors, et al.*
  No. 4:19-cv-332 (W.D. Mo. Apr. 29, 2019) .................................................*passim*

*Burrows v. Purchasing Power, LLC*,
  No. 1:12-cv-22800, 2013 WL 10167232 (S.D. Fla. Oct. 7, 2013) .................29, 31

*Camp v. City of Pelham*,
  2:10-CV-01270-MHH, 2014 WL 1764919 (N.D. Ala. May 1, 2014)............29, 30

*Carnegie v. Mut. Sav. Life Ins. Co.*, Civ-99-S-3292-NE, 2004 WL 3715446 (N.D.
  Ala. Nov. 23, 2004) .................................................................17

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
  258 F.R.D. 545, 560 (N.D. Ga. 2007) .....................................34, 36, 50

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013 ......................................................................................36

*Cordoba v. DirectTV, LLC*,
  320 F.R.D. 582 (N.D. Ga. 2017) ..........................................................38, 45

*Cox v. Am. Cast Iron Pipe Co.*,
  784 F.2d 1546 (11th Cir. 1986).................................................................37

*D&M Farms v. Birdsong Corp.*,
  No. 2:19-cv-463, 2020 WL 7074140, at *3 (E.D. Va. Dec. 1, 2020) .................39

*Evans v. U.S. Pipe & Foundry Co.*,
  696 F.2d 925 (11th Cir. 1983).................................................................37

*Family Med. Pharm., LLC v. Trxade Group, Inc.*,
  No. 15-cv-0590, 2016 WL 6573981 (S.D. Ala. July 5, 2016)..............................16

*Fresco v. Auto Data Direct, Inc.*,
  2007 WL 2330895, *4 (S.D. Fla. May 11, 2007) ..............................................15

*George v. Academy Mort'g Corp. (UT)*,
  369 F.Supp.3d 1356, 1371 (N.D. Ga. 2019) ..........................................................23

*Gibson v. NAR, et al.*,
  4:23-cv-00788 (W.D. Mo.) .............................................................*passim*

*Gonzalez v. TCR Sports Broad. Holding, LLP*, No. 18-cv-20048, 2019 WL 2249941
  (S.D. Fla. May 24, 2019) .......................................................................27

*Griffin v. Carlin*,
  755 F.2d 1516 (11th Cir. 1985)..................................................................44

*Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc*.
  855 F.Supp. 825, 827 (E.D. N.C. 1994) ...........................................................18

*Hughes v. Baird & Warner, Inc.*,
  No. 76-cv-3929, 1980 WL 1894, at *2 (N.D. Ill. Aug. 20, 1980) .......................40

*Hyland v. Homeservices of Am., Inc.*,
  No. 3:05-cv-612, 2008 WL 4858202 (W.D. Ky. Nov. 7, 2008) ........................42

*In re Ampicillin Antitrust Litig.*,
  82 F.R.D. 652 (D.D.C. 1979) ...................................................................................25

*In re Cardizem CD Antitrust Litig.*,
  218 F.R.D. 508 (E.D. Mich. 2003) .......................................................................23

*In re Corrugated Container Antitrust Litig.*,
  643 F.2d 195 (5th Cir. 1981).................................................................................44

*In re CP Ships Ltd. Sec. Litig.*,
  578 F.3d 1306 (11th Cir. 2009)..............................................................................19

*In re Delta/Airtran Baggage Fee Antitrust Litigation*,
  No. 1:09-md-2089, 2015 WL 5258757 (N.D. Ga. Aug. 5, 2017).......................50

*In re Equifax Inc. Customer Data Security Breach Litig.*,
  999 F.3d 1247 (11th Cir. 2021)..............................................................................17

*In re Hyundai & Kia Fuel Econ. Litig.*,
  926 F.3d 539 (9th Cir. 2019) .................................................................................47

*In re IPO Sec. Litig.*,
  226 F.R.D. 186 (S.D.N.Y. 2005)..........................................................................25

*In re Packaged Seafood Prod. Antitrust Litig.*,
  No. 15MD2670 DMS(MDD), 2023 WL 2483474 (S.D. Cal. Mar. 13, 2023).....56

*In re Serzone Prods. Liab. Litig.*,
  231 F.R.D. 221, 240 (S.D. W.Va. 2005)...............................................................52

*In re Zurn Pex Plumbing Prod. Liab. Litig.*,
  No. 08-MDL-1958, 2013 WL 716088 (D. Minn. Feb. 27, 2013).......................47

*In re: Bromine Antitrust Litig*,
  203 F.R.D. 403 (S.D. Ind. 2001) ..........................................................................18

*In re: Checking Account Overdraft Litig.*,

275 F.R.D. 654 (S.D. Fla. 2011)...........................................................................21

*In re: Motorsports Merchandise Antitrust Litig.*,
   112 F.Supp.2d 1329 (N.D. Ga. 2000) ..............................................................30

*In re: Tri-State Crematory Litig.*,
   215 F.R.D. 66(N.D. Ga. 2003) .........................................................................42

*Jackson v. Motel 6 Multipurpose, Inc.*,
   130 F.3d 999 (11th Cir. 1997) ..........................................................................37

*James v. JPMorgan Chase Bank, N.A.*, No. 15-cv-2424, 2017 WL 2472499 (M.D.
   Fla. June 5, 2017) .............................................................................................27

*Kilgo v. Bowman Transp., Inc.*,
   789 F.2d 859 (11th Cir. 1986) ..........................................................................38

*Klay v. Humana, Inc.*,
   382 F.3d 1241, 1269 (11th Cir. 2004) ..............................................................51

*Kornberg v. Carnival Cruise Lines, Inc.*,
   741 F.2d 1332, 1337 (11th Cir. 1984)...............................................................41

*Lipuma v. Am. Express Co.*,
   406 F.Supp.2d 1298, 1323 (S.D. Fla. 2005)......................................31 , 34 , 35

*Markos v. Wells Fargo Bank, N.A.*,
   No. 15-cv-01156, 2017 WL 416425 (N.D. Ga. Jan. 30, 2017) ..............................27

*Mashburn v. Nat'l Healthcare, Inc.*,
   684 F.Supp. 660  (M.D. Ala. 1988)...................................................................35

McGuire Oil Co. v. Mapco, Inc.,
   958 F.2d 1552 (11th Cir.1992).........................................................................49

*Melanie K. v. Horton*,
   No. 1:14-cv-710, 2015 WL 1308368  (N.D. Ga. Mar. 23, 2015) ........................39

*Moehrl v. National Association of Realtors*,
   No. 19-cv-01610-ARW (N.D. Ill.)...................................................6 , 38 , 40, 50

*Parsons v. Brighthouse Networks, LLC*,
   2015 WL 13629647 (N.D. Ala.) ...............................................................30, 34, 35

*Ponzio v. Pinon*,
   87 F.4th 487 (11th Cir. 2023) .............................................................................16

*Rivera v. Equifax Info. Servs., LLC*,
   341 F.R.D. 328 (N.D. Ga. 2022) .........................................................................46

Rutstein v. Avis Rent–A–Car Sys., Inc.,
   211 F.3d 1228 (11th Cir. 2000)...........................................................................46

*Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*,
   601 F.3d 1159 (11th Cir. 2010)...........................................................................46

*Schwyhart v. AmSher Collection Servs., Inc.*,
   No. 15-cv-01175, 2017 WL 1034201 (N.D. Ala. Mar. 16, 2017).........................27

*Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*,
   350 F.3d 1181 (11th Cir. 2003) ..........................................................................43

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ...........................................................................................39

*Williams v. Bluestem Brands, Inc.*,
   No. 17-cv-1971, 2019 WL 1450090 (M.D. Fla. Apr. 2, 2019) .............................48

*Williams v. Wells Fargo Bank*,
   280 F.R.D. 665 (S.D. Fla. 2012) .........................................................................41

## RULES

Fed. R. Civ. P. 23(a) ...........................................................................................3, 4
Fed. R. Civ. P. 23(b)(3) .......................................................................................3, 4
Fed. R. Civ. P. 23(e)(1)...........................................................................................3
Fed. R. Civ. P. 23(e)(1)(B)....................................................................................16
Fed. R. Civ. P. 23(g)(3) ..........................................................................................3
Fed. R. Civ. P. 23(e)(2) .........................................................................................19

Fed. R. Civ. P. 23(e)(2)(A)..........................................................................19, 20, 21

Fed. R. Civ. P. 23(e)(2)(C)..........................................................................22

Fed. R. Civ. P. 23(e)(2)(C)(ii) ....................................................................25

Fed. R. Civ. P. 23(e)(2)(C)(iii)....................................................................26

Fed. R. Civ. P. 23(e)(2)(D)..........................................................................22

## TREATISES

3B J.W. Moore, *Moore's Federal Practice* (2d ed. 1996) ......................................18

4 W. Rubenstein, *Newberg on Class Actions* § 13:10 (5th ed. 2015) ....................17

*Manual for Complex Litig.,* § 21.632 (4th ed.) ..........................................16, 17, 22

# I. INTRODUCTION

Following months of extensive arms-length negotiations, Plaintiffs 1925 Hooper, LLC, Robert J. Arko, and Andrew M. Moore ("Georgia Plaintiffs" or "Plaintiffs"), on behalf of themselves and the proposed Settlement Class (defined herein), have reached settlements with the following Defendants (the "Settling Defendants"):

1. Higher Tech Realty, LLC d/b/a Mark Spain Real Estate ("Higher Tech"),

2. eXp World Holdings, Inc. and eXp Realty, LLC and several of their affiliates (collectively "eXp"),

3. Weichert North America, Inc., Weichert Co., and Weichert Real Estate Affiliates, Inc. (collectively "Weichert"), and

4. Atlanta Communities Real Estate Brokerage, LLC ("Atlanta Communities").[1]

Accordingly, Plaintiffs seek an Order (i) certifying their proposed nationwide Settlement Class for purposes of settlement under Fed. R. Civ. P. 23(a) and (b)(3); (ii) preliminarily approving the proposed Settlement Agreements; (iii) directing Notice to the Class Members pursuant to Rule 23(e)(1); (iv) appointing Class Counsel for the Class Representatives and Class Members pursuant to Rule 23(g)(3); and (v) scheduling a Final Approval hearing pursuant to Rule 23(e)(2). While Plaintiffs

---

[1] The Settlement Agreements with Higher Tech ("Higher Tech Sett."), eXp ("eXp Sett."), Weichert ("Weichert Sett."), and Atlanta Communities ("Atlanta Comm. Sett.") are attached as Exhibits A, B, C, and D, respectively, to the Declaration of Bryan M. Knight, Ex. 1 ("Knight Decl.").

maintain that, even absent settlement, they would be able to secure class certification and prevail on the merits at trial, success is not assured, and the Settling Defendants are prepared to vigorously defend the actions at every stage. If approved, the settlements would bring meaningful relief to home sellers as well as certainty and closure to highly contentious and costly litigation with the Settling Defendants.

As shown below, the proposed Settlement Class satisfies the requirements of Rule 23(a) and Rule 23(b)(3), and the proposed Settlement Agreements are fair, reasonable and adequate, and consistent with other settlements that recently have received preliminary or final approval in similar class actions in Missouri. Like those settlements, the parties here have negotiated proposed Settlements that resolve on a nationwide basis Plaintiffs' claims for damages and injunctive relief against the Settling Defendants for their alleged anticompetitive practices in the market for residential real estate brokerage services. The proposed Settlements with eXp, Weichert, Atlanta Communities, and Higher Tech provide for meaningful practice changes, cooperation in litigation against non-settling defendants, and total payments of $44.05 million as follows:

| **Settling Defendant** | **Settlement Payment Amount** |
| --- | --- |
| eXp | $34 million |
| Weichert | $8.5 million |
| Atlanta Communities | $800,000 |
| Higher Tech | $750,000 |

Each settlement was the product of intensive negotiations and, in the cases of eXp and Weichert, were facilitated by experienced mediators. (Declaration of Bryan M. Knight ("Knight Decl.") ¶¶ 10-23.) The settlements were informed by weighing the substantial monetary, practice change, and cooperation relief against the risks, cost, and delay of further litigation (including appeals), as well as limitations on the Settling Defendants' ability to pay the full amount of any trial judgment entered against them. (*Id.* ¶¶ 23-24.) The settlements are fair, adequate, reasonable, and beneficial to the Settlement Class. (*Id.* ¶ 24.) Further, the proposed Notice Plan, which includes direct mailing of postcard notification, a media and social media campaign, and the establishment of a website, fulfills the requirements of both Rule 23 and due process as the best notice practicable under the circumstances. (Declaration of Julie N. Green, ("Green Decl."), ¶¶ 3, 10-13.)[2]

Accordingly, Plaintiffs respectfully request that the Court grant this motion and enter an order: (1) preliminarily approving the settlements with Higher Tech, eXp, Weichert, and Atlanta Communities; (2) certifying the Settlement Class; (3) appointing Plaintiffs as Settlement Class Representatives; (4) appointing Knight Palmer LLC and Kabat Chapman & Ozmer LLP as Settlement Class Counsel; (5)

---

[2] *See, e.g., In re Packaged Seafood Prod. Antitrust Litig.,* No. 15MD2670 DMS(MDD), 2023 WL 2483474, at *2 (S.D. Cal. Mar. 13, 2023) (approving notice plan with estimated reach of at least 70% and observing "[c]ourts have repeatedly held that notice plans with similar reach satisfy Rule 23(c)(2)(B)").

appointing CPT Group, Inc. ("CPT") as the notice administrator and directing notice to the Settlement Class; and (6) scheduling a final approval hearing to determine whether the settlements are fair, reasonable, and adequate under Rule 23(e)(2) and whether the Settlement Class should be certified.

## II.  BACKGROUND

This class action arises out of a nationwide conspiracy orchestrated by the National Association of Realtors (the "NAR") and residential real estate brokerages across the country, including local brokerages and traditional behemoths such as Keller Williams, RE/MAX, and HomeServices International, among others (the "Brokerages"). This conspiracy involved a concerted effort by NAR and the Brokerages to artificially inflate broker compensation at the expense of the Brokerages' home seller clients. NAR and the Brokerages accomplished this end by requiring their customers, including the Class Members here, to shoulder both the listing agents' commissions *and* the buyer agents' commissions in order for their customers to list their residential properties on the ubiquitous Multiple Listing Services (the "MLS"). More specifically, as a prerequisite to listing any residential property on an MLS, seller brokers were compelled to adhere strictly to NAR rules, including the "Mandatory Offer of Compensation Rule" enshrined in a seller's listing agreement dictating the mandatory terms of compensation that must be paid

as commissions not only to the seller's broker, but also to the buyer's broker (the "Compensation Rule").

### A.  The *Burnett* Action

The *Burnett* Action involved Sherman Act claims brought against NAR, Realogy Holdings Corp. ("Realogy"), HomeServices of America, Inc. ("HomeServices"), RE/MAX, LLC (RE/MAX") and Keller Williams Realty, Inc. ("Keller Williams") on behalf of Missouri home sellers and was filed in the United States District Court for the Western District of Missouri, Case No. 4:19-CV-332-SRB (the "*Burnett* Action").[3] Similar to the class claims here, the *Burnett* Action focused on the NAR's concerted effort with the named brokerages to increase broker commissions through the Compensation Rule. Faced with the prospect of a catastrophic verdict, RE/MAX and Realogy[4] settled with the *Burnett* plaintiffs before trial. After fact and expert discovery were concluded, a class was certified, and dispositive motions were denied, a federal jury found the remaining defendants liable under the Sherman Act. The *Burnett* jury awarded the plaintiffs approximately $1.785 billion in damages which would have potentially increased to over $5 billion

---

[3] The *Burnett* action was originally styled *Sitzer v. NAR et al* (W.D. Mo. filed April 29, 2019), however, the case was re-captioned with the filing of the Second Amended Complaint on June 30, 2021 (*Burnett* ECF 477) following the elimination of Joshua Sitzer and Amy Winger as class representatives (*see Burnett* ECF 469).

[4] Realogy is now known as Anywhere Real Estate, Inc. ("Anywhere").

under the treble damages provision found within the Sherman Act.[5] Post verdict, Keller Williams promptly settled with the *Burnett* plaintiffs, bringing the combined settlement value to $208.5 million while NAR eventually opted to resolve any further nationwide litigation, including appeals, by agreeing to settle with the *Burnett* plaintiffs on March 15, 2024 for at least $418 million (the "NAR Settlement"). HomeServices subsequently agreed to a settlement of $250 million with the *Burnett* plaintiffs on April 29, 2024. The Missouri court has granted final approval of the settlements with RE/MAX, Anywhere, and Keller Williams (*Burnett* ECF 1487), and preliminary approval of the settlements with NAR and HomeServices (*Burnett* ECF 1460 & 1520).

Immediately following the *Burnett* verdict, a new class action styled *Gibson v. NAR, et al.*, 4:23-cv-00788 was filed in the U.S. District Court for the Western District of Missouri naming additional national brokerages.[6] Since the *Gibson* filing,

---

[5] A similar class action styled *Moehrl v. National Association of Realtors*, Case No. 19-cv-01610-ARW (N.D. Ill.) was filed in the Northern District of Illinois in March 2019, a little over one month prior to the *Burnett* action. However, that litigation proceeded at a slower pace and following the jury verdict in *Burnett*, all parties to the *Moehrl* action joined and participated in the subsequent global settlements in the *Burnett* action.

[6] The NAR Settlement also includes the *Gibson* plaintiffs. In addition, the *Gibson* plaintiffs recently received final approval of settlements with Redfin Corporation ($9.25 million), Engel & Volkers Americas, Inc. ($6.9 million), Compass, Inc. ($57.5 million), The Real Brokerage Inc. ($9.25 million), Realty ONE Group, Inc. ($5 million), At World Properties LLC ($6.5 million), and Douglas Elliman, Inc. ($17.5 million). (*See Gibson* ECF 530).

a number of similar class actions have been lodged against the NAR and various other real estate brokerages across the country, including this class action.

### B.    The Georgia Litigation

Plaintiffs 1925 Hooper, LLC, Robert J. Arko, and Andrew M. Moore filed the above-captioned case to bring similar claims against additional Defendants on behalf of a nationwide class of corporate and individual sellers of residential real estate. The Georgia Plaintiffs are represented in this action by Knight Palmer LLC and Kabat Chapman & Ozmer LLP as Co-Lead Class Counsel. Plaintiffs and their counsel have worked diligently to advance the litigation. Prior to filing this action, Class Counsel undertook significant research into the Settling Defendants, their participation in NAR, their enforcement of the Compensation Rule, and their market share and market presence. (Knight Decl. ¶ 5.) Counsel reviewed publicly available information, including SEC filings, internal and confidential financial statements, company websites, third party websites, and other sources in order to investigate the connection between these companies and the practices found to be antitrust violations in *Burnett*. (*Id*.; Declaration of Nathan D. Chapman ("Chapman Decl.") ¶ 5). Counsel believed that each of the Defendants in this action followed and enforced the Compensation Rule and/or similar rules of non-NAR MLSs. (Knight Decl. ¶ 5; Chapman Decl. ¶ 6). Plaintiffs and their counsel then filed a detailed complaint against twenty-seven (27) Defendants, including several that do business only in the

Southeast. Plaintiffs' Amended Complaint included 172 allegations and four separate counts, including three state-specific claims that had not been included in any of the other brokerage class actions. Thereafter, and as set forth below, Plaintiffs and their counsel have diligently prosecuted the case to date. (Knight Decl. ¶¶ 6-29).

### 1.    Settlement Negotiations

The parties reached each of these settlements through extensive negotiations, including, with respect to eXp and Weichert, engaging in negotiations through the assistance of nationally recognized and highly experienced mediators. In the mediation with eXp, the parties used Hon. Daniel Weinstein (Ret.) and Ambassador David Carden. In the Weichert mediation, Hon. Randy Rich (Ret.) served as the mediator. The biographies of all three of these mediators are attached as Exhibits E, F, and G, respectively, to the Knight Decl. (Knight Decl. ¶ 18, Exs. E-G). Both mediations lasted all day and were attended by lead counsel for Plaintiffs and lead counsel for eXp and Weichert, respectively, and as part of the negotiations, the parties provided mediation briefs and statements. (*Id.* ¶¶ 18, 21, 25). The settlements for Higher Tech and Atlanta Communities were the result of substantial ongoing negotiations and exchanges of financial information and related data among the parties. (*Id.* ¶¶ 18-19, 23-24). For each settlement, the parties reached agreement only after months of negotiation. (*Id.* ¶ 12). Settling Defendants also provided

detailed financial records, pursuant to FRE 408, that the Plaintiffs carefully reviewed to determine Settling Defendants' ability to pay. (*Id.* ¶ 18).

The parties reached the Settlement Agreements after considering the risks and costs of litigation. Plaintiffs and Class Counsel believe the claims asserted have merit and that the evidence developed to date supports the claims. Plaintiffs and counsel, however, also recognize the myriad risks and delay of further proceedings in a complex case like this and believe that the settlements confer substantial benefits upon the Settlement Class Members. (Knight Decl. ¶¶ 27, 29; Chapman Decl. ¶ 21). Moreover, Plaintiffs and counsel conducted a thorough financial analysis of the ability of each Settling Defendant to pay a greater monetary judgment or greater settlement amount. (Knight Decl. ¶ 14). The Settling Defendants deny the material allegations of the Complaint and any wrongdoing but wish to avoid the time, expense, uncertainty, and risk attendant with further litigation.

### 2. Summary of Settlement Agreements with Higher Tech, eXp, Weichert, and Atlanta Communities

#### a. The Settlement Class

The proposed Settlement Class in the Settlement Agreements with Higher Tech, eXp, Weichert, and Atlanta Communities is as follows: All persons who sold a home that was listed on a multiple listing service anywhere in the United States where a commission was paid to any brokerage in connection with the sale of the

home between October 31, 2019 and date of Class Notice. (Higher Tech Sett. ¶ 15; eXp Sett. ¶ 15; Weichert Sett. ¶ 14; and Atlanta Comm. Sett. ¶ 14).

The Settlement Agreements provide for "a nationwide class with a nationwide settlement and release." (eXp Sett. ¶ 15; Weichert Sett. ¶ 14, and Atlanta Comm. Sett. ¶ 17; Higher Tech Sett. ¶ 15). The Settlement Class encompasses persons who sold homes on any multiple listing service nationwide, regardless of affiliation with NAR and regardless of whether the Settlement Class member used one of the Settling Defendants as his or her broker.

**b.    The Settlement Amounts**

The proposed settlements provide that the Settling Defendants will pay the following amounts for the benefit of the Settlement Class: eXp: $34 million; Weichert: $8.5 million; Atlanta Communities: $800,000; Higher Tech: $750,000. (eXp Sett. ¶ 18; Weichert Sett. ¶ 17; Atlanta Comm. Sett. ¶ 20; Higher Tech Sett. ¶ 21). These amounts are inclusive of all costs of settlement, including payments to class members (including Plaintiffs), attorney fees and costs, and costs of notice and administration. (*Id.*).

The Settlement Amounts are non-reversionary: once the settlements are finally approved by the Court and after administrative costs, litigation expenses, and attorney fees are deducted, the net funds will be distributed to Settlement Class Members with no amount reverting back to the Settling Defendants, regardless of

the number of Opt-Out Sellers or claims made. (Higher Tech Sett. ¶ 40; eXp Sett. ¶ 38; Weichert Sett. ¶ 38; Atlanta Comm. Sett. ¶ 39).

### c.    Practice Changes

The proposed Settlements provide for eXp, Weichert, Atlanta Communities, and Higher Tech to make numerous practice changes, to the extent they are not already implemented, within three (3) months after the Settlements become effective and will sunset several years after the Effective Date of the Settlement Agreements. (eXp Sett. ¶¶ 49, 50; Weichert Sett. ¶¶ 47, 48; Atlanta Comm. Sett. ¶ 50-52; Higher Tech Sett. ¶¶ 51, 52). Those practice changes, which are set forth in each of the Settlement Agreements, mirror those secured in the *Burnett* and *Gibson* settlements.

### d.    Notice and Settlement Administration

The Parties have agreed to retain CPT as the Settlement Administrator. CPT will be responsible for receiving Claims submitted by Settlement Class Members, determining whether all submitted information is complete and accurate, and effectuating class notice. (Higher Tech Sett. ¶ 25; eXp Sett. ¶ 22; Weichert Sett. ¶ 22; Atlanta Comm. Sett. ¶ 24). Notice will be provided through a combination of direct mail, email notice, text messaging, social media, publication, and other means. (Green Decl. ¶ 11).

In addition to providing robust direct and other notice, the Settlement Administrator will also establish a Settlement Website, which will contain electronic

versions of the Claim Form that can be submitted online or via regular mail, the full Settlement Agreements, a detailed Long Form Notice, important court documents, and answers to frequently asked questions. (Green Decl. ¶ 56). The format and language of the Short Form Notice and Long Form Notice have been carefully drafted in straightforward, easy-to-read language to clearly inform Settlement Class Members of all the material aspects of the Settlement, such as the relief they are entitled to under the settlement, the amount of attorneys' fees that may be sought, and instructions and deadlines for opting out from, or objecting to, the Settlement. (*Id.* at ¶ 63).

### e. Opt-Out and Objection Procedure

Settlement Class Members will have an opportunity to exclude themselves from the settlements or object to their approval. The procedures and deadlines for filing opt-out requests and objections will be referenced in all forms of the notice and on the Settlement Website. (Green Decl. ¶¶ 63, 70). With respect to objections, the notices inform Settlement Class Members that the Final Approval Hearing will be their opportunity to appear and have their objections heard. (*Id.* at ¶ 71). The notices also inform Settlement Class Members that they will be bound by the release unless they timely exercise their right to exclusion. (Green Decl., Ex. B).

### f. Application for Award of Attorneys' Fees and Costs

The settlements authorize Settlement Class Counsel to seek to recover their

attorney fees and costs incurred in prosecuting the Action. (Higher Tech Sett. ¶¶ 34, 38; eXp Sett. ¶¶ 32, 35; Weichert Sett. ¶¶ 30, 33; Atlanta Comm. Sett. ¶ 37, 40). Following the Court's preliminary approval of the Settlements, Class Counsel will submit an application to the Court for an award of attorney fees of up to 20% of the Settlement Amounts and costs to be paid out of the Settlement Fund.

### g.    Release of Claims Against Settling Defendants

Upon the Effective Date, Plaintiffs and the Settlement Class will release and discharge the Settling Defendants, and their respective corporate parents, subsidiaries, related entities, affiliated franchisees, independent contractors, and other representatives from any and all claims arising from or relating to "conduct that was alleged or could have been alleged in the Action arising from or related to any or all of the same factual predicates for the claims alleged in the Action, including but not limited to compensation (including commissions and fees) negotiated, offered, obtained, or paid to brokerages in connection with the sale of any residential home." (eXp Sett. ¶¶ 7, 11–13, 26–30; Weichert Sett. ¶¶ 6, 10-12, 26-28; Atlanta Comm. Sett. ¶ 5, 28-30; Higher Tech Sett. ¶¶ 7, 18–20, 29–31). The complete terms of the releases are contained in the Settlement Agreements.

The Settlement Agreements, however, do nothing to abrogate the rights of any member of the Settlement Class to recover from any other defendants. (*See* Higher Tech Sett. ¶ 62; eXp Sett. ¶ 59; Weichert Sett. ¶ 57; Atlanta Comm. Sett. ¶ 61). The

Settlement Agreements also expressly exclude from the Release a variety of individual claims that Class Members may have concerning product liability, breach of warranty, breach of contract, or tort of any kind (other than a breach of contract or tort based on any factual predicate in this Action). (eXp Sett. ¶ 28; Weichert Sett. ¶ 28; Atlanta Comm. Sett. ¶ 30; Higher Tech Sett. ¶ 31). Also exempted are any "individual claims that a class member may have against his or her own broker or agent based on a breach of contract, breach of fiduciary duty, malpractice, negligence, or other tort claim, other than a claim that a Class Member paid an excessive commission or home price due to the claims at issue in these Actions." (eXp Sett. ¶ 28; Weichert Sett. ¶ 28; Atlanta Comm. Sett. ¶ 30; Higher Tech Sett. ¶ 31).

### III. THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENTS

Federal Rule of Civil Procedure 23(e) sets out the process for approving class settlements. Review of a proposed settlement generally proceeds in two stages: first, a hearing on preliminary approval, followed by a second hearing, on final approval. *See Manual for Complex Litig.,* § 21.632 (4th ed.); Rule 23(e)(2). This case is at the first stage of the approval process, where the Court decides if it is "likely" to approve the settlements such that notice of the settlements should be sent to the Class. Fed. R. Civ. P. 23(e)(1)(B).

At the preliminary approval stage, the Court conducts an initial review to

determine whether the proposed Settlements are "within the range of possible approval." *Fresco v. Auto Data Direct, Inc.*, 2007 WL 2330895, *4 (S.D. Fla. May 11, 2007) (internal citations omitted). "[T]he court's primary objective at th[is] point is to establish whether to direct notice of the proposed settlement to the class, invite the class's reaction, and schedule a final fairness hearing." 4 W. Rubenstein, *Newberg on Class Actions* § 13:10 (5th ed. 2015); *Manual for Complex Litig.*, § 21.632 (4th ed.). *See also Family Med. Pharm., LLC v. Trxade Group, Inc.*, No. 15-cv-0590, 2016 WL 6573981, at *7 (S.D. Ala. July 5, 2016) (noting that at the preliminary approval stage, "the Court must first 'make a preliminary evaluation of the fairness of the settlement before directing that notice be given to the settlement class") (quoting *Smith v. William Wrigley Jr. Co.*, No. 09-60646-CIV, 2010 WL 2401149, at *2 (S.D. Fla. 2010)); *Ponzio v. Pinon*, 87 F.4th 487, 495 (11th Cir. 2023) (The standard for reviewing a proposed settlement of a class action is whether it is "fair, reasonable, and adequate.").

The law generally encourages settlement. *See Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) ("[O]ur judgment is informed by the strong judicial policy favoring settlement as well as by the realization the compromise is the essence of settlement."); *In re Equifax Inc. Customer Data Security Breach Litig.*, 999 F.3d 1247, 1273 (11th Cir. 2021) ("there is a 'strong judicial policy favoring settlement"). Furthermore, "settlements of class actions are highly favored in the law and will be

upheld whenever possible because they are means of amicably resolving doubts and preventing lawsuits." *Carnegie v. Mut. Sav. Life Ins. Co.*, Civ-99-S-3292-NE, 2004 WL 3715446, *17 (N.D. Ala. Nov. 23, 2004) (citations omitted); *see also* 4 *Newberg and Rubenstein on Class Actions* § 13:44 (6th ed.) ("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding lengthy trials and appeals."). The Court is not required at this point to make a final determination as to the fairness of the Settlement Agreements—that decision is made only at the final approval stage, after notice of the settlement has been provided to the Settlement Class, and they have had an opportunity to voice their views of the settlement. *See* 3B J.W. Moore, *Moore's Federal Practice* (2d ed. 1996), ¶ 23.80[2.-1] at 23-479. Courts have noted that the standard for preliminary approval is less rigorous than the analysis at final approval. *See Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 855 F.Supp. 825, 827 (E.D. N.C. 1994) (explaining that the issue at preliminary approval stage is whether there is "probable cause" to justify notifying class members of proposed settlement); *In re: Bromine Antitrust Litig*, 203 F.R.D. 403, 416 (S.D. Ind. 2001) (the "bar [for obtaining preliminary approval] is low").

Plaintiffs aver that the proposed settlements meet the standard for preliminary approval and that the appropriate factual and legal bases for class certification exist. Indeed, preliminary approval should be "granted unless a proposed settlement is

obviously deficient." *Family Med. Pharm.*, 2016 WL 6573981, at *7 (citing *William Wrigley Jr. Co.*, 2010 WL 2401149, at *2). As explained below, the Court is "likely" to find that the settlements reached by the parties are fair, adequate, and reasonable, such that they warrant preliminary approval and issuance of notice.

## A.    The Settlements Merit Preliminary Approval Under Rule 23(e)(2)

Rule 23(e)(2) identifies criteria for determining whether to grant preliminary approval of a proposed class settlement and direct notice to the proposed class. The factors include whether: (1) the class representatives and proposed class counsel have adequately represented the class; (2) the settlement was negotiated at arm's length; (3) the relief provided to the class is adequate when weighed against (i) the cost, risk, and delay of trial and appeal, (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, (iii) the terms of any proposed award of attorneys' fees, including timing of payment, and (iv) any agreement required to be identified under Rule 23(e)(3); and (4) the settlement treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2); *see also In re CP Ships Ltd. Sec. Litig.*, 578 F.3d 1306, 1318 (11th Cir. 2009) (quoting *Bennett,* 737 F.2d at 986). Application of these factors to this case demonstrates that the proposed settlements satisfy all these conditions.

### 1.    The Settlements were the Result of a Thorough, Informed, Fair Negotiation Process.

Rule 23(e)(2) asks whether "the class representatives and class counsel have

adequately represented the class" and "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(A). The Advisory Committee Notes inform that these paragraphs "identify matters that might be described as 'procedural' concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2)(A) & (B) advisory committee's note.

Procedurally, the Georgia Plaintiffs (proposed Settlement Class Representatives) and Plaintiffs' counsel (proposed Class Counsel) have conducted themselves in the Settlement Class's best interest and have adequately represented the proposed Settlement Class. First, the Georgia Plaintiffs do not have any interests antagonistic to other Class Members and have retained lawyers with the necessary qualifications, skill, and experience to lead this litigation, and Class Counsel have vigorously pursued the claims alleged in the Amended Class Complaint. Settlement Class Representatives approved the terms of each Settlement. (Knight Decl. ¶ 28; Chapman Decl. ¶ 22). Settlement Class Representatives also approved the filing of the Georgia Complaint and are prepared to represent the Class as the settlement approval process proceeds against the remaining defendants. (Chapman Decl. ¶ 23). Correspondingly, proposed Class Counsel are experienced in complex class and representative litigation and are prepared to serve as Co-Lead Counsel for the Settlement Class in the ongoing litigation. (Knight Decl. ¶¶ 2-4; Chapman Decl. ¶¶ 2-5; Declaration of Jonathan M. Palmer ¶¶ 2-10 ("Palmer Decl.")). Second, as

discussed above, the Settlements were negotiated at arm's length. Indeed, the parties reached settlements with eXp and Weichert only after hard-fought mediations with respected mediators and then subsequently finalized the proposed Settlement Terms through multiple rounds of discussions and drafting revisions.[7] (Knight Decl. ¶¶ 18 - 26). *See, e.g.*, *In re: Checking Account Overdraft Litig.*, 275 F.R.D. 654, 661 (S.D. Fla. 2011) ("Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness"); *see also* Fed. R. Civ. P. 23(e)(2)(A) & (B) advisory committee's note ("[T]he involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests"). No attorneys' fees were agreed upon as part of the negotiations leading to the Settlement Agreements. (*Id*. at ¶ 18). Thus, the procedurally fair manner in which the proposed Settlements were reached weigh strongly in favor of granting preliminary approval.

### 2. The Settlements Provide Significant Benefits in Exchange for the Compromise of Strong Claims.

Rules 23(e)(2)(C) and (D) require a substantive review of a proposed settlement. *See* Fed. R. Civ. P. 23(e)(2)(A) & (B) advisory committee's note ("These

---

[7] The proposed Settlements arose out of weeks of serious, informed, and non-collusive negotiations facilitated by mediation conducted on October 1st (eXp) and November 5th (Weichert) before experienced and sophisticated mediators. (Knight Decl. ¶ 18.

paragraphs focus on what might be called a 'substantive' review of the terms of the proposed settlement. The relief that the settlement is expected to provide to class members is a central concern."). Specifically, Fed. R. Civ. P. 23(e)(2)(C) requires a court to consider whether "the relief provided for the class is adequate, taking into account ... the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims" and "the terms of any proposed award of attorneys' fees, including timing of payment." Moreover, Fed. R. Civ. P. 23(e)(2)(D) considers whether "the proposal treats class members equitably relative to each other." Each of these substantive considerations are satisfied here as the settlements provide for a significant financial recovery for the Settlement Class—especially considering Settling Defendants' limited financial resources—and the settlements also include significant practice changes that benefit the entire class of home sellers, and in fact all home sellers going forward. In addition, the settlements treat Class Members fairly and equitably relative to each other.[8]

> ### a.  *The Settlements mitigate the risks, expenses, and delays of continued litigation.*

The proposed Settlements secure significant benefits, even in the face of the inherent uncertainties of litigation. Compromise in exchange for certain and timely

---

[8] An allocation plan that ensures an equitable distribution of monetary funds amongst the Settlement Class will be submitted to the Court for approval in due course.

relief is unquestionably a reasonable outcome. *See George v. Academy Mort'g Corp. (UT)*, 369 F.Supp.3d 1356, 1371 (N.D. Ga. 2019) (settlement a "fair compromise" given risks and "certainty of substantial delay").

The parties naturally dispute the strength of their claims and defenses. The settlements reflect a compromise based on the parties' educated assessments of their best-case and worst-case scenarios, and the likelihood of various potential outcomes. Plaintiffs' best-case scenario is prevailing on the merits at trial in this litigation and upholding their award on appeal. But "experience proves that, no matter how confident trial counsel may be, they cannot predict with 100% accuracy a jury's favorable verdict, particularly in complex antitrust litigation." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 523 (E.D. Mich. 2003). The same is true for post-trial motions and appeals.[9] And being liable alone for the alleged damages would bankrupt the Settling Defendants. Indeed, even in Plaintiff's best-case scenario, those in the Settlement Class are unlikely to recover more than a few pennies on the dollar given the relative financial positions of the Settling Defendants.

---

[9] Plaintiffs' claims raise numerous complex legal and factual issues under antitrust law. Litigation in this case could prove to be arduous and costly as Plaintiffs must pursue discovery and prove their claims against Settling Defendants. By contrast, the Settlements ensure a recovery to the Settlement Class that will be allocated and distributed in an equitable manner. In light of the many uncertainties of litigation, an equitable and certain recovery is highly favorable, and weighs in favor of approving the proposed Settlements. (Knight Decl. ¶ 29; Chapman Decl. ¶ 12).

Against this risk, the settlements provide for a recovery of $44.05 million from just four of many named Defendants in this action and brings the combined total of relief from all defendants that have settled throughout the country following the *Burnett* jury verdict to over $1 billion, to date. As discussed in detail below, the instant settlements are supported by the financial condition of the Settling Defendants, who lack the ability to pay the damages alleged.[10] The settlements further provide important changes to the Settling Defendants' business practices to protect Class Members who sell homes in the future. Among other things, the Settling Defendants have committed to take steps to educate their affiliated agents that the companies do not require listing agents to make offers of compensation to buyer agents and commissions are negotiable.[11]

---

[10] The Settlements are fair and reasonable in light of the financial condition of Higher Tech, eXp, Weichert, and Atlanta Communities, and the limited resources available to each to satisfy a settlement as compared to the size of the potential damages. Pursuant to Federal Rule of Evidence 408, Plaintiffs received and carefully reviewed and analyzed financial records from each of the Settling Defendants. (Knight Decl. ¶¶ 13-15). The monetary settlements were reached with due consideration for the Defendants' limited ability to pay. (*Id.*) Furthermore, the entire real estate industry has faced significant financial headwinds over the past 2 years due to challenging financial conditions including high interest rates. In 2023, just 4.09 million existing homes were sold in the United States, the lowest number since 1995. Brooklee Han, *Just 4.09 million existing homes were sold in 2023*, HOUSINGWIRE (Jan. 19, 2024), https://www.housingwire.com/articles/just-4-09-million-existing-homes-were-sold-in-2023/#:~:text=Existing%20home%20sales%20dropped%20to,sold%2C%20the%20fewest%20si. This has caused understandable financial difficulties for Defendants, whose businesses are directly tied to the number of home sales.

[11] The plaintiffs in the *Burnett, Moehrl* and *Gibson* actions have entered into a

Furthermore, the settlements to do not preclude Plaintiffs from obtaining additional relief from the non-settling defendants should the claims against them proceed to trial. In fact, as part of the settlements, Plaintiffs further secured cooperation from the Settling Defendants to assist Plaintiffs with prosecuting their claims against the remaining defendants at trial—where Plaintiffs will strive to secure additional monetary and non-monetary relief. As courts recognize, this is a factor in approving settlements. *See In re Ampicillin Antitrust Litig.*, 82 F.R.D. 652, 654 (D.D.C. 1979) (approving settlement in light of settling defendant's "assistance in the case against [a non-settling defendant]"); *see generally In re IPO Sec. Litig.*, 226 F.R.D. 186, 198–99 (S.D.N.Y. 2005) (recognizing the value of cooperating defendants).

### b.    *The Claims Process is Straightforward.*

The proposed settlements provide benefits to Class Members via a simple claims process. Each Class Member will receive information about the settlements via the proposed Notice Plan; specifically, email and postcard notice sent directly to all Class Members and establishment of a settlement website. *See, supra,* Section II.B.2.d. The Notice Plan will ensure that Settlement Class Members receive effective notice informing them about the settlements and enable them to easily submit a Claim. Fed. R. Civ. P. 23(e)(2)(C)(ii). To receive a benefit, Class Members will submit a

---

separate proposed settlement with NAR to achieve additional injunctive relief—including changes to the challenged rules.

Claim Form and supporting documents online or by mail. (Green Decl. ¶¶ 66-69).

### c.    Counsel will seek reasonable fees and costs.

As set forth above, Plaintiffs' counsel conducted an extensive investigation into the facts and circumstances of this case, and they put in significant time and resources into prosecuting the claims on behalf of the Class. *See, e.g., supra,* Section II.B. Plaintiffs' counsel's anticipated attorneys' fees request – twenty percent (20%) of the Total Settlement Amount – falls within the lower range of attorneys' fees awarded in similar cases and will likely be deemed reasonable in light of the significant recovery achieved for the Settlement Class Members and the effort undertaken by Plaintiffs' counsel in pursuing these claims on behalf of the Settlement Class. Fed. R. Civ. P. 23(e)(2)(C)(iii). *See also Gonzalez v. TCR Sports Broad. Holding, LLP*, No. 18-cv-20048, 2019 WL 2249941, at *6 (S.D. Fla. May 24, 2019) (collecting authorities and noting "district courts in the Eleventh Circuit routinely approve fee awards of one-third of the common settlement fund"); *Schwyhart v. AmSher Collection Servs., Inc.*, No. 15-cv-01175, 2017 WL 1034201, at *3 (N.D. Ala. Mar. 16, 2017) (finding award of attorneys' fees of "one-third of the Settlement Fund" to be "fair and reasonable"); *Markos v. Wells Fargo Bank, N.A.*, No. 15-cv-01156, 2017 WL 416425, at *3 (N.D. Ga. Jan. 30, 2017) (awarding $4.9 million, or 30% of settlement fund); *James v. JPMorgan Chase Bank, N.A.*, No. 15-cv-2424, 2017 WL 2472499, at *2 (M.D. Fla. June 5, 2017) (awarding attorneys' fees amounting to 30% of the settlement fund where

class counsel "litigat[ed] a large class action" brought under the TCPA). This compares favorably to the other settlements reached in the *Gibson* action where class counsel received 33.3% of the settlement amounts, resulting in a substantially greater benefit to the Settlement Class in this action. (*Gibson* ECF 530, p. 57). Nonetheless, to the extent that any Settlement Class Members believe that the requested attorneys' fees are not appropriate, they will have the opportunity to submit a written objection and appear at the Final Approval Hearing.

### 3.    The Settlements Treat Class Members Equitably.

Fed. R. Civ. P. 23(e)(2)(D) states that a court should consider whether "the proposal treats Class members equitably relative to each other." The proposed settlements fairly and reasonably allocate benefits among Class Members without any preferential treatment being given to the Plaintiff Class Representatives or any separate or distinct segment of the Settlement Class. Courts have approved similar structured settlements concerning home seller claims. *See, e.g.*, *Burnett* and *Gibson*.

### 4.    There Are No Undisclosed Side Agreements.

Fed. R. Civ. P. 23(e)(3) requires the parties to "file a statement identifying any agreement made in connection with the proposal." No such undisclosed agreements exist here.[12]

---

[12] Plaintiffs have identified all agreements made in connection with the settlements, which are solely limited to the terms contained in the Settlement Agreements filed herewith as Exhibits A-D to Knight Decl., and the confidential supplemental agreement

### 5.   The *Bennett* Factors Support Preliminary Approval.

In addition to the factors set forth in Rule 23(e)(2), courts in the Eleventh Circuit often consider the *Bennett* factors during preliminary approval. *See, e.g., Adams v. Sentinel Offender Servs., LLC,* No. 1:17-cv-2813, 2018 WL 2148372, at *7-8 (N.D. Ga. May 10, 2018) (discussing *Bennett*, 737 F.2d at 986).

### a.   The Benefits of Settlement Outweigh the Risks at Trial.

The first *Bennett* factor weighs in favor of approval, where there was "no guarantee that the plaintiffs would prevail at trial on their [] claims." *Camp v. City of Pelham*, 2:10-CV-01270-MHH, 2014 WL 1764919, *3 (N.D. Ala. May 1, 2014); *see also Burrows v. Purchasing Power, LLC*, No. 1:12-cv-22800, 2013 WL 10167232, *6 (S.D. Fla. Oct. 7, 2013) (granting approval where "success at trial is not certain for Plaintiff[s].")*. Although the Georgia Plaintiffs are confident about their case, the risks involved cannot be disregarded, and success cannot be guaranteed. *See generally, In re: Motorsports Merchandise Antitrust Litig.*, 112 F.Supp.2d 1329, 1334 (N.D. Ga. 2000) ("[T]he trial process is always fraught with uncertainty."). This is particularly true where, as here, the case "involves complex legal and factual issues that have been hotly contested, and would almost certainly continue to be hotly contested throughout the remaining litigation" and "the ultimate outcome on the merits were uncertain for

---

with eXp related to opt out thresholds, which is identified in the eXp Settlement Agreement.  Fed. R. Civ. P. 23(e)(2)(C)(iv).

both Parties." *See Parsons v. Brighthouse Networks, LLC*, 2015 WL 13629647 at *3 (N.D. Ala.). The proposed settlements avoid these uncertainties and provides the Settlement Class with meaningful and certain relief.

> **b.    The Settlement Is Within the Range of Possible Recoveries and Is Fair, Adequate, and Reasonable.**

The second and third *Bennett* factors—whether the settlements are within the range of possible recoveries and are fair, adequate, and reasonable—are "easily combined and normally considered in concert." *Camp*, 2014 WL 1764919 at *3. "The Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but to evaluate the proposed settlement in its totality." *Lipuma v. Am. Express Co.*, 406 F.Supp.2d 1298, 1323 (S.D. Fla. 2005). The range of outcomes extends from no liability to total victory and must be considered in light of the attendant risks. *See, e.g.*, *Beaty v. Contl. Auto. Sys. U.S., Inc.*, CV-10-S-2440-NE, 2012 WL 12895014, *8 (N.D. Ala. Feb. 6, 2012). Thus, even a minimal settlement can be approved. *See, e.g.*, *Burrows*, 2013 WL 10167232 at *6; *Bennett*, 737 F.2d at 986; *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery.").

The settlements reached here are considerable—in the upper range of possible recoveries given the relative size of the Settling Defendants, and certainly on par with several recently approved settlements of similar claims in the *Gibson* case.

(Knight Decl. ¶ 18 – 26. For instance, eXp had an average four-year total transaction volume of $124B and settled in this case for $34M. The closest peer in terms of market capitalization and comparable transaction volume would likely be Compass, Inc., which had a four-year average total transaction volume of $204B and settled for $57.5M, equating to a multiplier of .00028. When this multiplier is applied to eXp's $124B average transaction volume, it equates to $34.7M, which is essentially on par with the $34M settlement Plaintiffs' counsel negotiated and achieved at mediation with eXp. Notably, the Compass, Inc. settlement figure received final approval in the *Gibson* Action. (*Gibson* ECF 530) (Knight Decl. ¶ 22). Similarly, the Weichert settlement is substantially within the range of the settlements that have been approved in the *Gibson* action and with similarly situated brokerages. Based on publicly available transactional and financial records and Weichert's internal transactional and financial records provided by its counsel to Plaintiffs' counsel, Plaintiffs determined that Weichert had an average four-year total transaction volume of approximately $25B and settled in this case for $8.5M equating to a settlement multiplier of .00034. By comparison, Compass, Inc. (four-year average total transaction volume of approximately $204B) settled for $57.5M, equating to a multiplier of .00028. HomeSmart Holdings, Inc. (four-year average total transaction volume of approximately $20.8B) settled for $4.7M and United Real Estate (four-year average total transaction volume of approximately $16.1B) settled for $6.5M.

Both the HomeSmart Holdings, Inc. and United Real Estate settlements equate to a multiplier of .00023 against their respective four-year average total transaction volume. Each of these settlements received final approval in the *Gibson* Action (*Gibson*, ECF 530). Further, settlements with similarly sized brokerages such as The K Company Realty, LLC d/b/a LoKation have recently been announced in the *Gibson* Action. (*Gibson* ECF 531). Based on publicly available and verifiable information from realtrends.com, LoKation had a four-year average total transaction volume of approximately $4.5B and settled for $925K equating to a settlement multiplier of .0002. (Knight Decl. ¶ 26).

The settlements avoid the risks of prolonged litigation, and provide Class Members with certain, immediate relief. Moreover, as previously discussed, the settlements also provide for critical practice changes that also will benefit the Class Members as future home sellers. *See, supra*, Section II.B.2.c. Thus, the settlements are fair, adequate, and reasonable, based on the range of possible recovery.

### c.    *Continued Litigation Would Be Expensive and Lengthy.*

A settlement that "will alleviate the need for judicial exploration of . . . complex subjects, reduce litigation costs, and eliminate the significant risk that individual claimants might recover nothing" merits approval. *Lipuma*, 406 F.Supp.2d at 1324. Such is the case here. Approval will avoid complex, expensive, and lengthy litigation, saving resources of the parties and the Court. *See, e.g.*,

*Parsons*, 2015 WL 13629647 at *4. A national class action such as this one involves seemingly endless discovery; extensive expert involvement; argument and voluminous briefing over certification, summary judgment, and *Daubert* challenges; a lengthy trial; and appeals.[13] The proposed settlements resolve the case without any further delay and will, if finally approved, offer Class Members an immediate and certain recovery. Thus, this factor also strongly favors preliminary approval of the Settlements.

### d.    The Degree of Opposition to the Settlement.

Courts do not consider this factor until notice has been provided to settlement class members. *See* C*olumbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 560 (N.D. Ga. 2007).

### e.    The Stage of Proceedings.

Courts look at the last *Bennett* factor "to ensure that the Georgia Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Lipuma*, 406 F.Supp.2d at 1324. Critically, courts have approved settlements at early stages of litigation. *See Mashburn v. Nat'l Healthcare, Inc.*, 684 F.Supp. 660, 669 (M.D. Ala. 1988) (holding that early settlements are to be encouraged, and accordingly, only some reasonable amount of

---

[13] The protracted and costly litigations of similar class action claims in *Burnett* (W.D. Mo.) and *Moehrl* (N.D. Ill.) aptly illustrate this stark reality. For example, those cases drug on for years.

discovery is required to determine the fairness of the settlement). Plaintiffs and Class Counsel have litigated certain aspects of this case at the pleadings stage, thoroughly investigated the facts and law, briefed the relevant legal issues in mediation statements, and reviewed substantive evidence relating to the claims and defenses. *See Parsons*, 2015 WL 13629647 at *12 ("This is not a case in which a complaint has been filed and the parties have rushed to a settlement. Thus, all Parties had a keen grasp of the issues, the factual underpinnings of the claims and defenses herein, and the measure of the evidence supporting those claims and defenses."). Additionally, in *Burnett*, not only did substantial discovery occur, but the case was fully tried on the merits to a jury, thereby providing significant information for all future litigants and their counsel to consider in analyzing and assessing similar class claims. (Knight Decl. ¶ 5.)Therefore, the *Bennett* factors, like the Rule 23 factors, strongly support approval of the settlement.

### B.    The Court Will Be Able To Certify The Class

Where a class has not been certified prior to settlement, the Court must also consider the prospect of class certification in determining whether to direct notice to the class. *See, e.g., Columbus Drywall & Insulation, Inc.*, 258 F.R.D. at 553 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("In order to certify the settlement class, the Court must examine whether the settlement class complies with Rule 23...[and] engage in an independent analysis to determine whether plaintiffs'

proposed settlement class complies with Rule 23(a) and (b).")). While the ultimate decision on certification is not made until the final approval hearing, at the preliminary approval stage the parties must nevertheless "ensure that the court has a basis for concluding that it likely will be able, after the final hearing, to certify the class." Fed. R. Civ. P. 23(e) advisory committee's note. To be certified, a class must satisfy the four requirements of Rule 23(a) and one of the subsections of Rule 23(b). *See Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013); *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997). As set forth below, the Settlement Class readily satisfies these requirements and class certification for settlement purposes is due to be granted. Indeed, the classes in *Burnett* and *Gibson* have all been certified either for settlement or trial. (*Burnett*, ECF 741, p. 40; *Gibson*, ECF 530, pp. 4-5).

## 1.    The Class Satisfies Rule 23(a)

### a.    *The Class is Sufficiently Numerous*

Rule 23(a)(1) is satisfied where, as here, "the class is so numerous that joinder of all class members is impracticable." Fed. R. Civ. P. 23(a)(1). "Although mere allegations of numerosity are insufficient to meet this prerequisite, a plaintiff need not show the precise number of members in the class." *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983). "[W]hile there is no fixed numerosity rule, generally less than twenty-one is inadequate, more than forty adequate, with

numbers between varying according to other factors." *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) (internal quotation marks omitted). *See also Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986) (31 class members from "a wide geographical area" numerous). *Cordoba v. DirectTV, LLC*, 320 F.R.D. 582 (N.D. Ga. 2017) (Cohen, J.) (numerosity requirement met in TCPA class action where records showed calls made to approximately 18,000 phone numbers), *vacated and remanded on other grounds*, 942 F.3d 1259 (11th Cir. 2017).

Here, Plaintiffs conservatively estimate that Settlement Class Members number in the hundreds of thousands, dispersed across the United States. For example, with respect to eXp alone, the total listing and dual agency transactions numbered 573,144, with the total count of seller clients—*i.e.*, potential Class Members—being 803,360. (Knight Decl. ¶ 27). Thus, the Settlement Class plainly satisfy Rule 23(a)(1)'s numerosity requirement. *See, e.g., Burnett*, 2022 WL 1203100, at \*5 ("hundreds of thousands of class members"); *Moehrl v. Nat'l Ass'n of Realtors*, No. 1:19-cv-01610, 2023 WL 2683199, at \*11 (N.D. Ill. Mar. 29, 2023) ("membership of each proposed class can be expected to number in the thousands").

### b.    *Common Questions of Law and Fact Exist.*

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." *Melanie K. v. Horton*, No. 1:14-cv-710, 2015 WL 1308368, at \*4 (N.D. Ga. Mar. 23, 2015) ("To satisfy the commonality requirement, Plaintiffs must show that

questions of law or fact are common to the entire class."). Plaintiffs must show that resolution of an issue of fact or law "is central to the validity of each" class member's claim; "[e]ven a single [common] question will" satisfy the commonality requirement. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 359 (2011) (quotation omitted); *see also Williams v. Mohawk Indus. Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009) ("commonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members"). "In the antitrust context, courts have generally held that an alleged conspiracy or monopoly is a common issue that will satisfy Rule 23(a)(2) as the singular question of whether defendants conspired to harm plaintiffs will likely prevail." *D&M Farms v. Birdsong Corp.*, No. 2:19-cv-463, 2020 WL 7074140, at *3 (E.D. Va. Dec. 1, 2020).

Here, the Georgia Plaintiffs contend that the Class claims are rooted in common questions of fact, as illustrated by the previous findings in *Burnett* and *Moehrl*. In the *Burnett* case, the court held that there were many issues common to the *Burnett* classes, including (1) whether defendants engaged in a conspiracy to artificially inflate the cost of commissions in residential real estate transactions; (2) whether the conspiracy violates Section 1 of the Sherman Act; (3) the duration, scope, extent, and effect of the conspiracy; (4) whether a *per se* or rule of reason analysis should apply; and (5) whether the *Burnett* plaintiffs and other members of the class

were entitled to, among other things, damages, and/or injunctive relief. *See Burnett*, 2022 WL 1203100, at *5. Similarly, the *Moehrl* court found that the commonality requirement was met based on the common question "whether Defendants conspired to artificially inflate the buyer-broker commissions paid by the class by adopting the Challenged Restraints, in violation of § 1 of the Sherman Act." *Moehrl*, 2023 WL 2683199, at *11. These common issues exist with respect to the proposed Settlement Class in this case, just as they did with respect to the classes initially certified in *Burnett* and *Moehrl*. *See, e.g., Hughes v. Baird & Warner, Inc.*, No. 76-cv-3929, 1980 WL 1894, at *2 (N.D. Ill. Aug. 20, 1980) ("The obvious question of fact common to the entire class is whether or not a conspiracy existed. This question will most probably predominate the entire lawsuit."). In particular, the conduct of Higher Tech, eXp, Weichert, and Atlanta Communities that is being challenged in this litigation generally centers on rules adopted nationwide and applying to realtors nationwide.

### c.    *The Class Representatives' Claims are Typical.*

Rule 23(a)(3) requires that the class representatives' claims be "typical" of class members' claims. *Williams v. Wells Fargo Bank*, 280 F.R.D. 665, 672-73 (S.D. Fla. 2012). "In other words, there must be a nexus between the class representative's claims or defenses and the common questions of fact or law which unite the class. A sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the

same legal theory." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984). "The burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named plaintiff." *Burnett*, 2022 WL 1203100, at *6 (citing *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995)). "In the antitrust context, typicality is established when the named plaintiffs and all class members alleged the same antitrust violations by defendants. Specifically, named plaintiffs' claims are typical in that they must prove a conspiracy, its effectuation, and damages therefrom – precisely what the absent class members must prove to recover." *Hyland v. Homeservices of Am., Inc.*, No. 3:05-cv-612, 2008 WL 4858202, at *4 (W.D. Ky. Nov. 7, 2008) (internal citations and quotations omitted); *Burnett*, 2022 WL 1203100, at *6.

A "representative plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of the other class members, and his or her claims are based on the same legal theory." *In re: Tri-State Crematory Litig.*, 215 F.R.D. 660, 690 (N.D. Ga. 2003). Here, the same alleged course of conduct injured the proposed Class Representatives (*i.e.*, the Georgia Plaintiffs) in the same manner it has injured all other Class Members. Like the Georgia Plaintiffs, each Class Member sold a home that was listed on a multiple listing service in the United States and the Plaintiffs' and Class Members' claims arise out of a common course of misconduct by Defendants; they all paid a commission when

they sold their homes that was inflated by Defendants' conduct. As such, the typicality requirement of Rule 23(a)(3) is satisfied. See, e.g., *Burnett*. 2022 WL 1203100, at *6-7 (court held that the *Burnett* plaintiffs' claims are typical of members of the *Burnett* classes).

### d. The Class Representatives and Class Counsel are Adequate.

Rule 23(a)(4) requires that, for a case to proceed as a class action, the court must find that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is satisfied where, as here, "the named Plaintiffs have [no] interests antagonistic to those of the rest of the class" and "Plaintiffs' counsel are qualified, experienced and generally able to conduct the proposed litigation." *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985). This "adequacy of representation analysis encompasses two separate inquiries (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003).

Here, Plaintiffs' interests are representative of and consistent with the interests of the proposed Settlement Class Members—all are home sellers who were required to absorb the cost of both the listing agents' commissions *and* the buyer agents' commissions in order to list their residential properties on the Multiple Listing

Services, and all seek relief under the Sherman Act. Plaintiffs, as Class Representatives, have no interests antagonistic to Class Members and will continue to vigorously protect the Class, as they have throughout this litigation. *See In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981) ("[S]o long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes.").

Plaintiffs are also represented by experienced, competent counsel. Proposed Class Counsel have engaged in complex class litigation and have extensive experience in consumer class action lawsuits. (Palmer Decl. ¶ 2-10; Chapman Decl. ¶¶ 2-5). As such, proposed Class Counsel are qualified to assess the fairness and reasonableness of the Settlement Agreements reached in this case. Further, Plaintiffs' counsel vigorously and competently represented the Georgia Plaintiffs' and Settlement Class Members' interests in this action and will continue to fulfill their duties to the class. Thus, "plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation." *Griffin v. Carlin*, 755 F.2d 1516, 1533 (11th Cir. 1985); *City of Southfield Gen. Employees' Ret. Sys. v. Nat'l Vision Holdings, Inc.*, No. 1:23-cv-00425, 2023 WL 11780356, at *2 (N.D. Ga. May 19, 2023).

Based on all of the above, Rule 23(a)(4) is satisfied. *See Cordoba*, 320 F.R.D. at 601 ("[N]either Plaintiff nor his counsel appear to have any interests that are

antagonistic to the proposed class[,] [and] Plaintiff's counsel appear to possess the necessary qualifications and experience to serv as class counsel.").

## 2. The Class Satisfies Rule 23(b)(3).

A class is certifiable under Rule 23(b)(3) where "questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Settlement Class before the Court here satisfies both of these requirements.[14]

### a. *Common Issues of Law and Fact Predominate.*

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem.*, 521 U.S. at 623. "In conducting this inquiry, a court should 'give careful scrutiny to the relation between common and individual questions in a case.'" *Rivera v. Equifax Info. Servs., LLC*, 341 F.R.D. 328, 335 (N.D. Ga. 2022) (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 454 (2016)). "Whether an issue predominates can only be determined after considering what value the resolution of the class-wide issue will have in each class member's underlying cause of action." *Rutstein v. Avis Rent–*

---

[14] Furthermore, Plaintiffs also show that Defendants have acted or refused to act on grounds that apply generally to the Settlement Class, such that injunctive relief and/or corresponding declaratory is appropriate with respect to the class as a whole. *See* Fed, R. Civ. P. 23(b)(2).

*A–Car Sys., Inc.,* 211 F.3d 1228, 1234 (11th Cir. 2000). Common issues of fact and law predominate if they "'ha[ve] a direct impact on every class member's effort to establish liability' that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.,* 601 F.3d 1159, 1170 (11th Cir. 2010) (quoting *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1270 (11th Cir. 2009)).

"[W]hether a proposed class is sufficiently cohesive to satisfy Rule 23(b)(3) is informed by whether certification is for litigation or settlement." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 558 (9th Cir. 2019). "When a class is being certified for settlement, the Court need only analyze the predominance of common questions of law and the superiority of a class action for fairly and effectively resolving the controversy…." *In re Zurn Pex Plumbing Prod. Liab. Litig.*, No. 08-MDL-1958, 2013 WL 716088, at *5 (D. Minn. Feb. 27, 2013). For example, in *Zurn Pex*, the court found that common issues predominated because class representatives and members of the settlement class all sought to remedy a "shared legal grievance[.]" *Id.*

Here, all Plaintiffs and Class Members seek to remedy the same shared legal grievance—widespread conduct by Corporate Defendants and NAR throughout the United States that resulted in supra-competitive broker commission rates. This conduct includes nationwide policies enacted by the various Defendants to

perpetuate the challenged conduct—including requirements that agents and brokerages affiliated with the Corporate Defendants belong to NAR, participate in both NAR-affiliated and non-NAR affiliated multiple listing services and/or follow NAR's Code of Ethics and MLS Handbook. It also includes nationwide policies enacted by NAR, including NAR's Code of Ethics. Indeed, Defendants' requirements that their subsidiaries and franchises comply with relevant NAR rules and/or belong to NAR raise issues that are common to the Settlement Class. Such evidence will come from Defendants' files, statements, policies, contracts, records, and employees, and is not specific to individual class members. Also at issue are specific multiple listing service rules, including rules mandating blanket unilateral offers of compensation to cooperating brokers, that are present in multiple listing services throughout the United States— including in multiple listing services that are not directly or indirectly affiliated with NAR. All Plaintiffs and Class Members seek the same relief—compensation for the higher broker rates that they have had to pay, as well as systemic reforms that address the underlying conduct. *See Williams v. Bluestem Brands, Inc.*, No. 17-cv-1971, 2019 WL 1450090, at *4 (M.D. Fla. Apr. 2, 2019) ("[c]ommon issues of fact and law predominate if they 'ha[ve] a direct impact on every class member's effort to establish liability and on every class member's entitlement to . . . monetary relief'") (citing *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254-55 (11th Cir. 2004)).

Common issues also predominate for each element that the Plaintiffs and Class Members must prove to prevail in an antitrust case: "(1) violation of the antitrust laws, (2) cognizable injury attributable to the violation, and (3) at least the approximate amount of the damage." *McGuire Oil Co. v. Mapco, Inc.,* 958 F.2d 1552, 1557-58 (11th Cir.1992). First, as discussed above, all members of the Settlement Class share the same legal grievance— a violation of the antitrust laws by Defendants. Second, as in the *Burnett* action, "the fact of antitrust impact can be established through common proof . . . ." *Burnett*, 2022 WL 1203100, at *11 (quoting *In re Nexium Antitrust Litig.*, 777 F.3d 9, 18 (1st Cir. 2015)). The *Burnett* and *Moehrl* plaintiffs already have "shown the existence of common questions concerning antitrust impact that can be answered with common evidence" (*Moehrl*, 2023 WL 2683199, at *19; *Burnett*, 2022 WL 1203100, at *10–12, *18), including expert opinions, analysis of residential real estate transactions in foreign benchmark countries, and transaction data from defendants and MLSs. The same common questions are at issue in this case. At bottom, evidence of impact from the fact that commissions in the United States are higher than international markets is evidence common to the nationwide Settlement Class here. Third, all members of the proposed Settlement Class have been damaged by paying inflated commissions as a result of the Challenged Rules or other similar rules or by paying any commission to a buyer broker. Experts in the *Burnett* and *Moehrl* actions presented reliable

methods of measuring damages as the difference between the amount class members paid for buyer agent commissions in the actual world versus what they would have paid in the but-for world. (*See Moehrl* ECF 403; *Burnett* ECF 741). The same type of methodology could be used for the broader Settlement Class in this case. Accordingly, here, "[t]he Court [should] conclude[] that common questions predominate the inquiry regarding whether defendants violated antitrust laws." *Columbus Drywall & Installation, Inc. v. Masco Corp.*, 258 FRD 545, 556 (N.D. Ga. 2007); *accord In re Delta/Airtran Baggage Fee Antitrust Litigation*, No. 1:09-md-2089, 2015 WL 5258757, at *9 (N.D. Ga. Aug. 5, 2017) ("[T]he Court finds that Plaintiffs have carried their burden on the predominance inquiry with respect to all three elements of their antitrust claim.").

### b.    Class Treatment is Superior.

In addition to the predominance of common questions, Rule 23(b)(3) requires a finding that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Superiority looks to the "relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1269 (11th Cir. 2004).  Factors relevant to the superiority of a class action under Rule 23(b)(3) include: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation

concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

In this case, the first three factors weigh heavily in favor of class certification. First, class members have little economic incentive to sue individually based on the amount of potential recovery involved, and any Settlement Class Member who wishes to opt out will have an opportunity to do so. Second, there is just a small handful of other lawsuits filed by individual Settlement Class Members, all of which were filed after the initial *Gibson* complaint and none of which have made significant progress in litigation to date. Settlement Class Members will retain the ability to opt out of the Settlement Class if they wish to pursue their claims individually. Third, judicial efficiency is served by approving the Settlements. It would be inefficient— for both the Court and the parties—to engage in hundreds of thousands of individual trials involving similar claims. "Requiring individual Class Members to file their own suits would cause unnecessary, duplicative litigation and expense, with parties, witnesses and courts required to litigate time and again the same issues, possibly in different forums." *In re Serzone Prods. Liab. Litig.*, 231 F.R.D. 221, 240 (S.D. W.Va. 2005). Proceeding as a class action, rather than a host of separate individual trials, would provide significant economies in time, effort, and expense, and permit

Settlement Class Members to seek damages that would otherwise be too costly to pursue.

Finally, the Supreme Court has found that when certifying a settlement class, the final Rule 23(b)(3) factor—manageability—does not apply: "[A] district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620. Such is the case here. If approved, the Settlement Agreements would obviate the need for a trial against the Settling Defendants, and thus questions concerning that trial's manageability are irrelevant. Accordingly, the Court should certify the Settlement Class.

## C.    The Proposed Class Notice Is The Best Practicable

Rule 23(e)(1) requires that the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal" before a settlement may be approved. Fed. R. Civ. P. 23(e)(1)(A). To satisfy due process, notice must "reach the parties affected" and "convey the required information." *Adams v. S. Farm Bureau Life Ins. Co.*, 493 F.3d 1276, 1285-86 (11th Cir. 2007). For a Rule 23(b)(3) settlement class, the Court must "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Notice Plan proposed meets these standards.

Plaintiffs propose that the form of notice of the proposed settlements with Higher Tech, eXp, Weichert, and Atlanta Communities be substantially similar to the court-approved notice provided in the *Gibson* action.[15] Specifically, here, the parties have agreed to retain CPT to administer the proposed notice plan and claims process. CPT's qualifications are outlined in the Declaration of Julie N. Green, attached hereto.

CPT anticipates a robust notice plan that achieves at least a 70-95% reach. The notice plan will consist of:

- Direct notice to Settlement Class Members for whom the Settling Defendants provide contact information or for whom contact information is located via other means (*e.g.*, third-party data). The direct notice mechanism will include: email and text message notice for Settlement Class Members for whom an email address or cellular telephone number is available; postcard notice for Settlement Class Members for whom an email is not available; and a claim stimulation effort consisting of supplemental email notices to Settlement Class Members.

- A targeted digital effort with the leading digital networks (Google & Bing), the top social media platforms (Facebook, Meta & Instagram), and a

---

[15] [*Gibson*, ECF 530, p. 3].

respected programmatic partner.

- Additional efforts including an internet search campaign to assist interested Settlement Class Members in finding the case website, the distribution of a national press release, and sponsorships with popular class action websites (TopClassActions.com, ClassAction.org, etc.);

- Other digital outreach efforts, including a case-specific website, an established toll-free telephone number, and creation of a case-specific QR Code. The following URL has been reserved for the case-specific website: www.NationwideRealEstateCommissionSettlement.com.

Green Decl. ¶ 11.

Based on its expertise, CPT anticipates that this notice plan will exceed the applicable standards for providing the best practicable notice. *Id.* at ¶ 13. Indeed, the proposed media effort alone—even without the benefit of any direct notice— will reach at least 70% of the potential Settlement Class Members and is "more robust" than many other court approved programs. *Id.* at ¶ 10. Thus, the notice plan satisfies Rule 23's requirements.

CPT advised and provided input on the development of the long form notice (attached as Exhibit B to Green Decl.). The long form notice will be available on the case-specific settlement website, and the email and postcard notices will be drafted to be substantially consistent with the long form notice after the Court approves the

long form notice. CPT also advised and provided input on the development of the proposed claim form (attached as Exhibit C to Green Decl.), which will be available online on the case-specific website and also available in hard copy to any individual who requests a written form. Green Decl. at ¶¶ 66-69. CPT's proposed notice plan also provides a mechanism for Settlement Class Members who desire to opt out of or object to the proposed settlements. *Id.* at ¶¶ 70-72. In CPT's opinion, the proposed notice program "provides the best notice practicable under the circumstances, is consistent with the requirements of Rule 23, and is consistent with other similar court-approved best notice practicable notice programs." *Id.* at ¶ 10.

CPT's proposed Notice Plan is more than sufficient in a class action like this one. *See, e.g., In re Packaged Seafood Prod. Antitrust Litig.,* No. 15MD2670 DMS(MDD), 2023 WL 2483474, at *2 (S.D. Cal. Mar. 13, 2023) (approving notice plan with estimated reach of at least 70% and observing "[c]ourts have repeatedly held that notice plans with similar reach satisfy Rule 23(c)(2)(B)") (citing cases); *accord Gibson* ECF 530, p. 5 (holding that a similar proposed notice plan provides for the "best notice practicable and satisfies the requirements of due process"). Because the proposed Notice Plan effectuates direct notice to all Settlement Class Members, establishes a publicly available Settlement Website, and fully apprises Settlement Class Members of their rights, it comports with the requirements of Due Process and Rule 23 and should be approved. Accordingly, the Court should appoint

CPT as the Settlement Administrator and authorize the proposed Notice Plan contained herein.

### D.    The Proposed Schedule For Notice And Approval

In connection with preliminary approval, the Georgia Plaintiffs request that the Court set a schedule for disseminating notice and a Final Approval Hearing. As set forth in their Notice Plan, the Georgia Plaintiffs propose the following:

| Event | Deadline |
|---|---|
| Notice mailed to Class Members ("Notice Date") | 60 days after Court enters the Preliminary Approval Order |
| Settlement website available to Class Members | 60 days after Court enters the Preliminary Approval Order |
| Deadline to file Motion for Attorneys' Fees, Costs, and Class Incentive Awards | 45 days after Court enters the Preliminary Approval Order |
| Deadline to Submit a Claim or Object to or Opt Out of Settlement | 60 days after Notice Date |
| Last day to file Motion for Final Approval of Settlement | 30 calendar days before the Final Approval Hearing |
| Final Approval Hearing | At least 140 days after entry of Preliminary Approval Order |

This schedule is similar to those used in other class settlements and provides due process to Class Members.

## IV.  CONCLUSION

The settlements with Higher Tech, eXp, Weichert, and Atlanta Communities provide an immediate, substantial, and fair recovery for the Settlement Class. Accordingly, Plaintiffs respectfully request that the Court enter an order: (1) preliminarily approving the settlements; (2) certifying the Settlement Class for

settlement purposes only; (3) appointing Georgia Plaintiffs as Settlement Class Representatives; (4) appointing Knight Palmer LLC and Kabat Chapman & Ozmer LLP as Settlement Class Counsel; (5) appointing CPT Group, Inc. as the Notice Administrator and ordering that Notice be directed to the Settlement Class; and (6) scheduling a Final Approval hearing.

DATED:  January 8, 2025.

Respectfully submitted:

*/s/ Jonathan M. Palmer*
Bryan M. Knight
Georgia Bar No. 142401
Jonathan M. Palmer
Georgia Bar No. 453452
W. Lawton Jordan
Georgia Bar No. 119651

**KNIGHT PALMER, LLC**
One Midtown Plaza
1360 Peachtree Street, Suite 1201
Atlanta, Georgia 30309
P: (404) 228-4822
F: (404) 228-4821
bknight@knightpalmerlaw.com
jpalmer@knightpalmerlaw.com
nsears@knightpalmerlaw.com
ljordan@knightpalmerlaw.com

Nathan D. Chapman
Georgia Bar No. 244954
Gary E. Thomas
Georgia Bar No. 804760
Matthew Hayes
Georgia Bar No. 494682

**KABAT, CHAPMAN, & OZMER LLP**
171 17th Street NW, Suite 1550

Atlanta, GA 30363
Main: (404) 400-7300
Facsimile: (404) 400-7300
nchapman@kcozlaw.com
gthomas@kcozlaw.com
mhayes@kcozlaw.com

*Counsel for Plaintiffs 1925 Hooper, LLC, Robert J. Arko, and Andrew M. Moore*

## <u>LOCAL RULE 5.1(c) CERTIFICATION</u>

The undersigned attorney of record hereby certifies that the text of this submission has been prepared in Times New Roman typeface, 14-point, consistent with this Court's requirements in Local Rule 5.1(c).

DATED:      January 8, 2025            */s/Jonathan M. Palmer*
                                                Jonathan M. Palmer


## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney of record hereby certifies that on January 7, 2025, a true and correct copy of the foregoing was filed electronically by the Court's CM/ECF system, which will cause notice and a copy of this filing to be sent to all counsel of record by electronic mail.

DATED:      January 8, 2025            */s/Jonathan M. Palmer*
                                                Jonathan M. Palmer