IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| **1925 HOOPER LLC, et al.,**<br><br>    **Plaintiffs,**<br><br>**v.**<br><br>**THE NATIONAL ASSOCIATION OF REALTORS, et al.,**<br><br>    **Defendants.** | **CIVIL ACTION FILE**<br><br>**NO. 1:23-CV-5392-MHC** |

## ORDER

This case comes before the Court on Proposed Intervenors Don Gibson,

Laura Criss, John Meiners, and Daniel Umpa (collectively, "Proposed

Intervenors")'s Motion to Intervene and Transfer Case ("Mot. to Intervene") [Doc.

94].[1]

---

[1] Also before the Court are Defendant Weichert of North America, Inc.
("Weichert")'s Motion for Leave to File Sur-Reply [Doc. 145] and Defendant eXp
World Holdings, Inc. ("eXp")'s Motion for Leave to File a Surreply in Opposition
to the Motion to Intervene [Doc. 150]. No responses have been filed in opposition
to either Motion for Leave to File Surreply, rendering them unopposed. See
Kramer v. Gwinnett Cnty., 306 F. Supp. 2d 1219, 1221 (N.D. Ga. 2004) ("[A]
party's failure to respond to any portion or claim in a motion indicates such
portion, claim or defense is unopposed."); LR 7.1B, NDGa ("Any party opposing a
motion shall serve the party's response . . . not later than fourteen (14) days after
service of the motion . . . . Failure to file a response shall indicate that there is no

## I.    BACKGROUND

### A.    The Present Lawsuit

Plaintiffs initiated the above-styled class action on November 22, 2023, asserting antitrust violations arising out of an alleged nationwide conspiracy by the National Association of Realtors ("NAR") and residential real estate brokerages across the country.  Class Action Compl. [Doc. 1].[2]  The alleged conspiracy involved a concerted effort by NAR and the brokerages to artificially inflate broker compensation at the expense of the brokerages' clients who were selling homes.  Am. Compl. ¶¶ 1-6, 68-142.  Plaintiffs allege that NAR created and implemented rules requiring home sellers to pay commissions to the broker or agent representing the buyer, which caused home sellers to pay total commissions at inflated rates.  Id.  NAR and the brokerages accomplished this by requiring their customers, including Plaintiffs and the class they purport to represent,[3] to pay the commissions of both

---

opposition to the motion.").  Accordingly, the Motions for Leave to File Surreplies are **GRANTED**.

[2] The Complaint was amended on December 6, 2023, naming 1925 Hooper, LLC, Robert J. Arko, and Andrew M. Moore as the Named Plaintiffs.  Am. Class Action Compl. ("Am. Compl.") [Doc. 6].  The Amended Complaint is the operative complaint in this case.

[3] The "Main Class" is defined to include "All persons who, for the period December 6, 2019 through the present, engaged a listing broker affiliated with any Defendant in the sale of a residential property listed anywhere in the United States

the listing agents and the buyer agents in order for their residential properties to be listed on the Multiple Listing Services (the "MLS"). Id. More specifically, as a prerequisite to listing any residential property on the MLS, seller brokers were compelled to adhere strictly to NAR rules, including the "Mandatory Offer of Compensation Rule" within a seller's listing agreement dictating the mandatory terms of compensation that must be paid as commissions not only to the seller's broker, but also to the buyer's broker. Id.

Based on the foregoing, Plaintiffs assert claims for violations of (1) the Sherman Act, 15 U.S.C. § 1 (Count One), (2) the Georgia Antitrust Act, O.C.G.A § 12-8-2 et seq. (Count Two), (3) the Georgia Uniform Deceptive Trade Practices Act, O.C.G.A § 10-1-372(a) (Count Three), and (4) the Georgia Fair Business Practices Act, O.C.G.A § 10-1-393(a) (Count Four). Am. Compl. ¶¶ 173-202.

### B. Settlements in the Present Lawsuit

Plaintiffs have settled their claims with several Defendants: On October 7, 2024, Plaintiffs announced that they settled all claims asserted against eXp [Doc. 88]; on October 16, 2024, Plaintiffs announced that they settled all claims asserted against Higher Tech Realty, LLC, d/b/a Mark Spain Real Estate ("Higher Tech")

---

of America and incurred a commission payment to the buyer's broker in connection therewith." Id. ¶ 156.

[Doc. 93]; on November 8, 2024, Plaintiffs announced that they settled all claims

asserted against Weichert [Doc. 110]; and on December 10, 2024, Plaintiffs

announced that they settled all claims asserted against Atlanta Communities Real

Estate Brokerage, LLC ("Atlanta Communities") [Doc. 130].[4] The terms of the

settlements are set out in Plaintiffs' Motion for Preliminary Approval of

Settlements and Preliminary Certification of Settlement Class ("Pls.' Mot. for

Settlement Approval") [Doc. 136].[5]

### C.    Proposed Intervenors

Proposed Intervenors are the proposed class representatives in the Gibson

Action, a parallel nationwide class action that was filed in the United States

District Court for the Western District of Missouri on October 31, 2023, several

weeks before the above-styled lawsuit was filed.  The Gibson Action asserts the

same antitrust claim, alleging that NAR and other real estate brokerages, including

---

[4] The Court will refer to these Defendants as the "Settling Defendants."  The
Settling Defendants represent the only remaining Defendants in this action that
either (1) were not included in a global settlement with NAR (the "NAR
Settlement") in Gibson v. NAR, et al., No. 4:23-cv-00788-SRB (W.D. Mo. Oct.
31, 2023) (the "Gibson Action") or (2) have formalized settlement agreements with
counsel for the Gibson plaintiffs.  Decl. of Bryan M. Knight (Jan. 7, 2025) ("Jan. 7
Knight Decl.") [Doc. 136-1] ¶ 8.

[5] The Court will address Plaintiffs' Motion for Settlement Approval in a separate
Order.

at least five entities who are also Defendants in this case, conspired to fix real

estate commissions in violation of the Sherman Act.  The proposed class in the

Gibson Action and the proposed class in this case are substantively identical.[6]

### D.    Previous Lawsuits

The present lawsuit and the Gibson Action both were preceded by a similar

class action alleging the same antitrust violations in Burnett v. NAR, No. 4:19-CV-

332-SRB (W.D. Mo. Apr. 29, 2019) (the "Burnett Action").  As described by

Plaintiffs, the Burnett Action was a class action brought by Missouri home sellers

against NAR, Realogy Holdings Corp. ("Realogy"), HomeServices of America,

Inc. ("HomeServices"), RE/MAX, LLC (RE/MAX"), and Keller Williams Realty,

Inc. ("Keller Williams").  Pls.' Mot. for Settlement Approval at 5.  Plaintiffs in the

Burnett Action asserted similar claims to those asserted in this case, all of which

arose out of "the NAR's concerted effort with the named brokerages to increase

broker commissions through the Compensation Rule."  Id.  RE/MAX and Realogy

settled before trial, which ultimately resulted in a jury verdict against the remaining

---

[6] See Consol. Am. Class Action Compl., Gibson v. NAR, et al., No. 4:23-cv-00788-SRB (W.D. Mo. June 11, 2024), ECF No. 232, ¶ 246 (defining the class as "[a]ll persons in the United States who, from December 27, 2019, through the present, used a listing broker affiliated with any Corporate Defendant in the sale of a home listed on an MLS, and who paid a commission to a cooperating broker in connection with the sale of the home," and listing exceptions).

defendants. Id. at 5-6. After trial, Keller Williams settled and NAR agreed to a global settlement. Id. at 6. As to the NAR Settlement, NAR

> released all brokerages that were NAR members and had less than $2 billion in annual transaction volume for residential home sales in the year 2022. The Settlement did not release those brokerages with more than $2 billion in annual transaction volume for 2022, including the four settling Defendants in this case, eXp, Weichert, Higher Tech and Atlanta Communities.

Pls.' Opp'n to Mot. to Intervene ("Pls.' Opp'n") [Doc. 126] at 6.[7]

A similar class action, styled Moehrl v. NAR, No. 19-cv-01610-ARW (Mar. 2019, N.D. Ill.) (the "Moehrl Action"), was filed in the Northern District of Illinois in March 2019, a little over one month prior to the Burnett Action. Following the jury verdict in the Burnett Action, all parties to the Moehrl Action joined and participated in the global settlements in the Burnett Action. Pls.' Opp'n at 5 n.4.

### E. Multidistrict Litigation and Proposed Cooperation Agreement

On December 27, 2023, counsel for Proposed Intervenors, on behalf of the Gibson plaintiffs and others, filed a motion pursuant to 28 U.S.C. § 1407 with the United States Judicial Panel on Multidistrict Litigation ("JPML") to transfer the above-styled case, along with the Gibson Action and other similar class actions, to the Western District of Missouri for coordinated or consolidated pretrial

---

[7] The NAR Settlement also includes the plaintiffs to the Gibson Action.

proceedings. Plaintiffs filed a brief in support of the motion arguing that

consolidating the above-styled case with the <u>Gibson</u> Action in the Western District

of Missouri was appropriate because the cases "arise out of a common factual core

and involve common legal issues," and

> [c]onsolidation and transfer under 28 U.S.C. § 1407 to the Western
> District of Missouri will serve the convenience of the parties and
> witnesses, promote the just and efficient conduct of the litigation,
> eliminate duplicative discovery, prevent inconsistent pretrial rulings,
> and conserve judicial resources. Furthermore, the Georgia Action
> should be transferred to the Western District of Missouri because Judge
> Stephen R. Bough, presided over the bellwether case, <u>Burnett v. Nat'l
> Ass'n of Realtors</u>, Case No. 19-cv-00332-SRB (W.D. Mo.), through a
> jury verdict and presides over <u>Gibson</u>, the first filed nationwide class
> action. Judge Bough is therefore intimately familiar with the legal and
> factual issues and best equipped to coordinate and manage the pre-trial
> proceedings. Moreover, the Western District of Missouri is centrally
> located and will minimize any inconvenience to the parties and counsel.

Ga. Plaintiffs' Resp. in Supp. of Mot. of Pls. for Transfer of Actions to the Western

District of Mo. [Doc. 94-7] at 1-2; <u>see also</u> Pls.' Opp'n at 9 ("Plaintiffs supported

Proposed Intervenors' motion to consolidate."). Plaintiffs, Higher Tech, eXp, and

several other parties in this case moved this Court for a stay of the proceedings

pending the JPML's decision, which this Court granted in orders dated February 14

and March 6, 2024 [Docs. 17, 48]. The JPML ultimately denied the motion to

consolidate on April 12, 2024. Notice of Ruling by the U.S. JPML on the Mot. to

Transfer [Doc. 55] ¶ 6.

While the motion was pending before the JPML, counsel for Proposed Intervenors approached Plaintiffs' counsel to negotiate the terms of a potential cooperation agreement (hereinafter "Cooperation Agreement"), conditioned on approval of the JPML consolidation. Decl. of Bryan M. Knight (Dec. 5, 2024) ("Dec. 5 Knight Decl.") [Doc. 126-2] ¶ 4. Plaintiffs rejected the proposal for a Cooperation Agreement after the JPML denied the motion to consolidate. Id.

Now before the Court is the Proposed Intervenors' Motion to Intervene and Transfer Case, which was filed on October 22, 2024, and is opposed by Plaintiffs and the Settling Defendants. See generally Defs. Higher Tech's and Atlanta Communities' Opp'n to Mot. to Intervene ("High Tech's Opp'n") [Doc. 123]; Weichert's Resp. in Opp'n to Mot. to Intervene ("Weichert's Opp'n") [Doc. 124];[8] eXp's Resp. in Opp'n to Mot. to Intervene ("eXp's Opp'n") [Doc. 125]; Pls.' Opp'n.

## II.    LEGAL STANDARD

Rule 24 of the Federal Rules of Civil Procedure provides for two types of intervention: intervention of right and permissive intervention. As relevant here,

---

[8] Weichert joins eXp's Opposition and limits its response to issues raised by Intervenors in their supplemental briefing "that specifically target Weichert." Weichert's Opp'n at 3.

the Rule provides: "On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." FED. R. CIV. P. 24(b)(1)(B).[9]  The Rule further provides that a motion to intervene "must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought." FED. R. CIV. P. 24(c); see also Georgia v. U.S. Army Corps of Engineers, 302 F.3d 1242, 1250 (11th Cir. 2002) (citing Walker v. Jim Dandy Co., 747 F.2d 1360, 1365 (11th Cir. 1984)) ("Permissive intervention under [Federal Rule of Civil Procedure] 24(b) is appropriate where a party's claim or defense and the main action have a question of law or fact in common and the intervention will not unduly prejudice or delay the adjudication of the rights of the original parties.").

A party seeking permissive intervention must show that: "(1) his application to intervene is timely; and (2) his claim or defense and the main action have a question of law or fact in common." Chiles v. Thornburgh, 865 F.2d 1197, 1213 (11th Cir. 1989).  However, "[t]he district court has the discretion to deny intervention even if both of those requirements are met." Id. (citing Sellers v. United States, 709 F.2d 1469 (11th Cir. 1983)).

---

[9] Proposed Intervenors do not seek to intervene as a matter of right under Rule 24(a).

"If there is no right to intervene as of right under Rule 24(a), it is wholly discretionary with the court whether to allow intervention under Rule 24(b) and even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied, the court may refuse to allow intervention."

Worlds v. Dep't of Health & Rehab. Servs., 929 F.2d 591, 595 (11th Cir. 1991)

(quoting 7C C. Wright, A. Miller & M. Kane, Federal Practice & Procedure

§ 1913, at 376-77 (2d ed. 1986)).  In addition to the timeliness and common

question of law or fact questions, "[i]n exercising its discretion as to permissive

intervention, 'the court must consider whether the intervention will unduly delay or

prejudice the adjudication of the original parties' rights.'"  Nolley v. McLaughlin,

806 F. App'x 971, 972 (11th Cir. 2020) (quoting Fed. R. Civ. P. 24(b)(3)).

## III.  ANALYSIS

### A.    The Motion Was Timely Filed.

The Eleventh Circuit has held that a court's assessment of the timeliness of a

proposed intervention must include the consideration of the following factors:

(1) the period of time during which the putative intervenor knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene; (2) the degree of prejudice to the existing parties as a result of the would-be intervenor's failure to move to intervene as soon as he knew or reasonably should have known of his interest; (3) the extent of prejudice to the would-be intervenor if his position is denied; and (4) the presence of unusual circumstances militating either for or against a determination that the application is timely.

Walker, 747 F.2d at 1365. "The most important consideration in determining timeliness is whether any existing party to the litigation will be harmed or prejudiced by the proposed intervenor's delay in moving to intervene." McDonald v. E. J. Lavino Co., 430 F.2d 1065, 1073 (5th Cir. 1970).[10] "'Timeliness' is not a word of exactitude or of precisely measurable dimensions," rather it "must have accommodating flexibility toward both the court and the litigants if it is to be successfully employed to regulate intervention in the interest of justice." U.S. Army Corps of Eng'rs, 302 F.3d at 1259 (quoting McDonald, 430 F.2d at 1074). Therefore, "the timely application requirement under Rule 24 [is] not intended to punish an intervenor for not acting more promptly but rather [is] designed to insure [sic] that the original parties should not be prejudiced by the intervener's failure to apply sooner." McDonald, 430 F.2d at 1074 (quotations and citations omitted).

>       1.    **The Period of Time During Which Proposed Intervenors Knew or Reasonably Should Have Known of Their Interest in This Case Before They Petitioned for Leave to Intervene**

Proposed Intervenors maintain that timeliness should be measured from the time that Plaintiffs disclosed that they reached a settlement and release of claims as

---

[10] In Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the United States Court of Appeals for the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before the close of business on September 30, 1981.

to eXp for what Proposed Intervenors contend is inadequate compensation.  Mem. in Supp. of Mot. to Intervene and to Transfer Case ("Proposed Intervenors' Br.") [Doc. 94-1] at 9 (citing Notice of Pending Settlement and Mot. to Stay Case as to eXp Defs., filed in <u>Gibson</u> Action (Oct. 11, 2024) [Doc. 94-10]).[11]  Proposed Intervenors argue that the necessity of intervening to protect their interests became apparent at that moment in time because the proposed settlement with eXp is on terms that do not provide sufficient relief to the nationwide class it purports to release, which includes Proposed Intervenors.  <u>Id.</u>  The present Motion to Intervene was filed on October 22, 2024, approximately two weeks after Plaintiffs filed the notice of the eXp settlement in the <u>Gibson</u> Action.

Plaintiffs, Higher Tech, and Atlanta Communities argue that timeliness should be measured from the date the present lawsuit was filed on November 22, 2023, because Proposed Intervenors were or should have been aware of the "overlap with <u>Gibson</u>" at that point and "were obviously aware of their interest in the case when they sought to have it included in Multidistrict Litigation."  Pls.' Opp'n at 17-18; Dec. 5 Knight Decl. ¶ 4; <u>see also</u> Higher Tech Opp'n at 9-11 (arguing that Proposed Intervenors should have been aware of their interest at the

---

[11] The notice of settlement with eXp was filed in this case on October 7, 2024. Neither of the notices contain the amounts or details of any settlement.

time this lawsuit was filed).  Plaintiffs contend that, at the latest, Proposed

Intervenors were aware of their interest in this case when they proposed the

Cooperation Agreement in April 2024.  Pls.' Opp'n at 17.  Similarly, eXp argues

that timeliness should be measured from December 2023, when Proposed

Intervenors filed a motion with the JPML seeking to centralize this case and other

similar class actions.  eXp's Opp'n at 4-8.

In support of their position, Plaintiffs, eXp, Higher Tech, and Atlanta

Communities all cite this Court's opinion in Pinon et, al. v. Daimler AG et al., No.

1:18-CV-3984-MHC (Mar. 29, 2021) ("Pinon Order") [Doc. 89][12] (denying

competing class action plaintiffs' motion to intervene).  Pinon involved two

competing parallel federal class actions covering the same claims related to defects

in red paint in certain vehicles; the plaintiffs in Pinon filed a complaint in this

Court on August 21, 2018, and the plaintiffs in Ponzio v. Mercedes-Benz USA,

LLC, 1:18-cv-12544-JHR-JS (D.N.J. filed Aug. 8, 2018) ("Ponzio") filed in the

United States District Court for the District of New Jersey—two weeks earlier.

Counsel for the plaintiffs in both cases discussed coordinating their litigation

efforts in April 2020 but were not successful in reaching an agreement.  The Pinon

---

[12] This Order can be found in the docket of this case as Exhibit A to Plaintiffs'
Opposition to the Motion to Intervene [Doc. 126-1].

plaintiffs ultimately reached a nationwide settlement on November 9, 2020, and the Ponzio plaintiffs moved to intervene shortly thereafter. As do Proposed Intervenors in this case, the Ponzio plaintiffs argued that their motion was timely based on the date they learned of the settlement. The Court disagreed, holding that the "Movants knew or should have known of their interest in the case from at least June 2020,[13] when they allege deficiencies in Plaintiffs' litigation strategy." Pinon Order at 9-10. Similarly, Plaintiffs argue that Proposed Intervenors here were aware of their interest in this case no later than the date that counsel for Plaintiffs and the Proposed Intervenors discussed the Cooperation Agreement in April 2024. Pls.' Opp'n at 17-18.

Consistent with the ruling in Pinon, the timeliness of Intervenor's Motion to Intervene should be measured from the date Proposed Intervenors knew or should have known that their interests were not being adequately represented. Pinon Order at 9-10; see also United Airlines, Inc. v. McDonald, 432 U.S. 385, 394 (1977) (holding that a motion for permissive intervention under Rule 24(b) is

---

[13] In Pinon, the Ponzio plaintiffs took issue with the Pinon plaintiffs' conduct in discovery as early as June 2020, asserting that the Pinon plaintiffs "appear to have simply agreed to improper discovery limitations and limited ESI productions." Pinon Order at 8-9. Moreover, the Ponzio plaintiffs had acknowledged this disagreement with counsel for the Pinon plaintiffs in a motion to compel filed in their own case on June 15, 2020. Id. at 9 n.6.

timely if filed promptly "as soon as it [becomes] clear . . . that the interests of the unnamed class members would no longer be protected by the named class representatives"); Stansell v. Revolutionary Armed Forces of Colombia, 45 F.4th 1340, 1363 (11th Cir. 2022) (holding that the Rule 24 timeliness inquiry began from when the intervening party should have known that their "interests were not aligned with and thus not protected" by the parties in the litigation); Crawford v. Equifax Payment Servs., Inc., 201 F.3d 877, 880 (7th Cir. 2000) (holding that "[o]nly when the class members suspect that the representative is not acting in their best interests is there a need to intervene," and that "[t]his means that delay must be measured from the time the would-be intervenors learned (or should have known) of the representative's shortcomings."); Stallworth v. Monsanto Co., 558 F.2d 257, 265 (5th Cir. 1977) (holding that "the time that the would-be intervenor first became aware of the pendency of the case is not relevant to the issue of whether his application was timely," that "a rule making knowledge of the pendency of the litigation the critical event would be unsound because it would induce both too much and too little intervention" and would be inconsistent with the purposes of Rule 24).

In Pinon, the date the putative intervenors knew or should have known that their interests were not being adequately represented was in June 2020, "when [the

proposed intervenors] allege deficiencies in [the <u>Pinon</u>] Plaintiffs' litigation strategy." <u>Pinon</u> Order at 9-10. Unlike <u>Pinon</u>, there were no such allegations made by Proposed Intervenors in this case. Indeed, in the present case, the Court finds that Proposed Intervenors first became aware that their interests were not adequately represented when eXp filed a Notice of Pending Settlement in the <u>Gibson</u> Action. Even though Proposed Intervenors were aware of the "overlap with <u>Gibson</u>" when Plaintiffs initiated this action on November 22, 2023, and even though Proposed Intervenors were aware of their interest in the case when both parties sought consolidation before the JPML, Proposed Intervenors were not aware of Plaintiffs' purported shortcomings in adequately representing Proposed Intervenors' interests until they received notice of the allegedly deficient settlement agreement between Plaintiffs and eXp on October 11, 2024. Thus, Proposed Intervenors' timeliness is measured from October 11, 2024. Because Proposed Intervenors filed the present Motion approximately two weeks after that date, this factor weighs in favor of a finding that the Motion to Intervene was timely filed.

### 2. The Degree of Prejudice to the Existing Parties as a Result of the Intervenor's Failure to Seek Intervention Earlier

Proposed Intervenors maintain that the parties in this action will not suffer prejudice from intervention, arguing that "[n]o substantive filings of any kind have

been made to date," and there is no indication on the docket that "any meaningful discovery has been conducted." Proposed Intervenors' Br. at 9; Intervenor's Reply in Supp. of Mot. to Intervene and Transfer [Doc. 141] at 8-10. Plaintiffs, eXp, Higher Tech, and Atlanta Communities disagree, arguing that the Proposed Intervenors' delayed intervention would prejudice Plaintiffs now that settlements have been reached, arguing that the "belated" intervention would devalue the time and effort the parties put into settlement since December 2023. Pls.' Opp'n at 20 (arguing that the sole purpose of the intervention is to "upend" the settlements); eXp's Opp'n at 8-9 (arguing that the sole purpose of the intervention is to "thwart" Plaintiffs from obtaining court approval on the settlements, and "[i]ntervening to undo or renegotiate settlements would improperly prejudice the settling parties."); Higher Tech's Opp'n at 11-14.

In determining whether there is prejudice resulting from the timing of the proposed intervention, the parties erroneously focus on the general overall prejudice to the existing parties if intervention is permitted. However, the relevant inquiry for this timeliness factor is narrower, examining "only that prejudice which would result from the would-be intervenor's failure to request intervention as soon as he knew or reasonably should have known about his interest in the action." Lyttle v. Trulieve, Inc., No. 8:19-CV-2313-CEH-TGW, 2021 WL 2379395, at *5

(M.D. Fla. June 10, 2021) (quotation omitted); see also Stallworth, 558 F.2d at 267 ("For the purpose of determining whether an application for intervention is timely, the relevant issue is not how much prejudice would result from allowing intervention, but rather how much prejudice would result from the would-be intervenor's failure to request intervention as soon as he knew or should have known of his interest in the case."). Because Section (b)(3) examines the general overall delay and prejudice to the original parties, "to take that same type of prejudice into account in the determining of timeliness would be to consider the same factor twice." Stallworth, 558 F.2d at 265.

Plaintiffs and the Settling Defendants have failed to identify any prejudice specifically resulting from the Proposed Intervenors' two-week delay in seeking to intervene after learning of the allegedly inadequate settlement between Plaintiffs and eXp, and there is nothing in the record to suggest that the delay from October 11 to October 22, 2024, caused Plaintiffs and the Settling Defendants any prejudice with regard to the settlements.[14] The prejudice argument proffered by the parties opposing intervention is based entirely upon the supposition that the settlements

---

[14] The Court considers Plaintiffs' and the Settling Defendants' contention that they will suffer prejudice from the intervention generally because it would thwart their settlements in Section III(C), *infra*.

that were reached on October 1 and 3, November 5, and December 4, 2024, would be thwarted but ignores the dates those settlements were reached and finalized. The timing of the settlements—either approximately three weeks before Proposed Intervenors filed the present motion, in the case of eXp and Higher Tech, or after the present motion was filed, in the case of Atlanta Communities and Weichert— suggests that there is no prejudice to any of the Settling Parties resulting <u>solely</u> from the two-week delay in filing the motion to intervene.

Neither Atlanta Communities nor Plaintiffs suffered any prejudice from the two week delay because they did not begin settlement negotiations until December 7, 2023 (six weeks after filing) and did not finalize their settlement agreement until January 3, 2025, over ten weeks after the filing.[15]  Similarly, Weichert and Plaintiffs did not finalize their settlement agreement until December 11, 2024, over seven weeks after filing.[16]  Additionally, Plaintiffs did not finalize the settlements

---

[15] Plaintiffs started negotiations with Atlanta Communities on December 7, 2023, but did not execute a confidentiality agreement to permit document sharing until April 16, 2024. Jan. 7 Knight Decl. ¶ 19.  They reached a preliminary settlement on December 4, 2024, over six weeks after Proposed Intervenors filed the present Motion to Intervene. <u>Id.</u>  The settlement was not finalized and executed until January 3, 2025.  <u>Id.</u>  Settlement Agreement between Plaintiffs and Atlanta Communities [Doc. 136-5].

[16] Plaintiffs started negotiations with Weichert on October 8, 2024, and reached a settlement in principle after mediation on November 5, 2024, which was finalized on December 11, 2024, over seven weeks after the Proposed Intervenors filed the

with eXp and Higher Tech until December 2024, over a month after Proposed

Intervenors moved to Intervene.[17]  Because there is no indication that the two-week

delay in filing the Motion to Intervene caused any prejudice to the existing parties,

the second factor weighs in favor of a finding that the Motion to Intervene was

timely filed.

### 3.    Prejudice to the Proposed Intervenors if the Motion is Denied

Proposed Intervenors argue that they will be "substantially prejudiced" if

their Motion to Intervene is denied because of the inefficiencies inherent in

litigating competing class actions separately, including the administration of any

---

present Motion to Intervene.  Jan. 7 Knight Decl. ¶ 25; Settlement Agreement
between Plaintiffs and Weichert [Doc. 136-4].

[17] Plaintiffs started negotiations with eXp on May 2, 2024, and executed a
confidentiality agreement on May 29, 2024.  Jan. 7 Knight Decl. ¶ 21.  Plaintiffs
sent a formal demand letter on August 23, 2024, and mediated the dispute on
October 1, 2024, resulting in a settlement in principle.  Id.  The settlement was not
finalized and executed until December 9, 2024.  Settlement Agreement between
Plaintiffs and eXp [Doc. 136-3].

Plaintiffs started negotiations with Higher Tech on May 7, 2024, began exchanging
confidential information on May 9, 2024, and reached a settlement in principle on
October 3, 2024, which was finalized on December 17, 2024.  Jan. 7 Knight Decl.
¶ 23; Settlement Agreement between Plaintiffs and Higher Tech [Doc. 136-2].

approved settlements. Proposed Intervenors' Br. at 10.[18] Proposed Intervenors also argue that Plaintiffs' counsel and counsel for eXp engaged in a "reverse auction" and reached a settlement agreement that does not provide sufficient value for the class. Id. at 10-13. Consequently, Proposed Intervenors maintain that they "will suffer irreparable harm if their claims are released through an improper process." Id. at 12. Proposed Intervenors have not argued that their ability to object to any settlements will be prejudiced if they are not parties to this case. Additionally, Proposed Intervenors do not explain how a review of the fairness of the settlements by this Court pursuant to Rule 23 of the Federal Rules of Civil Procedure will be an "improper process" or how their proposed intervention will ensure a "proper process" that would avoid the irreparable harm caused by the alleged reverse auction.

---

[18] This alleged prejudice does not speak to, and is inconsistent with, Proposed Intervenors' stated impetus for filing the present Motion to Intervene in October 2024—namely, Plaintiffs' alleged inadequate representation of Proposed Intervenors. On one hand, with regard to the first timeliness factor, Proposed Intervenors argue that the Court should measure the timeliness of the filing of their Motion to intervene from October 11, 2024, the date they became aware of eXp's alleged deficient settlement. On the other hand, with regard to the third timeliness factor, Proposed Intervenors argue that they are prejudiced by the potential inefficiencies resulting from separate competing class actions. However, Proposed Intervenors should have been aware of this latter harm no later than on April 12, 2024, when the JPML denied their motion to consolidate and over six months before they filed the present motion.

Plaintiffs and eXp vigorously deny any "reverse auction" allegations and argue that, irrespective of the veracity of the allegations, Proposed Intervenors will not suffer any harm if they are not permitted to intervene because Proposed Intervenors "will be able to fully litigate this issue . . . during the settlement approval process in this Court." Pls.' Opp'n at 21-23; eXp's Opp'n at 9-12. Higher Tech and Atlanta Communities similarly argue that Proposed Intervenors will not suffer any prejudice if the Court denies the Motion to Intervene because Proposed Intervenors still will "be fully able to protect their interest by opting out of the class and litigating their case separately, or objecting to the settlement if they chose to remain in the case." Higher Tech's Opp'n at 14-19 (quoting Saccoccio v. JP Morgan Chase Bank, N.A., No. 13-21107-CIV, 2013 WL 5585230, at *1 (S.D. Fla. Oct. 9, 2013)).

Proposed Intervenors have failed to demonstrate that they will suffer any prejudice if the Court does not grant their Motion to Intervene. Any settlement reached between Plaintiffs and Settling Defendants must be approved by a federal district court, and Plaintiffs' motion to approve those settlements remains pending before the Court. See Pls.' Mot. for Settlement Approval (seeking preliminary Court approval of the settlements between Plaintiffs and eXp, Higher Tech, Atlanta Communities, and Weichert).

The argument that Proposed Intervenors will suffer prejudice because the proposed settlements will be approved (and Proposed Intervenors' claims released) without any opportunity to object lacks any merit. This Court's ruling on the present Motion to Intervene will have no effect on Proposed Intervenors' rights to object to or opt-out of any settlement agreement Plaintiffs reached with the Settling Defendants pursuant to the protections of Rule 23. FED. R. CIV. P. 23(e); see also Brown ex rel. O'Neil v. Bush, 194 F. App'x 879, 883 (11th Cir. 2006) (affirming the denial of a motion to intervene and finding that the movant would not suffer any prejudice because they were given "adequate opportunity to present their objections, and fully considered how their interests would be impacted by the Settlement Agreement" at the Rule 23 fairness hearing); Pinon Order at 11 (discounting any prejudice to the intervening movants because they retained their rights pursuant to Rule 23 to object to or opt out of any settlement). The third factor weighs against a finding that the Motion to Intervene was timely filed.

> ### 4.    The Presence of Unusual Circumstances Militating Either for or against a Determination that the Application is Timely

Proposed Intervenors argue that the circumstances surrounding Plaintiffs' proposed settlement with eXp present "unusual circumstances that strongly favor intervention," and that intervention is warranted to evaluate whether transfer to the

District Court for the Western District of Missouri "is appropriate in order to prevent further 'reverse auctions' by counsel for Plaintiffs in this action." Proposed Intervenors' Br. at 13. While identifying the eXp settlement as being the alleged product of a reverse auction, Proposed Intervenors stop short of explaining why intervention is needed in light of the fact that any settlement will need to be approved by a federal district court, and any objections to the settlement on reverse auction grounds can be raised as a part of that process.

Neither Plaintiffs nor eXp address Proposed Intervenors' argument. Instead, Plaintiffs contend that unusual circumstances militate against a finding of timeliness, arguing that the intent behind the Motion to Intervene is to forum shop for a "preferred judge" and a more "favorable forum for them to oppose the settlement." Pls.' Opp'n at 23-24; eXp's Opp'n at 12-14. Plaintiffs and eXp also argue that this effort to intervene and transfer is an effort to circumvent the JPML's decision declining to consolidate this case with the Gibson Action. Id.

The Court finds that there are no unusual circumstances that have any bearing on the timeliness of the Proposed Intervenors' Motion. Therefore, the fourth factor has no bearing on the timeliness question. In weighing the four timeline factors, the Court finds that Proposed Intervenors' Motion to Intervene was timely filed.

### B.    There are Common Questions of Law and Fact.

The Proposed Intervenors argue that there are common questions of law and fact between this case and the <u>Gibson</u> Action. Proposed Intervenors' Br. at 14. Neither Plaintiffs nor the Settling Defendants have responded to this argument, rendering it unopposed. <u>See</u> <u>Kramer</u>, 306 F. Supp. 2d at 1221; LR 7.1B, NDGa. In fact, Plaintiffs have represented that this case and the <u>Gibson</u> Action—where the Proposed Intervenors are the proposed class representatives—have common questions of law and fact. <u>See</u> Ga. Plaintiffs' Resp. in Supp. of Mot. of Pls. for Transfer of Actions to the Western District of Mo. at 1-2 (arguing that this case should be consolidated with the <u>Gibson</u> Action because the cases "arise out of a common factual core and involve common legal issues."). Accordingly, the Court finds that common questions of law and fact exist between the two cases.

### C.    The Existing Parties Will be Prejudiced by Intervention.

In addition to the timeliness and commonality factors, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." FED. R. CIV. P. 24(b)(3). Accordingly, even if the timeliness and commonality requirements of Rule 24(b)(1) are met, a district court retains the discretion to deny intervention. <u>Id.</u>; <u>Chiles</u>, 865 F.2d at 1213 ("The

district court has the discretion to deny intervention even if both of those requirements are met, and its decision is reviewed for an abuse of discretion.").

There is no question that permitting intervention in this case will thwart, or at least delay, the settlements reached between Plaintiffs and the Settling Defendants, resulting in prejudice to the existing parties. See Hollywood Cmty. Synagogue, Inc. v. City of Hollywood, 254 F. App'x 769, 771 (11th Cir. 2007) (finding that intervention would "substantially prejudice the existing parties by practically undoing twenty-two months of litigation and settlement negotiations"); Gumm v. Jacobs, No. 5:15-CV-41 (MTT), 2020 WL 1322575, at *5 (M.D. Ga. Mar. 20, 2020) (finding that consideration of prejudice to the original parties, generally, led to the conclusion that permitting intervention was prejudicial, in part, because it risked upsetting the relief afforded by a settlement agreement); Calibuso v. Bank of Am. Corp., No. 10-CV-1413 PKC, 2013 WL 5532631, at *3 (E.D.N.Y. Oct. 4, 2013) (denying permissive intervention in a putative class action where the existing parties had reached a settlement before the motion to intervene was filed, finding that the requested intervention "threaten[ed] the [existing] parties' . . . interest in progressing with the settlement," and noting that the motion to intervene would "derail the settlement process: the train has already left the station, and the next stop is the preliminary approval hearing."); Altier v. Worley

Catastrophe Response, LLC, No. 11-241, 2012 WL 161824, at *9 (E.D. La. Jan. 18, 2012) (finding prejudice to existing parties was grounds for denying motion for permissive intervention because the threat of "sidetrack[ing] this process and attempt[ing] to negotiate new terms when the settlement is nearly complete would be highly prejudicial to the parties by prolonging the lawsuit, increasing its cost and risking the annulment of a complex settlement agreement."); In re Domestic Air Transp. Antitrust Litig., 148 F.R.D. 297, 337 (N.D. Ga. 1993) (denying the motion to intervene by putative class members who objected to a settlement finding that "permitting the intervention would be unfair and would prejudice the rights of all class members.").

It is also significant that the Proposed Intervenors' Motion does not seek to intervene just to participate in this case but instead seeks to intervene to transfer this case to the Western District of Missouri.  Proposed Intervenors' Br. at 1 ("Intervenors request that the Court permit them to intervene so that they may: seek transfer of the case to the United States District Court for the Western District of Missouri.").  Accordingly, "permitting proposed intervenors to intervene for this purpose would prejudice the rights of [the existing parties] given that they wish to proceed before this Court." Travis v. Navient Corp., 284 F. Supp. 3d 335, 347 (E.D.N.Y. 2018) (denying permissive intervention where proposed intervenors

intended to move to transfer based on the first to file rule finding that it would

prejudice the rights of the existing parties because they wanted to proceed in the

original forum); see also Attix v. Carrington Mortgage Servs., LLC, No. 1:20-CV-

22183-UU, 2020 WL 9849821, at *3 (S.D. Fla. Oct. 13, 2020) (denying motion for

permissive intervention and transfer pursuant to the first-filed rule based on

prejudice to the plaintiff because "he would be forced to cease litigating his claims

in his chosen forum."); Taylor v. Buth-Na-Bodhaige, Inc., No. SA CV 16-0610-

DOC(JCG), 2016 WL 10566651, at *2 (C.D. Cal. Sept. 22, 2016) (denying

permissive intervention "for the sole purpose to dismiss or transfer the case"

because it "would clearly prejudice the rights of the existing parties in this

action."); Glover v. Ferrero USA, Inc., No. 11-1086 FLW, 2011 WL 5007805, at

*7 (D.N.J. Oct. 20, 2011) (denying permissive intervention finding that the

proposed intervenor's stated interest in having the action transferred would

"clearly prejudice the rights of the existing parties in this action.").

　　　　Finally, the Court is mindful that there is no need for the Proposed

Intervenors to intervene as parties in this case in order to protect their stated

interests when they can lodge any objection they have to the proposed settlements

as a part of the Rule 23 class action fairness hearing.  See Grilli v. Metro. Life Ins.

Co., Inc., 78 F.3d 1533, 1536 (11th Cir. 1996), opinion clarified, 92 F.3d 1074

(11th Cir. 1996) (affirming the denial of a motion to intervene and noting that the

district court "observed that the procedures for objecting to the settlement or opting

out of the class already offered the [proposed intervenors] all the relief they were

seeking for themselves and the . . . settlement class."); Gumm, 2020 WL 1322575,

at *5 (denying permissive intervention after finding that the [proposed

intervenor]'s interests are adequately protected by the existing parties to the

lawsuit, and his intervention would not further the development of factual or legal

issues in the case."); see also Diaz v. HSBC Bank USA, N.A., No. 13-21104-CIV,

2014 WL 1218701, at *2 (S.D. Fla. Mar. 24, 2014), modified sub nom., Diaz v.

HSBC Bank USA, No. 13-21104-CIV, 2014 WL 11880929 (S.D. Fla. May 13,

2014) ("Anything the Movants wish to accomplish as intervenors, they can

accomplish as objectors."); Benjamin v. Dep't of Pub. Welfare of Cmwlth., 267

F.R.D. 456, 465 (M.D. Pa. 2010), aff'd sub nom., Benjamin v. Dep't of Pub.

Welfare of Pa., 432 F. App'x 94 (3d Cir. 2011) ("Assuming, arguendo, the

[proposed] Intervenors share a claim or defense with the parties in the litigation,

permissive intervention is nonetheless inappropriate because the Applicants'

interests are already represented in the litigation, and their appearance as

intervenors would not sufficiently add anything to the litigation.").

   Permitting the intervention would be unfair and would prejudice the
rights of all class members for the Court to permit the intervention of

http://example.com

all objecting class members.  Here the interests of [the proposed
intervenors] are the same as that of the named parties, to obtain a
settlement that is fair, reasonable, and adequate for the class.  There are
no divergent interests, only differing opinions on how the proferred
[sic] settlements fit within that framework.  [The proposed intervenors']
presence through intervention would not accomplish any more than
their participation as objectors and would create the possibility of
further delay and final disposition of this action.  The Court finds no
reason justifying permissive intervention.

In re Domestic Air Transp. Antitrust Litig., 148 F.R.D. at 337.  The same is true

here.  Proposed Intervenors' position can adequately be represented through

appearance as objectors in the Rule 23 hearing; otherwise, their presence in this

lawsuit as intervening parties only will serve to delay the proceedings to the

prejudice of the existing parties.

Because intervention would result in undue delay or prejudice to the

adjudication of the original parties' rights, and because the Proposed Intervenors

can ensure the protection of their rights through the Rule 23 fairness hearing, the

Court exercises its discretion to **DENY** the Motion to Intervene.[19]

---

[19] Because the Court denies Intervenors' Motion to Intervene, the concomitant
Motion to Transfer is also **DENIED**.  See Attix, 2020 WL 9849821, at *3 (holding
that the court "need not consider the Proposed Intervenors' first to file argument"
after denying the motion to intervene).

IV.    **CONCLUSION**

For the foregoing reasons, it is hereby **ORDERED** that Proposed

Intervenors Don Gibson, Laura Criss, John Meiners, and Daniel Umpa's Motion to

Intervene and Transfer Case [Doc. 94] is **DENIED**.

It is further **ORDERED** that Defendant Weichert of North America, Inc.'s

Motion for Leave to File Sur-Reply [Doc. 145] and Defendant eXp World

Holdings, Inc.'s Motion for Leave to File a Surreply in Opposition to the Motion to

Intervene [Doc. 150] are **GRANTED**.

**IT IS SO ORDERED** this _28th_ day of March, 2025.


_____
MARK H. COHEN
United States District Judge