# EXHIBIT A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| 1925 HOOPER LLC; ROBERT J. ARKO; and ANDREW M. MOORE; on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL ASSOCIATION OF REALTORS; *et al.*,<br><br>Defendants. | Case No.: 1:23-cv-05392-MHC<br><br>Hon. Mark H. Cohen |

**GIBSON PLAINTIFFS' SURREPLY IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS WITH WEICHERT AND EXP**

Don Gibson, Laura Criss, John Meiners, and Daniel Umpa ("*Gibson* Plaintiffs") submit this short Surreply to address several factual misstatements in Plaintiffs' Reply in Support of their Motion (ECF No. 169) and new arguments premised on these inaccuracies. *Gibson* Plaintiffs also seek to inform the Court of information that implicates the Motion under review, which was recently obtained from *Gibson* Plaintiffs' counsel's Rule 30(b)(6) deposition of Weichert's General Counsel taken on March 5, 2025, after *Gibson* Plaintiffs' Opposition Brief was filed (ECF No. 153).

   A. **Plaintiffs' Reply Falsely Claims that *Gibson* Plaintiffs Used the Metric of Transaction Volume When Determining Settlement Amounts**

1

Plaintiffs' Reply argues that their consideration of transaction volume for determining settlement amounts with eXp and Weichert is consistent with the approach taken by the *Gibson* Plaintiffs because *Gibson* Plaintiffs' counsel told Plaintiffs' counsel that "four-year transaction volume . . . was the most critical factor in determining the fairness and reasonableness of any settlement in these actions[.]" Reply Br. at 10. No such communication ever took place, and Plaintiffs' counsel provide no support for this claim. *See* Decl. of Brandon Boulware ("Boulware Decl.") ¶ 19.

The only conversation *Gibson* Plaintiffs' counsel had with Plaintiffs' counsel about transaction volume was in the context of the National Association of Realtors ("NAR") settlement. *Gibson* Plaintiffs' counsel explained to Plaintiffs' counsel that to be considered a released party under the NAR settlement, among other requirements, a real estate brokerage must have had a calendar year 2022 total transaction volume for residential home sales of $2 billion or less. *Id.* ¶ 18. *Gibson* Plaintiffs' counsel always made clear to Plaintiffs' counsel that they analyzed each defendant's ability to pay and agreed to settlement on that basis. *Id.* ¶ 19.[1]

---

[1] None of the settlements or associated approval filings in *Gibson* discuss the use of transaction volume to determine the fairness and reasonableness of settlement. The preliminary approval motions all describe *Gibson* Plaintiffs' counsel's detailed analysis of each defendant's financial condition and ability to pay a judgment or settlement. *See, e.g.*, Preliminary Approval Mot. of Settlements with Real Estate One and Baird & Warner (ECF No. 655); Preliminary Approval Mot. of Settlements with

2

### B. <u>Plaintiffs' Reply Incorrectly Characterizes Communications Between Plaintiffs' Counsel and *Gibson* Plaintiffs' Counsel</u>

Plaintiffs' Reply claims that while *Gibson* Plaintiffs' motion to consolidate was pending before the Judicial Panel on Multidistrict Litigation, *Gibson* Plaintiffs' counsel approached Plaintiffs' counsel to discuss a potential cooperation agreement and attempted to "exact a tribute" from them. Reply Br. at 6. This is false. It was Plaintiffs' counsel who initiated the outreach to *Gibson* Plaintiffs' counsel because they were interested in whether *Gibson* Plaintiffs' counsel would give them work in a potential MDL. *See* Boulware Decl. ¶¶ 6-10; Ex. B.

In response to Plaintiffs' counsel's outreach and request for *Gibson* Plaintiffs' counsel to propose a fee- and work-sharing deal if the cases were consolidated, *Gibson* Plaintiffs' counsel proposed terms. Boulware Decl. ¶¶ 15-16. This included a 60/40 split between *Gibson* Plaintiffs' counsel and Plaintiffs' counsel for any settlements or other recoveries. *Id.* Plaintiffs' counsel responded that they were "amenable" to the proposal if the cases were consolidated, and they countered with a 50/50 split for any settlements reached with certain Georgia-based defendants prior to discovery. *Id.* ¶¶ 20-21; *see also* Ex. C, Ex. D. Plaintiffs' counsel also agreed that they would not seek fees or costs with respect to any *Gibson* defendant. Boulware

---

NextHome, Keyes Company and Illustrated Properties, John L. Scott, and LoKation (ECF No. 531).

Decl. ¶ 20. This is far from demanding "a tribute". Notably, Plaintiffs' counsel never raised such accusations throughout their months-long conversations with *Gibson* Plaintiffs' counsel, and only do so now after *Gibson* Plaintiffs challenge their inadequate settlements obtained through a reverse auction. *Id.* ¶ 24.

C. **Testimony from Weichert's General Counsel Further Supports *Gibson* Plaintiffs' Argument that Plaintiffs' Counsel Did Not Consider Weichert's Ability to Pay in Determining the Settlement Amount**

On March 5, 2025, after *Gibson* Plaintiffs' Opposition Brief was filed, *Gibson* Plaintiffs' counsel took the Rule 30(b)(6) deposition of Weichert's General Counsel John Lanahan. Mr. Lanahan's testimony confirmed that Weichert knew Plaintiffs' *initial* settlement demand of ██████████ was based on adapting *Gibson* Plaintiffs' settlement with Real Brokerage to Weichert's sales volume, and that Plaintiffs and Weichert ultimately settled for a substantial discount even from this number because doing so ████████████████████████████████████████████████—i.e., Weichert. *See* Ex. E. This testimony reinforces *Gibson* Plaintiffs' argument that the Proposed Class is not adequately represented by Plaintiffs or their counsel, including because they: (i) conducted an improper reverse auction by promising to offer settling defendants a discount off of what they would otherwise have to pay to settle in *Gibson* Plaintiffs' litigation; and (ii) failed to meaningfully account for Weichert's ability to pay and protect the interests of the Class.

4

| | |
|---|---|
| Dated: March 31, 2025 | Respectfully submitted by: |

/s/ *Robert A. Braun*
Robert A. Braun (*pro hac vice*)
rbraun@cohenmilstein.com
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
Telephone: (708) 628-4949

Marc M. Seltzer (*pro hac vice*)
mseltzer@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 789-3100

Joseph A. Kaiser (Georgia Bar No. 323435)
GROTH MAKARENKO KAISER & EIDEX LLC
One Sugarloaf Centre
1960 Satellite Blvd Suite 2000
Duluth, GA 30097
Telephone: (770) 904-3590
jk@gmke.law

Rio S. Pierce (*pro hac vice*)
riop@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000

Brandon J.B. Boulware (*pro hac vice*)
BOULWARE LAW LLC
1600 Genessee, Suite 416
Kansas City, MO 64102
Tele:  (816) 492-2826
Fax:   (816) 492-2826
brandon@boulware-law.com

5

Eric L. Dirks (*pro hac vice*)
WILLIAMS DIRKS DAMERON LLC
1100 Main Street, Suite 2600
Kansas City, MO 64105
Tele: (816) 945-7110
Fax: (816) 945-7118
dirks@williamsdirks.com

***Attorneys for Gibson Plaintiffs***

## LOCAL RULE 5.1(C) CERTIFICATTION

The undersigned attorney of record hereby certifies that the text of this submission has been prepared in Times New Roman typeface, 14-point, consistent with this Court's requirements in Local Rule 5.1(C).

DATED: March 31, 2025        /s/ Robert A. Braun

## CERTIFICATE OF SERVICE

The undersigned attorney of record hereby certifies that on March 31, 2025, a true and correct copy of the foregoing was filed electronically by the Court's CM/ECF system, which caused notice and a copy of this filing to be sent to all counsel of record.

DATED: March 31, 2025        /s/ Robert A. Braun