UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| 1925 HOOPER LLC; ROBERT J. ARKO; and ANDREW M. MOORE; on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL ASSOCIATION OF REALTORS; *et al.*,<br><br>Defendants. | Case No.: 1:23-cv-05392-MHC<br><br>Hon. Mark H. Cohen |

## DECLARATION OF BRANDON J.B. BOULWARE

I, Brandon J.B. Boulware, declare as follows:

1. I submit this declaration in support of Gibson Plaintiffs' Surreply in Opposition to Plaintiffs' Motion for Preliminary Approval of Settlements with eXp and Weichert and Preliminary Certification of Settlement Class (ECF 136).

2. I am over the age of 18 and, if called as a witness, could competently testify to the matters set forth herein.

3. I am a partner at the law firm of Boulware Law LLC in Kansas City, Missouri, and counsel for the Plaintiffs and the Classes in *Burnett et al. v. National Association of Realtors*, 19-cv-00332 (W.D. Mo.) and *Gibson et al. v. National Association of Realtors*, 23-cv-00788 (W.D. Mo.).

1

4. In *Burnett*, the court appointed my law firm and its co-counsel to represent the certified litigation class as well as nationwide settlement classes.

5. In *Gibson*, the court appointed my law firm and its co-counsel to act as interim class counsel on behalf of the putative nationwide class. The appointment includes being "responsible for any settlement negotiations with Defendants that would propose to resolve claims on a class-wide or aggregate basis." *Gibson* ECF No. 180. eXp and Weichert are Defendants in the *Gibson* case.

6. Counsel for the Plaintiffs in this action, *1925 Hooper LLC v. National Association of Realtors*, 23-cv-05392 (N.D. Ga.), have represented that "counsel for Proposed Intervenors approached Plaintiffs' counsel to negotiate the terms of a potential cooperation agreement, conditioned on approval of the consolidation." Decl. of Bryan M. Knight ¶ 4 (ECF No. 126-2).

7. That is incorrect. In fact, it was Counsel for the Plaintiffs in this action who initiated the outreach to counsel for the *Gibson* Plaintiffs because they were interested in whether *Gibson* Plaintiffs would agree to give them work in a potential MDL.

8. In December 2023, my firm and co-counsel in *Gibson* filed a motion before the JPML to transfer and centralize in the Western District of Missouri nine related cases challenging NAR's buyer broker compensation rules, including this action.

9. On January 12, 2024, I received a phone call from a Kansas City attorney who indicated that counsel for the *Hooper* Plaintiffs had contacted him and asked if he could connect them to me because they were interested in work.

10. I was connected via email with counsel for the *Hooper* Plaintiffs on January 12 and had a phone call with them on January 13 to discuss their potential involvement if the cases challenging the buyer broker compensation rules were consolidated in an MDL. *See* Ex. B.

11. Throughout my email and phone conversations with counsel for the *Hooper* Plaintiffs from January to April 2024, they continued to express a desire to work with counsel for the *Gibson* Plaintiffs.

12. On January 17, 2024, Jonathan Palmer emailed me that counsel for the *Hooper* Plaintiffs would support counsel for the *Gibson* Plaintiffs' motion for consolidation and transfer to the Western District of Missouri. Mr. Palmer sent me a written proposal to confirm counsel for the *Hooper* Plaintiffs' understanding of their role in the MDL if the cases were consolidated.

13. I discussed the terms of the proposal with counsel for the *Hooper* Plaintiffs and on January 19, 2024, I received an email from Jonathan Palmer confirming an agreement was reached. This agreement specified counsel for the *Hooper* Plaintiffs' expectation that they would be tasked, under the MDL leadership's direction and oversight, with working on litigation against specific

defendants in this action to the extent they were named in a consolidated complaint filed in an MDL. These defendants did not include Weichert or eXp.

14. On February 28, 2024, Jonathan Palmer and Bryan Knight asked to host me and my colleague, Eric Dirks, for dinner on March 27, 2024, the night before the JPML hearing.

15. On March 26, 2024, Bryan Knight asked me to let counsel for the *Hooper* Plaintiffs know "what [my] thoughts [were] on a deal between our respective sides." *See* Ex. C at pp. 5-6.

16. The same day I emailed counsel for the *Hooper* Plaintiffs proposed terms for a deal, which included the following: "For any settlements or other recoveries: 60% to be paid to *Burnett/Moehrl* counsel collectively 40% to be paid to Georgia Counsel collectively" and "Georgia Counsel will not seek any fees or costs with respect to any *Umpa/Gibson/Moehrl/Burnett* defendant absent permission from the *Umpa/Gibson/Moehrl/Burnett* firms." *See id.* at pp. 4-5. Under the proposed terms, Georgia Counsel and the *Umpa/Gibson/Moehrl/Burnett* firms would jointly seek recovery from Georgia-based entities, which did not include either eXp or Weichert. *See id.*

17. On March 27, the day after I sent this proposal, my colleague Eric Dirks and I had a cordial dinner with counsel for the *Hooper* Plaintiffs.

4

18. During the dinner, I explained to counsel for the *Hooper* Plaintiffs how the National Association of Realtors settlement worked. This included explaining that to be considered a released party under the settlement, among other requirements, a real estate brokerage must have had a calendar year 2022 total transaction volume for residential home sales of $2 billion or less.

19. At no point in my communications with counsel for the *Hooper* Plaintiffs did I state that counsel for the *Gibson* Plaintiffs were using the metric of total transaction volume to determine settlement amounts. I made clear to counsel for the *Hooper* Plaintiffs that counsel for the *Gibson* Plaintiffs analyzed each defendant's ability to pay and agreed to settlement on that basis.

20. On April 8, 2024, counsel for the *Hooper* Plaintiffs emailed me their response to the proposed terms. They stated they were "amenable to a split that reflects the substantial contribution you and your colleagues have made to these cases. In fact, we are willing to agree to a split regardless of whether the cases are consolidated in an MDL." *See* Ex. C at p. 3. Counsel for the *Hooper* Plaintiffs proposed that if they reached settlements with certain Georgia-based defendants prior to discovery, they would split any fee 50/50 with the *Umpa/Gibson/Moehrl/Burnett* firms. *Id.* They also agreed with the proposal that they would not seek fees or costs with respect to any *Umpa/Gibson/Moehrl/Burnett* defendant. *Id.*

5

21. The following day, counsel for the *Hooper* Plaintiffs sent another response to my March 26th proposal and expressed that if the cases were consolidated in an MDL, they were amenable to the proposal. *See* Ex. D at pp. 2-3.

22. On April 12, 2024, I responded with counsel for the *Gibson* Plaintiffs' counter proposal, which maintained the 60/40 split between *Burnett/Moehrl* counsel and Georgia counsel for any settlements or other recoveries, and that Georgia counsel would not seek any fees or costs with respect to any *Umpa/Gibson/Moehrl/Burnett* defendant absent permission from the *Umpa/Gibson/Moehrl/Burnett* firms. *See id*. at p. 1.

23. On April 18, 2024, I had a phone call with counsel for the *Hooper* Plaintiffs who declined the proposal.

24. In response to the *Gibson* Plaintiffs' objections to their settlements with eXp and Weichert as resulting from a reverse auction and otherwise inadequate, the *Hooper* Plaintiffs accuse us of "demand[ing] that Plaintiffs' counsel pay [us] a hefty tribute in return for [us] 'permitting' Plaintiffs' counsel to try Plaintiffs' counsel's own case without interference[.]" Reply Br. at 6. Suffice it to say, this accusation is false. Moreover, counsel for the *Hooper* Plaintiffs never made any such accusation during the conversations I had with them after they approached us for work in exchange for sharing fees.

25. Attached hereto as Exhibit E is a true and correct copy of transcript excerpts from the Rule 30(b)(6) Deposition I took of Weichert's General Counsel John Lanahan on March 5, 2025.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

    /s/ Brandon J.B. Boulware
    Brandon J.B. Boulware