# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| 1925 HOOPER LLC; ROBERT J. ARKO; and ANDREW M. MOORE; on behalf of themselves and all others similarly situated,<br><br>                Plaintiffs,<br><br>         v.<br><br>THE NATIONAL ASSOCIATION OF REALTORS; *et al.*,<br><br>              Defendants. | CASE NO.: 1:23-cv-05392-MHC |

## PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES, AND INCORPORATED MEMORANDUM OF LAW

# TABLE OF CONTENTS

I.    INTRODUCTION AND BACKGROUND...................................................1

    A.    Background and Procedural History ......................................1

    B.    Class Counsel's Substantial Efforts in this Litigation Led Directly to the Settlement Agreement ..................................................4

    C.    The Settlement Agreements Confer Substantial Benefits on the Class ............................................................................10

    D.    Fees and Expenses Requested by Class Counsel ................................11

II.   ARGUMENT.........................................................................12

    A.    Standard for Attorney's Fee Awards in Common Fund Cases...........12

    B.    The *Johnson* Factors All Support the Requested Attorneys' Fees Award ..............................................................................15

        1.    Time and Labor Expended.......................................................15

        2.    Complexity of the Litigation....................................................17

        3.    The skill required: Class Counsel's quality of work. ..............18

        4.    Preclusion of other employment by Class Counsel due to this case. ..........................................................21

        5.    The customary fee, and whether the fee is contingent or fixed. ...........................................................................21

        6.    Amount of time involved, and result obtained. ........................22

        7.    The undesirability of the case. ................................................23

        8.    Awards in similar cases. .........................................................24

    C.    Class Counsel's Expenses ..................................................25

III.  CONCLUSION.......................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allapattah Servs., Inc. v. Exxon Corp.*,
  454 F. Supp. 2d 1185 (S.D. Fla. 2006)..............................................19, 20, 21, 23

*Behrens v. Wometco Enterprises, Inc.*,
  118 F.R.D. 534 (S.D. Fla. 1988), *aff'd,* 899 F.2d 21 (11th Cir.
  1990) ...............................................................................................................17

*Blum v. Stenson*,
  465 U.S. 886 (1984)..........................................................................................14

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980)................................................................................12, 13, 14

*Camden I Condo. Ass'n v. Dunkle*,
  946 F.2d 768 (11th Cir. 1991) ...................................................................*passim*

*In re Cardizem CD Antitrust Litig.*,
  218 F.R.D. 508 (E.D. Mich. 2003) ..............................................................11, 24

*Central R.R. & Banking Co. v. Pettus*,
  113 U.S. 116 (1885).....................................................................................12, 13

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
  No. 1:04-CV-3066-JEC, 2012 WL 12540344 (N.D. Ga. Oct. 26,
  2012) ..........................................................................................................17, 21, 25

*In re: Domestic Air Transp. Antitrust Litig.*,
  148 F.R.D. 297 (N.D. Ga. 1993)........................................................................25

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
  999 F.3d 1247 (11th Cir. 2021) .........................................................................14

*Faught v. Am. Home Shield Corp.*,
  668 F.3d 1233 (11th Cir. 2011) .........................................................................22

*George v. Acad. Mortg. Corp.*,
  369 F. Supp. 3d 1356 (N.D. Ga. 2019)...............................................................13

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000) ................................................................22

*Johnson v. Georgia Highway Express, Inc.*,
488 F.2d 714 (5th Cir. 1974) ...........................................................14

*Mills v. Electric Auto-Lite Co.*,
396 U.S. 375 (1970)...............................................................12, 13

*In re Motorsports Merchandise Antitrust Litig.*,
112 F. Supp. 2d 1329 (N.D. Ga. 2000)................................................17

*Paul, Johnson, Alston & Hunt v. Graulty*,
886 F.2d 265 (9th Cir. 1989) ..........................................13, 15, 22, 24

*Pinto v. Princes Cruise Lines, Ltd.*,
513 F. Supp. 2d 1334 (S.D. Fla. 2007)................................22, 23, 24

*R.C. by Ala. Disabilities Advocacy Program v. Nachman*,
992 F. Supp. 1328 (M.D. Ala. 1997)................................................17

*Ramey v. Cincinnati Enquirer, Inc.*,
508 F.2d 1188 (6th Cir. 1974) ...........................................................13

*Ramos v. Lamm*,
713 F.2d 546 (10th Cir. 1983) ...........................................................15

*Reiser v. Del Monte Properties Co.*,
605 F.2d 1135 (9th Cir. 1979) ...........................................................13

*Ressler v. Jacobson*,
149 F.R.D. 651 (M.D. Fla. 1992) ........................................19, 21, 22

*Sprague v. Ticonic Nat'l Bank*,
307 U.S. 161 (1939)...............................................................12, 13

*Trustees v. Greenough*,
105 U.S. 527 (1882)...............................................................12, 13

*Waters v. Int'l Precious Metals Corp.*,
190 F.3d 1291 (11th Cir. 1999) ...................................................14, 15

iii

*Yates v. Mobile Cnty. Personnel Bd.*,
   719 F.2d 1530 (11th Cir. 1983) ...........................................................................17

**Statutes**

Sherman Act...............................................................................................................2

Plaintiffs 1925 Hooper LLC, Robert J. Arko, and Andrew M. Moore move this Court for an Order awarding Class Counsel expenses in the amount of $29,312.62, and attorneys' fees of $8,810,000—20% of the common fund established by Plaintiffs' settlement with Defendants Higher Tech Realty, LLC d/b/a Mark Spain Real Estate ("Higher Tech"), eXp World Holdings, Inc. and eXp Realty, LLC and several of their affiliates (collectively "eXp"), Weichert North America, Inc., Weichert Co., and Weichert Real Estate Affiliates, Inc. (collectively "Weichert"), and Atlanta Communities Real Estate Brokerage, LLC ("Atlanta Communities") (collectively, the "Defendants" or "Settling Defendants").

Class Counsel's requested fee is reasonable and well within the parameters established under Eleventh Circuit law for awards of attorneys' fees in common-fund class actions. And, both as a percentage of recovery achieved for the class and in terms of actual dollars, the fees requested are significantly less than fees awarded to other class counsel in similar cases.

## I.    INTRODUCTION AND BACKGROUND

### A.    Background and Procedural History

This class action arises out of a nationwide conspiracy orchestrated by the National Association of Realtors (the "NAR") and residential real estate brokerages across the country (the "Brokerages"). This conspiracy involved a concerted effort by NAR and the Brokerages to artificially inflate broker compensation at the expense of

the Brokerages' home seller clients.  NAR and the Brokerages accomplished this end by requiring their customers, including the Class Members here, to shoulder both the listing agents' commissions and the buyer agents' commissions as a condition for their customers to list their residential properties on the ubiquitous Multiple Listing Services (the "MLS").  More specifically, as a prerequisite to listing any residential property on an MLS, seller brokers were compelled to adhere strictly to NAR rules, including the "Mandatory Offer of Compensation Rule" enshrined in a seller's listing agreement dictating the mandatory terms of compensation that must be paid as commissions not only to the seller's broker, but also to the buyer's broker (the "Compensation Rule").

Prior to this action, plaintiffs in Missouri (collectively, the "Missouri Plaintiffs") brought two actions asserting similar claims.  First, in the *Burnett* action, plaintiffs brought claims against NAR, Realogy Holdings Corp., HomeServices of America, Inc., RE/MAX, LLC, and Keller Williams Realty on behalf of Missouri home sellers in the United States District Court for the Western District of Missouri, Case No. 4:19-CV-332-SRB.[1]  Ultimately, the *Burnett* Action was tried to a federal jury that found NAR and its co-conspirators liable under the Sherman Act and awarded the Missouri plaintiffs approximately $1.785 billion in damages.  Faced with this verdict, RE/MAX,

---

[1] The *Burnett* action was originally styled *Sitzer v. NAR et al* (W.D. Mo. filed April 29, 2019), however, the case was re-captioned with the filing of the Second Amended Complaint on June 30, 2021 (*Burnett* ECF 477) following the elimination of Joshua Sitzer and Amy Winger as class representatives (*see Burnett* ECF 469).

Realogy,[2] and Keller Williams promptly settled with the *Burnett* plaintiffs, while NAR eventually opted to resolve any further nationwide litigation, including appeals, by agreeing to settle with those plaintiffs on March 15, 2024 (the "NAR Settlement").

Immediately following the *Burnett* verdict, a new class action styled *Gibson v. NAR, et al.*, 4:23-cv-00788 was filed in the U.S. District Court for the Western District of Missouri naming additional national brokerages.[3] The NAR Settlement also includes the *Gibson* plaintiffs.[4] Notably, counsel for the plaintiffs in the Missouri Actions requested and were granted an award of fees representing 33.33% (or one third) of the settlement amounts paid (or approximately $36.8 million), far more than the 20% Class Counsel is seeking here. (*See Gibson* ECF 399, 530.)

On November 22, 2023, Plaintiffs 1925 Hooper, LLC, Robert J. Arko, and Andrew M. Moore filed the above-captioned case to bring similar claims against additional Defendants on behalf of a nationwide class of corporate and individual sellers of residential real estate. Plaintiffs originally named twenty-seven (27) defendants in this case, the majority of which do business solely in the state of Georgia.

---

[2] Realogy is now known as Anywhere Real Estate, Inc. ("Anywhere").

[3] Around the same time, another class action styled *Umpa v. The National Association of Realtors, et al.*, 4:23-cv-00945, was also filed in the United States District Court for the Western District of Missouri. That case was consolidated with the *Gibson* matter in April 2024. (*Gibson* ECF 245.)

[4] The *Burnett* and *Gibson* actions will be collectively referred to herein as the "Missouri Actions."

The Georgia Plaintiffs are represented in this action by Knight Palmer LLC and Kabat Chapman & Ozmer LLP as Co-Lead Class Counsel (collectively "Class Counsel").

After expending significant time and effort researching and identifying the proper defendants, filing a 60-page, 191 paragraph complaint,  and negotiating with the Settling Defendants over the course of several months (as discussed in more detail below), Plaintiffs reached settlement agreements with the Settling Defendants.  This Court entered an Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlements on May 23, 2025.

## B.    Class Counsel's Substantial Efforts in this Litigation Led Directly to the Settlement Agreement

Class Counsel engaged in extensive pre-filing investigation beginning in the Fall of 2023.  Class counsel undertook significant efforts to identify the named Plaintiffs.  (Declaration of Bryan Knight ("Knight Decl.") ¶ 5.)  They conducted substantial research into the Settling Defendants, their participation in NAR, their enforcement of the Compensation Rule, and their market share and market presence. (*Id.*)  Specifically, Counsel engaged in a thorough and detailed review of numerous scholarly articles, law reviews, legal pleadings in both state and federal jurisdictions, and corporate filings all related to the alleged anticompetitive arrangement involving the NAR, its regional cohorts, and residential real estate brokerages across the nation. (*Id.*)  Counsel further reviewed publicly available information, including SEC filings, company websites, third-party websites, and other sources in order to investigate the

connection between the identified companies and the practices found to be antitrust violations in *Burnett*. (*Id.*)

Class Counsel then drafted and filed a detailed complaint against twenty-seven (27) defendants, the majority of which do business only in the state of Georgia. (*Id.* ¶ 6.) Early on in the case, Class Counsel worked alongside counsel in the Missouri Actions to consolidate the numerous class actions asserting similar claims (including this action) before a judge in the Western District of Missouri. In particular, Class Counsel prepared a filed a brief in support of the Missouri Plaintiffs' motion to transfer before the Judicial Panel on Multidistrict Litigation ("JPML"). (MDL No. 3100, ECF 1, 267.) However, the JPML ultimately denied the motion on April 12, 2024 in light of the settlements that had been reached (including the NAR Settlement) and the various conflicting positions asserted by the parties with respect to whether centralization was appropriate. (MDL No. 3100, ECF 558).

Upon learning of the NAR Settlement and the JPML's decision denying consolidation, Class Counsel proceeded with litigating this case. However, recognizing that certain defendants would or could be covered by the NAR Settlement, this Court entered an order staying the entire case as to all defendants through July 19, 2024, and through a decision on final approval of the proposed NAR Settlement for those defendants that would be "Released Parties" pursuant to its terms. (ECF 69.) Thereafter, as outlined above, various defendants entered into settlement agreements

with the *Gibson* plaintiffs, and following the *Gibson* court's final approval of those settlements, the parties stipulated to the dismissal of those "settled defendants."[5] (ECF 115 & 116.)

Beginning in December 2023, Plaintiffs commenced settlement negotiations with those defendants who were not automatically included in the NAR Settlement and did not choose to opt into the NAR Settlement. For example, prior to sending an initial demand letter to eXp, Counsel engaged in thorough and detailed research regarding eXp's background, business model, principals, and financial condition. (Knight Decl. ¶¶ 10–12.) This included reviewing numerous public filings with the SEC, which provided data related to eXp's financial performance, organizational structure, financial statements, and other relevant financial information. (*Id.* ¶ 12.) Further, Counsel researched and reviewed substantial data reported and published by realtrends.com, which ranks real estate brokerages by, among other things, annual sales volume and total transaction sides through verified reporting sources. (*Id.*) Counsel also reviewed market data, including eXp's market capitalization trends, quarterly earnings calls and reports, and shareholder data over the relevant time period. (*Id.*)

---

[5] As a result of other settlements—including the NAR Settlement—the only defendants remaining in this case are eXp, the Weichert parties (Weichert North America, Inc., Weichert Co., and Weichert Real Estate Affiliates, Inc. (collectively, "Weichert"), Higher Tech Realty, LLC, ("Higher Tech") and Atlanta Communities Real Estate Brokerage, LLC ("Atlanta Communities"). Plaintiffs reached a settlement with all of these parties.

After gathering sufficient data, Plaintiffs' counsel collectively compared eXp with similarly situated brokerages based on business models, organizational structure, total transaction volumes, and market capitalizations. (*Id.*) Counsel conducted similar research with respect to the other Settling Defendants. (*Id.* ¶ 14.)

Specifically, Plaintiffs started negotiating with Defendant Atlanta Communities on December 7, 2023. (*Id.* ¶¶ 15–16.) In April, 2024, the Parties negotiated and executed a confidentiality agreement for Atlanta Communities to share financials with Plaintiffs and conduct informal discovery. (*Id.* ¶ 16.) Pursuant to that confidentiality agreement, Atlanta Communities provided confidential financials, tax returns, financial reports, listing agreements, purchase and sale agreements, which Class Counsel expended significant time reviewing and analyzing to determine a reasonable settlement amount for Atlanta Communities. (*Id.*) For almost seven months, from May through December 4, 2024, the Class Counsel held extensive negotiations with Atlanta Communities' counsel via telephone and through emails. (*Id.*)

Plaintiffs started negotiating with eXp in May 2024. (*Id.* ¶ 17.) As with Atlanta Communities, Class Counsel negotiated a confidentiality agreement with eXp's counsel for eXp to share financials and conduct informal discovery with Plaintiffs. (*Id.*) Pursuant to that agreement, eXp produced four years of tax returns, sales volume, commission totals, purchase and sale agreements, listing agreements, and engagement agreements, all of which Class Counsel spent considerable time reviewing and

7

analyzing to arrive at a reasonable settlement demand for eXp. (*Id.*) During this same time Class Counsel also spent time reviewing eXp's public financial filings with the SEC, 10-K reports, T360 real estate reports, and Real Trends real estate reports. (*Id.*) Class Counsel sent their first written demand letter to eXp in September 2024, and Class Counsel and counsel for eXp then scheduled a mediation for October 1, 2024 with retired California Federal Judge Daniel Weinstein and former U.S. Ambassador David Carden. (*Id.*) Class Counsel then expended significant efforts preparing an extensive mediation statement. (*Id.*) The Parties settled at mediation, after which Class Counsel spent significant time drafting and negotiating a settlement agreement. (*Id.*)

Class Counsel began negotiating with Higher Tech d/b/a Mark Spain in May 2024. (*Id.* ¶ 18.) As with the other Settling Defendants, Higher Tech provided confidential financial information, which Class Counsel spent significant time analyzing to determine a reasonable settlement amount for Higher Tech. (*Id.*) Thereafter, from May through September 2024, Class Counsel attended zoom meetings, held telephone calls and negotiated via email before eventually reaching a settlement on October 3, 2024. (*Id.*) Since then, Class Counsel has spent additional time negotiating, drafting, and revising the settlement agreement. (*Id.*)

Class Counsel began negotiating with Weichert in October 2024. On October 22, 2024, Plaintiffs' counsel and Weichert's corporate counsel and chief financial officer met in person for an all-day conference. (*Id.* ¶ 19.) During that conference,

Weichert provided confidential financial information, business organization, and transactional data, which Class Counsel spent time reviewing and analyzing to determine a reasonable settlement amount. (*Id.*) From the conference date on October 22, 2024 through December 2024, Class Counsel continued to negotiate with Weichert's counsel by telephone and email, and prepared for and attended a formal mediation held on November 5, 2024 with Hon. Randy Rich (Ret.), where the parties reached a preliminary agreement. (*Id.*) Thereafter, Class Counsel continued to expend time drafting and formalizing the final settlement agreement. (*Id.*) Based on the above efforts, Plaintiffs reached agreements with the Settling Defendants.

Upon learning of the settlements, counsel for the Missouri Plaintiffs moved to intervene in this action and transfer it to the Western District of Missouri. Class Counsel was therefore required to expend significant additional time and resources opposing that motion, which this Court ultimately denied. (ECF 94, 126, 174.) Counsel for the Missouri Plaintiffs also opposed Plaintiffs' Motion for Preliminary Approval of the settlements, as they had not yet been denied leave to intervene at the time the motion was filed. (ECF 136, 153.) This required Class Counsel to expend significant additional time preparing its reply in support of the Motion for Preliminary Approval to overcome the Missouri Plaintiffs' Counsel's self-serving efforts to hijack this case. (ECF 153, 169; Declaration of Nathan Chapman ("Chapman Decl.") ¶¶ 10– 11.)

9

Consequently, Class Counsel has fully demonstrated their tenacity, experience, and dedication to obtaining the relief set forth in the Settlement Agreements.

## C.    The Settlement Agreements Confer Substantial Benefits on the Class

The Settlement Agreements provide direct and substantial benefits to class members, which Class Counsel estimates number in the hundreds of thousands.[6] The Settlements provide for a significant financial recovery for the class, particularly considering the Settling Defendants' relatively limited financial resources. Specifically, the Settlement Agreements with eXp, Weichert, Atlanta Communities, and Higher Tech provide for payments to the class members totaling $44.05 million, as follows: (1) eXp – $34 million; (2) Weichert – $8.5 million; (3) Atlanta Communities – $800,000; and (4) Higher Tech – $750,000.[7]

In addition to the substantial monetary compensation for the class members, each of the Settlement Agreements requires the Settling Defendants to adopt and implement certain practice changes concerning mandatory offers of compensation to buyer brokers in residential real estate transactions, among other things. (Knight Decl. ¶ 20; ECF 136-2 at 18–21 (identifying practice changes); ECF 136-3 at 21–23 (same for eXp); ECF 136-4 at 20–22 (same for Weichert); ECF 136-5 at 19–21 (same for

---

[6] Based on information provided by counsel for the Settling Defendants, the Settlement Class Members number approximately 810,000. (Knight Decl. ¶ 20.)

[7] The settlements with the Settling Defendants are in line with the settlements approved in Missouri, accounting for the defendants' relative resources and market share. (*See* ECF 136-1 ¶¶ 14, 20, 22, 24, 26.)

Atlanta Communities); *see also* ECF 136 at 19–23.)  These benefits extend to all home sellers for at least 7 years for Weichert, High Tech, and Atlanta Communities, longer than the practice changes achieved by the Missouri Plaintiffs.

Further, the Settlement Agreements also secure these benefits for class members in the face of the inherent uncertainties of litigation.  Absent settlement, Plaintiffs' best-case scenario would have been prevailing on the merits at trial in this litigation and upholding their award on appeal.  But "experience proves that, no matter how confident trial counsel may be, they cannot predict with 100% accuracy a jury's favorable verdict, particularly in complex antitrust litigation." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 523 (E.D. Mich. 2003).  The same is true for post-trial motions and appeals.  The inherent risks associated with litigating this case through trial only heighten the benefits afforded by the Settlement Agreements, confirming that Class Counsel's efforts led to an exceptional achievement for the class members.

**D.    Fees and Expenses Requested by Class Counsel**

For their efforts in bringing this case to a successful resolution, Class Counsel requests the Court enter an order granting attorneys' fees representing 20% of the Settlement Amounts reflected in the Motion for Preliminary Approval and the settlement agreements submitted therewith ($8.81 million), as shown below.  (ECF 136 at 12, 22–23; ECF 136-2, 136-3, 136-4, 136-5.)

| Settling Defendant | Settlement Amount | Fee Amount |
|---|---|---|
| eXp | $34 million | $6.8 million |

| | | |
|---|---|---|
| Weichert | $8.5 million | $1.7 million |
| Atlanta Communities | $800,000 | $160,000 |
| Higher Tech | $750,000 | $150,000 |

Further, Class Counsel seeks an Order approving payment of their expenses in the total amount of $29,312.62.  (Chapman Decl. ¶ 13; Knight Decl. ¶ 22.)

## II.    ARGUMENT

### A.    Standard for Attorney's Fee Awards in Common Fund Cases

The common fund doctrine is one of the earliest recognized exceptions to the "American Rule," which generally requires that litigants bear their own costs and attorneys' fees. Premised on the equitable powers of the court, the common fund doctrine allows a person who maintains a suit that results in the creation, preservation or increase of a benefit in which others have a common interest to be reimbursed for their fees.  *See, e.g.*, *Central R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885); *Trustees v. Greenough*, 105 U.S. 527 (1882); *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980); *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161 (1939).

Under this "equitable fund" doctrine, attorneys for the representative plaintiffs in litigation resulting in a recovery for a class may petition the court to be compensated for their efforts. As explained by the United States Supreme Court in *Boeing*: "a litigant or a lawyer who recovers a common fund for the benefit of a person other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole." *Boeing Co.*, 444 U.S. at 478; *see also Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970);

*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 265, 271 (9th Cir. 1989).

Accordingly, it is well established that where a representative party has made a "substantial contribution" to conferring a "benefit" upon an identifiable class, counsel for that party is entitled to an allowance of attorneys' fees relative to the benefit obtained. *See, e.g.*, *Mills*, 396 U.S. at 375; *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991); *George v. Acad. Mortg. Corp.*, 369 F. Supp. 3d 1356, 1375 (N.D. Ga. 2019). The "substantial benefit" doctrine equitably distributes the fees and costs of successful litigation among all who gained from the named plaintiff's efforts. *See*, *e.g.*, *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1995 (6th Cir. 1974); *Reiser v. Del Monte Properties Co.*, 605 F.2d 1135, 1139 (9th Cir. 1979).

The Supreme Court has consistently held that the percentage-of-recovery approach is an appropriate methodology for assessing fees. *See, e.g., Sprague*, 307 U.S. at 164–67; *Central R.R. & Banking Co.*, 113 U.S. at 123; *Greenough*, 105 U.S. at 533. In *Boeing*, the Supreme Court affirmed a ruling that absentee class members had received a benefit within the meaning of the common-fund doctrine and addressed "whether a proportionate share of the fees awarded to lawyers who represented the successful class may be assessed against the unclaimed portion of the fund created by a judgment." *Boeing Co.*, 444 U.S. at 473. The Court held the attorneys were entitled to a reasonable fee from the whole fund, regardless of claims rate:

> The members of the Class, whether or not they assert their rights, are at least the equitable owners of their respective shares in the recovery [and whether

they claim the money or not] cannot defeat each class member's equitable obligation to share the expenses of litigation.

*Id*. at 481-82 (1980).  Put another way: "under the 'common fund doctrine,' . . . a reasonable fee is based on a percentage of the fund bestowed on the class . . . ." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984).  Following the Supreme Court's decision in *Blum*, the Eleventh Circuit expressly held that "in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I*, 946 F.2d at 774.  In recent years, the Eleventh Circuit reaffirmed its holding in *Camden I* that the percentage method is the appropriate analysis in common fund settlements such as this one and the district court is not required to perform a lodestar analysis. *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1278-81 (11th Cir. 2021).

Given the complexities inherent in class-action litigation, courts are given "great latitude in formulating attorneys' fee awards subject only to the necessity of explaining its reasoning." *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1293 (11th Cir. 1999) (internal quotation omitted).  In *Camden I*, the Eleventh Circuit noted that the "majority of common fund fee awards fall between 20% to 30% of the fund," and directed district courts to view this range as a benchmark against which to measure fee awards. *Camden I*, 946 F.2d at 775. This benchmark "'may be adjusted in accordance with the individual circumstances of each case,'" using the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d

14

714 (5th Cir. 1974)." *Waters*, 190 F.3d at 1294 (quoting *Camden I*, 946 F.2d at 775).

Regardless, a district court is required to "articulate the specific reasons for selecting the percentage upon which the attorneys' fee award is based," and, in so doing, "should identify all of the factors upon which it relied and explain how each factor affected its selection of the percentage of the fund awarded as fees." *Camden I*, 946 F.2d at 775. The factors which a district court should consider are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; and (12) awards in similar cases.

*Id*. at 772 n.3 (quoting *Johnson,* 488 F.2d at 717–19 ).  Depending on the specific facts of the case, a district court may totally ignore some facts and give others different relative weights.  *Ramos v. Lamm*, 713 F.2d 546, 552 (10th Cir. 1983). A review of the relevant factors confirms that the requested fee, which falls at the lowest end of the threshold approved in *Camden I*, is exceedingly reasonable.

**B.    The *Johnson* Factors All Support the Requested Attorneys' Fees Award**

**1.    Time and Labor Expended**

Class Counsel litigated this case aggressively and comprehensively, spending a total of 1,496.1 attorney hours and 59 non-attorney hours pursuing this matter to date.

(Chapman Decl. ¶ 12; Knight Decl. ¶ 21.)  Class counsel pursued this action on a purely contingent fee basis for recovery of damages related to Defendants' concerted efforts to artificially inflate broker compensation at the expense of the Brokerages' home seller clients.  In pursing this action, Class Counsel performed substantial legal work that drove the successful settlement of this case, including (as described in detail, *supra*): pre- and post-litigation research into Settling Defendants and the other previously named Defendants in the case, legal strategizing, complaint drafting, reviewing and analyzing financial records from the Settling Defendants, preparing for and participating in mediation, engaging in significant motion practice with respect to the Missouri Plaintiffs' attempt to intervene in this case and have it transferred to the Western District of Missouri, and replying to the Missouri Plaintiffs' opposition to the Motion for Preliminary Approval.

Class Counsel expended significant time and resources engaging in settlement negotiations with each of the four Settling Defendants.  Even prior to engaging in formal mediation and/or negotiations, Class Counsel engaged in thorough and detailed research regarding each defendant's background, business model, principals, and financial condition, as detailed above.  (*See supra* § I.B.)  Settling Defendants also provided detailed financial records, which Class Counsel carefully and thoroughly reviewed in conjunction with their own independent research and analysis.  (*Id.*)  The foregoing was in addition to the time spent preparing mediation briefs, attending

mediation, and otherwise negotiating with opposing counsel.  The time spent by Class

Counsel justifies the requested fee and reimbursement of expenses.

### 2.    Complexity of the Litigation

Because antitrust claims are especially complex, expensive, and difficult to

prosecute, courts have recognized that a fee as high as one-third of the fund is often

appropriate.  *See, e.g.*, *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, No. 1:04-

CV-3066-JEC, 2012 WL 12540344, at *3 (N.D. Ga. Oct. 26, 2012) (approving fee of

one-third of the common fund and noting that "as this Court has observed, antitrust

class actions are especially complex and difficult"); *In re Motorsports Merchandise

Antitrust Litig.*, 112 F. Supp. 2d 1329, 1337 (N.D. Ga. 2000) ("An antitrust class action

is arguably the most complex action to prosecute. The legal and factual issues involved

are always numerous and uncertain in outcome.").

Further, Courts in this Circuit generally recognize that large class actions

involving complex legal theories are, by nature, very difficult.  *See Yates v. Mobile

Cnty. Personnel Bd.*, 719 F.2d 1530, 1535 (11th Cir. 1983) (extremely complicated

litigation requires thorough and detailed research of almost every question involved);

*see also Behrens v. Wometco Enterprises, Inc.,* 118 F.R.D. 534, 547 (S.D. Fla. 1988),

*aff'd,* 899 F.2d 21 (11th Cir. 1990) (considering size of the class, difficult theories of

liability, and inevitable problems associated with damages in complex actions); *see

also R.C. by Ala. Disabilities Advocacy Program v. Nachman*, 992 F. Supp. 1328, 1334

(M.D. Ala. 1997) ("The size of the class and the nature and scope of the relief are among the factors that contribute to complexity and difficulty of this case.").

This was a complex antitrust case that involved substantial research and legal strategy to navigate successfully. As detailed above, to identify the appropriate defendants in the case and then to arrive at reasonable settlement amounts for each of the four settling defendants, Class Counsel engaged in significant pre- and post-filing research and review of voluminous financials documents.  (*See supra* § I.B.)

To merely call the litigation in this case "complex" would be an understatement, even accounting for the existence of prior similar actions.  Indeed, if anything, the existence of the prior Missouri Actions contributed to the complexity of this case, as Counsel was required to navigate the interplay between this case and the Missouri cases, including by participating in briefing before the JPML, accounting for the impact of the NAR Settlement on this case, and responding to the Missouri Plaintiffs' motion to intervene and opposition to Plaintiff's Motion for Preliminary Approval.

This factor thus weighs in favor of awarding Class Counsel the fee requested, particularly as Class Counsel here is seeking a fee of only 20% of the common fund, which is significantly less than the 33.33% fees sought by and awarded to class counsel in the Missouri Actions and that courts in this Circuit frequently approve.

### 3.    The skill required: Class Counsel's quality of work.

Class Counsel has substantial experience in prosecuting class actions, mass torts

and other complex litigation. (*See* ECF 136-1 ¶¶ 2–4; ECF 136-9 ¶¶ 2–5; ECF 136-10 ¶¶ 2–9 (detailing credentials and prior class-action experience of Class Counsel.) Given the complexity of the factual and legal issues involved in this matter, Class Counsel's competence and experience in class actions clearly was a significant factor in not only overcoming Defendants' resistance to settlement, but also in obtaining the ultimate results achieved for the benefit of the settlement class.

In addition to assessing the quality of representation by Plaintiffs' counsel, the Court also should consider the quality of the opposition Class Counsel has otherwise faced in securing preliminary approval of the settlements at issue. *See, e.g.*, *Ressler v. Jacobson,* 149 F.R.D. 651, 654 (M.D. Fla. 1992) ("[I]n assessing quality, the Court has considered the quality of the *opposition* as well as the standing of plaintiff's counsel."); *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1202 (S.D. Fla. 2006) ("the Eleventh Circuit recognized that 'other pertinent factors are . . . whether there are any substantial objections by class members or other parties to the settlement terms or the fees required by counsel.'" (quoting *Camden I*, 946 F.2d at 775)).

All the Settling Defendants here were represented by exceptionally capable counsel from no fewer than eight different law firms, including large international firms like Alston & Bird, LLP, Vinson & Elkins, and Womble Bond Dickinson (US) LLP. The firms representing Settling Defendants are highly competent and professional adversaries, many of whom have enormous resources at their disposal that

outstrip those available to Class Counsel. Due to the stay put in place by this Court pending approval of the NAR Settlement and the parties' settlement efforts, Class Counsel could not engage in significant motion practice or discovery involving Settling Defendants. Still, their counsel's competence and ample resources are relevant to the Court's consideration of the efforts and skill required of Class Counsel to successfully negotiate four separate Settlement Agreements, which involved attending two separate mediations and lengthy negotiations with four sets of skilled attorneys.

Moreover, Class Counsel have been required to respond to and defend against collateral attacks on their settlement efforts by the Missouri Plaintiffs, who attempted to intervene in this matter and to have this case transferred to the Western District of Missouri and consolidated with the Missouri Actions, and vigorously opposed preliminary approval of the eXp and Weichert settlement agreements. The Missouri Plaintiffs' counsel come from no fewer than six different law firms and have made substantial, aggressive efforts not only to intervene in this litigation, but to undo the settlements in this case. The Missouri Plaintiffs' vigorous opposition to these settlements—including their spurious allegations regarding purported "reverse auctions" and speculation about the way the settlements were reached—also weigh in favor of approval. *See Allapattah*, 454 F. Supp. 2d at 1202.

Given the quality of lawyers representing Settling Defendants and the Missouri Plaintiffs, Class Counsel's task of obtaining and maintaining these settlements was

challenging, to say the least. This factor supports granting this fee petition.

### 4. Preclusion of other employment by Class Counsel due to this case.

"This factor requires the dual consideration of otherwise available business which is foreclosed because of conflicts of interest arising from the representation, and the fact that once the employment is undertaken, the attorney is not free to use the time spent on the case for other purposes." *Allapattah*, 454 F. Supp. 2d at 1209 (S.D. Fla. 2006). Class Counsel in this case is comprised of two firms with just over thirty attorneys between them. Class Counsel were restricted from other employment given the amount of time they committed to this action (totaling 1,496.1 attorney hours).

### 5. The customary fee, and whether the fee is contingent or fixed.

"The customary fee in class actions is a contingency fee, because it is not practical to find any individual that will pay attorneys on an hourly basis to prosecute the claims of numerous strangers and take on the significant additional expenses of fighting with the defendants over class certification." *Columbus Drywall*, 2012 WL 12540344, at *4; *Ressler*, 149 F.R.D. at 654 ("The 'customary fee' in a class action lawsuit is contingent, since virtually no individual plaintiff has a large enough monetary stake in the litigation to justify charging on an hourly basis.").

Here, Class Counsel requests a fee of 20% of the Settlement Amounts. (ECF 136 at 12, 22–23; ECF 136-2, 136-3, 136-4, 136-5.) This percentage falls at the low

end of the benchmark range under *Camden I* and its progeny.[8]  The fee at issue (20% of fund) is exceedingly reasonable, as other courts have approved similar or even greater fees under similar circumstances.  *See* cases cited in § II(B)(4)*, supra*.

In addition to the "customary fee" Class Counsel could have earned representing an individual, the Court should also consider "the economics involved in prosecuting a class action." *Camden I*, 946 F.2d at 775. Specifically, the Court should look at whether Class Counsel performed their work for the benefit of the class on a contingent basis, which is "'perhaps the foremost' factor" in determining an appropriate fee award.  *Pinto v. Princes Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007) (quoting *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 54 (2d Cir. 2000)). Class Counsel prosecuted this case entirely on a contingent-fee basis.  Consequently, Class Counsel assumed the risk of no payment whatsoever for the considerable amount of work devoted to this matter and have not been compensated for any time or expense to date.  *Id*.; *Ressler*, 149 F.R.D. at 654–55 (noting the substantial risk of nonpayment justified award).  Class Counsel assumed the risks in pursuing the case, zealously represented the class, and secured a substantial recovery for all class members.

### 6.    Amount of time involved, and result obtained.

Class Counsel spent 1,496.1 attorney hours and 59 non-attorney hours in

---

[8] The Eleventh Circuit suggested in *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1242 (11th Cir. 2011) that the *Johnson* factors do not even come into play unless "the requested fee *exceeds* 25%." (emphasis added).

prosecuting this case, which resulted in not only significant financial relief for the class ($44.05 million) but also the requirement that Settling Defendants adopt and implement certain practice changes that will benefit the class members and countless other future home sellers. (*See supra* § I.C; ECF 136 at 19–23.) As courts in this Circuit have recognized, any "non-monetary benefits conferred upon the class by the settlement," are properly considered in determining the appropriate percentage of the fund to award as attorneys' fees. *Allapattah*, 454 F. Supp. 2d at 1202 (quoting *Camden I*, 946 F.2d at 775). This is an impressive result.

### 7. The undesirability of the case.

In the context of this matter, "undesirable" simply means that Class Counsel had to commit an unknown, but substantial, number of hours and monetary expenses to a case where the outcome was entirely uncertain. *See Pinto*, 513 F. Supp. 2d at 1340 ("The relevant risks must be evaluated from the standpoint of Plaintiffs' counsel as of the time they commenced the suit and not retroactively with the benefit of hindsight."). Here, Class Counsel undertook significant risk in taking this case on contingency and agreeing to commit substantial time and effort to a case whose outcome was anything but certain. Additionally, the outcomes of prior similar actions were no guarantee that (a) the Settling Defendants would be willing to settle their claims rather than aggressively litigate this case through trial, or (b) that any eventual trial would have

resulted in a favorable result for Plaintiffs.[9]  *See Cardizem*, 218 F.R.D. at 523.

> The fact that Class Counsel secured a favorable Settlement is not relevant.

> Courts have made it clear that if, by reason of their professional skill and determined efforts, plaintiffs' counsel are ultimately able to secure a settlement, that fact is not relevant to an assessment of the degree of risk that they assumed at the time of filing the litigation.

*Id.* at 1340 n.2.  Thus, Class Counsel's substantial risk also favors approval.

### 8.    Awards in similar cases.

As the Court is aware, the Missouri Plaintiffs secured the NAR Settlement, which the district court overseeing the Missouri Actions approved, including counsel's request for a fee award of 33.33% of the common fund (or approximately $36.8 million, compared to the $8.81 million Class Counsel is seeking here).  (*See Gibson* ECF 530 ¶¶ 26, 95–106, 108 (applying *Johnson* factors and concluding that plaintiffs' counsel's request of fees of one-third (33.33%) of the fund was reasonable).  As explained in Section II(B)(4), an award of one-third of the fund is extremely common, particularly in complex antitrust actions.  *See* cases cited in § II(B)(4), *supra*. These fee awards demonstrate Class Counsel's petition for a fee of 20% of the fund is not only at the lowest end of this Circuit's "benchmark," but is exceedingly reasonable

---

[9] To the extent anyone claims that Plaintiffs in this case took on less risk than the Missouri Plaintiffs, the requested fee here reflects that reduced risk, as the 20% of the fund that Class Counsel seeks here is far less than the 33.33% the court approved in the Missouri Actions.  (*See Gibson* ECF 530 (Order Granting Final Approval of NAR Settlement.)

given the fees awarded in similar cases. Finally, Missouri Plaintiffs' counsel sought and have been awarded a 33.33% of the total settlements approved in *Gibson*, *Burnett*, *Moehrl*, and *Keel*, with total fees amounting to $346 million plus $17 million in costs. (*See Gibson*, ECF 530 at pp. 49-57, ECF 769 at pp.16-23; *Burnett*, ECF 1487 at pp. 31-38, ECF 1622 at pp. 31-38.) Thus, the requested 20% fee here is reasonable.

## C.    Class Counsel's Expenses

Class Counsel also requests that the Court grant them reimbursement for their litigation costs and expenses, to be paid directly from the common fund in the amount of $29,312.62. (Chapman Decl. ¶ 13; Knight Decl. ¶ 22.) This sum corresponds to Class Counsel's out-of-pocket costs and expenses, incurred and paid in connection with the prosecution and settlement of the action. "It is appropriate to reimburse the out-of-pocket expenses of counsel whose efforts created substantial benefit for the class." *Columbus Drywall*, 2012 WL 12540344, at *7 (citing *Camden I*, 946 F.2d at 771; *In re: Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 348 (N.D. Ga. 1993)). Class Counsel's expenses are reasonable, necessary, and were incurred achieving a substantial benefit for the Class. (Chapman Decl. ¶ 13; Knight Decl. ¶ 23.)

## III.    CONCLUSION

Accordingly, Plaintiffs and Class Counsel respectfully request the Court approve enter an Order awarding Class Counsel attorneys' fees representing 20% of the common fund ($8,810,000) and reimbursement of expenses of $29,312.62.

DATED:  July 7, 2025                    Respectfully submitted:

*/s/Nathan D. Chapman*
Nathan D. Chapman
Georgia Bar No. 244954
Gary E. Thomas
Georgia Bar No. 804760
Matthew Hayes
Georgia Bar No. 494682

**KABAT, CHAPMAN, & OZMER LLP**
171 17th Street NW, Suite 1550
Atlanta, GA 30363
Main: (404) 400-7300
Facsimile: (404) 400-7300
nchapman@kcozlaw.com
gthomas@kcozlaw.com
mhayes@kcozlaw.com

Bryan M. Knight
Georgia Bar No. 142401
Jonathan M. Palmer
Georgia Bar No. 453452
W. Lawton Jordan
Georgia Bar No. 119651

**KNIGHT PALMER, LLC**
One Midtown Plaza
1360 Peachtree Street, Suite 1201
Atlanta, Georgia 30309
P: (404) 228-4822
F: (404) 228-4821
bknight@knightpalmerlaw.com
jpalmer@knightpalmerlaw.com
ljordan@knightpalmerlaw.com

*Counsel for Plaintiffs 1925 Hooper, LLC, Robert J. Arko, and Andrew M. Moore*

## <u>LOCAL RULE 5.1(c) CERTIFICATION</u>

The undersigned attorney of record hereby certifies that the text of this submission has been prepared in Times New Roman typeface, 14-point, consistent with this Court's requirements in Local Rule 5.1(c).

DATED:    July 7, 2025                    */s/Nathan D. Chapman*
                                          Nathan D. Chapman

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney of record hereby certifies that on July 7, 2025, a true and correct copy of the foregoing was filed electronically by the Court's CM/ECF system, which will cause notice and a copy of this filing to be sent to all counsel of record by electronic mail.

DATED:    July 7, 2025                    */s/Nathan D. Chapman*
                                          Nathan D. Chapman