UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| 1925 HOOPER LLC; ROBERT J. ARKO; and ANDREW M. MOORE; on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL ASSOCIATION OF REALTORS; *et al.*,<br><br>Defendants. | Case No.: 1:23-cv-05392-MHC<br><br>Hon. Mark H. Cohen |

**[PROPOSED] ORDER DENYING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT AS TO DEFENDANTS EXP WORLD HOLDINGS, INC. AND WEICHERT OF NORTH AMERICA, INC.**

This matter is before the Court on Plaintiffs' Motion for Final Approval of Settlements with Defendants Higher Tech Realty, LLC d/b/a Mark Spain Real Estate, eXp World Holdings, Inc., Weichert of North America, Inc., and Atlanta Communities Real Estate Brokerage, LLC (the "Final Approval Motion") [Doc. 199], Weichert of North America, Inc's Motion for Joinder in Plaintiffs' Motion for Final Approval [Doc. 200], and Defendant eXp World Holdings, Inc.'s Motion for Joinder in Plaintiffs' Motion for Final Settlement Approval [Doc. 203]. Objectors Don Gibson, Jeremy Keel, and Daniel Umpa [Doc. 191] and Objector James Mulllis [Doc. 195] filed objections to the proposed settlements.

1

The Court held a hearing on October 28, 2025, at which arguments were presented for and against final approval. The Court has considered the Final Approval Motion, the Joinder Motions, the Objections to the proposed settlements, and the arguments presented at the fairness hearing. Based upon this Court's consideration of all the submissions related to the Final Approval Motion, the Court has determined that Plaintiffs' proposed settlements with Defendants eXp and Weichert should not be finally approved. Accordingly, the Court **DENIES** the Final Approval Motion as to Defendants eXp and Weichert.

## **Legal Standard**

A class action settlement requires court approval, Fed. R. Civ. P. 23(e), "to protect the rights of the many absent class members who were not involved in the negotiations leading to settlement," *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 225 (5th Cir. 1981). The Court must "exercise careful scrutiny" in its role "as a fiduciary who must serve as a guardian of the rights of absent class members." *Drazen v. Pinto*, 106 F.4th 1302, 1328 (11th Cir. 2024) (citation modified).

In deciding whether to finally approve a class settlement, the Court considers whether the settlement is "fair, reasonable and adequate" under Rule 23(e)(2). *Ponzio v. Pinon*, 87 F.4th 487, 494 (11th Cir. 2023). Rule 23(e)(2) provides four considerations to guide this analysis. The Court must consider whether:

(A)  the class representatives and class counsel have adequately represented the class;

 (B) the proposal was negotiated at arm's length;

 (C) the relief provided for the class is adequate, …; and

 (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2); *accord Ponzio*, 87 F.4th at 494.

The Eleventh Circuit has described these as the "core concerns" of Rule 23(e) and the "primary considerations in evaluating proposed agreements." *Ponzio*, 87 F.4th at 494–95. But the Eleventh Circuit has also explained that "the *Bennett* factors" "complement those core concerns," *id.*, and instructed courts to "continue to apply the *Bennett* factors," *Drazen*, 106 F.4th at 1330. The *Bennett* factors are:

> (1) [T]he likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). Accordingly, the Court considers the proposed settlements with eXp and Weichert in light of both the Rule 23(e)(2) factors and the *Bennett* factors.

## Analysis

The Court will not finally approve Plaintiffs' settlements with eXp and Weichert for two reasons. First, the relief provided by each of the settlements is

3

inadequate. Second, Plaintiffs and their counsel have failed to adequately represent the class. The Court addresses each issue in turn.[1]

## I.     The Settlement Relief is Inadequate.

The Court first finds that the settlement relief provided by Plaintiffs' agreements with eXp and Weichert falls below what is fair, reasonable, and adequate in view of eXp's and Weichert's likely liability and ability to pay.

In assessing the adequacy of the relief provided by a class settlement, the Court must consider the "range of possible recovery." *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1273 (11th Cir. 2021). Among other considerations, this requires considering whether the class *could* recover any judgment rendered in its favor—that is, what a defendant could pay towards an adverse judgment. *E.g.*, *Greco v. Ginn Dev. Co., LLC*, 635 F. App'x 628, 633 (11th Cir. 2015) (affirming settlement approval that accounted for a defendant's "limited resources" as "negatively affect[ing] the second *Bennett* factor—the possible range of recovery"); *Molina v. Ace Homecare LLC*, 2019 WL 3225662, at *2 (M.D. Fla.

---

[1] The Objectors also raised extensive arguments and evidence to contend reverse auctions occurred here and that these settlements should be rejected accordingly. *See Ponzio*, 87 F.4th at 508 n.8 (describing "reverse auction" as "a scenario 'in which a defendant picks out a plaintiff with weaker claims and weaker counsel in an effort to negotiate a more favorable settlement'" (quoting *Tech. Training Assocs., Inc. v. Buccaneers Ltd. P'ship*, 874 F.3d 692, 695 (11th Cir. 2017))). Given the faults in the settlements discussed below and the dearth of authority on the reverse-auction issues raised, the Court need not, and does not, address the allegations of reverse auctions.

June 28, 2019) (considering that "a recovery is not certain even if the class were successful at trial, since they may not be able to collect on the judgment"); *Mahoney v. TT of Pine Ridge, Inc.*, 2017 WL 9472860, at *5–7 (S.D. Fla. Nov. 20, 2017) (accounting for defendant's "purported inability to pay").

While a defendant's ability to pay may not always be of overriding importance, at other times this consideration can "predominate the analysis." *In re Glumetza Antitrust Litig.*, 2022 WL 327707, at *4 (N.D. Cal. Feb. 3, 2022). A defendant's ability to pay is highly relevant "when the defendant's professed inability to pay is used to justify the amount of the settlement." *In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 440 (3d Cir. 2016), *as amended* (May 2, 2016). It is also highly relevant where a settlement "is less than would ordinarily be awarded but the defendant's financial circumstances do not permit a greater settlement." *Sweda v. Univ. of Pennsylvania*, 2021 WL 5907947, at *5 (E.D. Pa. Dec. 14, 2021) (citation modified).

Courts have thus rejected settlements where a defendant's ability to pay was, or should have been, an important consideration, but the record reflected the defendant could reasonably pay more or was inadequately developed. *E.g.*, *Ward v. Flagship Credit Acceptance LLC*, 2020 WL 759389, at *16 (E.D. Pa. Feb. 13, 2020) (rejecting settlement, in part, because a defendant's "most recent press release reported that" it had $2.9 billion but settled for only $4 million); *Snyder v. Ocwen*

*Loan Servicing, LLC*, 2018 WL 4659274, at *6 (N.D. Ill. Sept. 28, 2018) (rejecting approval where class counsel gave "the Court virtually nothing to assess Ocwen's contention regarding inability to pay or even to assess whether they adequately vetted that contention"). Conversely, courts—including in related litigation—have approved settlements where the settlement amount was reasonable in view of the defendant's financial constraints. *E.g.*, *Burnett v. Nat'l Ass'n of Realtors*, 2024 WL 2842222, at *5 (W.D. Mo. May 9, 2024) ("The Settlements each capture a significant portion of the Settling Defendants' available assets while still allowing them to continue operations."); *Mahoney*, 2017 WL 9472860, at *5–7 ("possibility that the class members would not be able to recover at all" favored settlement).

Here, eXp and Weichert face a high likelihood of liability. The claims and allegations asserted against other real estate brokerage defendants, which are identical to those now asserted against eXp and Weichert, have survived motions to dismiss (including from eXp and Weichert), motions for summary judgment, and were successfully tried to verdict. eXp and Weichert thus face a high probability of liability should litigation continue. And damages would be crippling. A jury in Missouri rendered a $1.79 billion verdict in 2023 in a case raising the same legal theories (against different defendants) for Missouri home sales only. This case, in contrast, is brought on behalf of a nationwide class. Under the Sherman Act, co-conspirators are jointly and severally liable, so each co-conspirator is liable for all

6

damages flowing from the conspiracy. *See, e.g.*, *Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 646 (1981); *Paper Sys. Inc. v. Nippon Paper Indus. Co.*, 281 F.3d 629, 632 (7th Cir. 2002). Thus, if eXp and Weichert continue to litigate, they face a high likelihood of being found jointly and severally liable for billions in damages. As Plaintiffs have admitted, "being liable for" such "damages would bankrupt" either [Doc. 136 at 21].

eXp's and Weichert's ability to pay is therefore one of, if not the, principal considerations in assessing the reasonableness of the relief afforded by the eXp and Weichert settlements. This is a quintessential case where a settlement necessarily must be "less than would ordinarily be awarded" because "the defendant's financial circumstances do not permit a greater settlement." *Sweda*, 2021 WL 5907947, at *5. eXp's and Weichert's "professed inability to pay is used to justify the amount of the settlement." *In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d at 440. The relief afforded by the agreements Plaintiffs reached with eXp and Weichert, however, is simply insufficient to warrant the Court's approval.

Plaintiffs and eXp ask the Court to approve a $34 million settlement with eXp. eXp, however, had approximately $126 million in available cash and no outstanding long-term debt at the time it reached an agreement with Plaintiffs. [Doc. 153-17 at 34]. The eXp settlement thus amounts to only 27% of eXp's available cash. This pales in comparison to the settlements reached with other defendants in related

7

litigation. For example, Anywhere settled for $83.5 million, which was 79% of its cash and cash equivalents of $106 million [Doc. 153-18 at F-10]. RE/MAX settled for $55 million, which was 67% of its cash and cash equivalents of $82.6 million [Doc. 153-19 at 65]. Compass settled for $57.5 million, which was 34% of its cash and cash equivalents of $166.9 million [Doc. 153-20 at 53]. And the Real Brokerage settled for $9.25 million, which was 63% of its cash and cash equivalents of $14.7 million [Doc. 153-20 at 4]. Considering these other settlements from related litigation, eXp settled for a much lower percentage of its cash than other defendants. It could have paid more.

Weichert, for its part, plainly could have paid more. It is undisputed that Weichert offered $13 million to the plaintiffs in a separately pending case mere days before settling with Plaintiffs here for $4.5 million less.

Thus, both eXp and Weichert could have paid more. They had the resources. And eXp and Weichert should have been made to pay more—as other settling defendants have—because they face a very high probability of a multi-billion-dollar verdict. The settlements are inadequate and cannot be approved as they shortchange the class.

Plaintiffs, eXp, and Weichert all argue that the settlement amounts are reasonable considering the sales volume of eXp and Weichert compared to other settling defendants. The Court does not find this contention persuasive. eXp is

8

paying a fraction of its available cash, in comparison to what other settling defendants paid. That is not reasonable when eXp faces crippling liability. And Weichert offered to settle with a different group of plaintiffs multiple times for more than it is asking the Court to approve. The Court will not sanction Weichert paying less to the class than it offered on multiple occasions.

eXp individually suggests its settlement is fair because liability is uncertain [Doc. 203-1 at 9–16]. This contradicts eXp's statement to a different court that it faces long odds on the merits, so "it was only a question of when [they were] going to settle and for how much money" [Doc. 153-16 at 11:2–4].

Weichert, for its part, relies on a host of assumptions to argue that the $8.5 million it has agreed to pay here is just as good as the $13 million it offered plaintiffs in a related action [Doc. 200 at 9–14]. Specifically, Weichert urges the amount the class will net here is "only" $1.9 million or $1.5 million less. Some of Weichert's assumptions are questionable, but more fundamentally, Weichert is asking the Court to approve a settlement where the class will net either 20% or 19% less than what Weichert previously offered, even accepting Weichert's assumptions. A 20% discount may be "very close" from Weichert's perspective, but it surely is not from the perspective of the class—for which this Court is a fiduciary.[2]

---

[2] Weichert also highlights that it has agreed to a seven-year sunset provision for its practice changes compared to five years in other agreements. But Weichert provides

Weichert also argues that its $8.5 million settlement should not be rejected simply because the agreement did not "end up in exactly the same place" as the $13 million it offered different plaintiffs, contending there are a "range of possible settlements" [Doc. 200 at 12–13]. That is a glib way to say the Court should approve a settlement with 20% discount compared to what Weichert was willing to pay. The Court cannot rubberstamp Weichert settling at such a discount.

## II.     The Class is Inadequately Represented.

In addition to finding that the relief afforded to the class by the eXp and Weichert settlements is inadequate, the Court finds that the class is not adequately represented by Plaintiffs or their counsel in connection with the settlement, as Rule 23(e)(2)(A) requires. To approve the settlement would therefore deprive class members of their due process rights. *E.g.*, *Hesse v. Sprint Corp.*, 598 F.3d 581, 588 (9th Cir. 2010) ("Without adequate representation, a court order approving a claim-preclusive class action settlement agreement cannot satisfy due process[.]").

First, as discussed in the preceding section, Plaintiffs and their counsel agreed to settle with eXp and Weichert for relief that is simply inadequate. Plaintiffs and their counsel have thus failed to adequately represent the interests of the class during settlement negotiations with eXp and Weichert.

---

no economic analysis, or any analysis whatsoever, for how an additional two years covers a 20% shortfall.

Second, Plaintiffs and their counsel did not undertake any serious investigation in this case. It is a copycat case that relies on the allegations and theories from three related, predecessor cases, and no formal discovery has occurred. Plaintiffs' and their counsel's lack of investigation and discovery highlights their inadequacy and demonstrates they lacked the necessary information to negotiate a reasonable settlement. *See, e.g.*, *McGowan v. Faulkner Concrete Pipe Co.*, 659 F.2d 554, 559 (5th Cir. 1981) (affirming denial of class certification, in part, because "the complete absence of discovery effort" "by the attorney for the proposed class" demonstrated lack of adequate representation); *In re Ford Motor Co. Bronco II Prods. Liab. Litig.*, 1995 WL 222177, at *8–9 (E.D. La. Mar. 15, 1995) (explaining that "a court should be satisfied that class counsel had sufficient information to adequately assess the strength of plaintiffs' claims" and rejecting a proposed settlement, in part, because of "[c]lass counsel's failure to conduct meaningful discovery," which "cast[] further doubt on the adequacy of their representation of the class").

Third, Plaintiffs and their counsel did nothing to advance this case on the merits. They permitted Defendants to avoid filing any responsive pleadings, instead repeatedly agreeing to stay or delay deadlines while other cases proceeded apace [Docs. 11, 43, 68, 70, 91, 112]. They took no discovery. And, by their own admission, Plaintiffs immediately started negotiating settlements after this case was

11

filed [Doc. 126 at 11]. As revealed by their Motion for Attorneys' Fees, Plaintiffs' counsel thus expended less than 1,500 hours of attorney time in this case, a rounding error in comparison to the 100,000-plus hours expended by counsel in related actions. Plaintiffs' failure to prosecute their case, efforts to avoid any sort of litigation, and eagerness to settle could not have sent a stronger signal that they were not remotely a threat, compromising them and making them inadequate representatives. *See, e.g.*, *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002) (counsels' "representation of the class was almost certainly inadequate" "since the lawyers' efforts between the filing of the complaint and the settlement negotiations were singularly feeble"); *Hesse*, 598 F.3d at 589 (explaining that "[c]lass representation is inadequate if the named plaintiff fails to prosecute the action vigorously on behalf of the entire class" and finding the named plaintiff inadequate because he "did not vigorously prosecute" the relevant claims).

## Conclusion

For the foregoing reasons, it is hereby **ORDERED** that Plaintiffs' Motion for Final Approval of Settlements with Defendants Higher Tech Realty, LLC d/b/a Mark Spain Real Estate, eXp World Holdings, Inc., Weichert of North America, Inc., and Atlanta Communities Real Estate Brokerage, LLC is **DENIED** as to Defendants eXp World Holdings, Inc. and Weichert of North America, Inc.

**SO ORDERED** this \_\_\_ day of _____, 2025.

_____
Honorable Mark H. Cohen
United States District Judge